UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHANE HYATT,

                              Plaintiff,

                                                              9:16-CV-00528
v.                                                            (TJM/TWD)

THOMAS L. LAVALLEY, et al.,

                              Defendants.
_____

APPEARANCES:                              OF COUNSEL:

SHANE HYATT
Plaintiff, *pro se*
05-A-4430
Five Points Correctional Facility
Caller Box 119
Romulus, NY 14541

BARBARA UNDERWOOD                         KEITH J. STARLIN, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

## I.     INTRODUCTION

This matter was referred for Report and Recommendation by the Hon. Thomas J.

McAvoy, Senior U.S. District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of

New York Local Rule ("L.R.") 72.3(c).  *Pro se* Plaintiff Shane Hyatt, an inmate in the custody of

the New York State Department of Corrections and Supervision ("DOCCS"), has commenced

this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights while confined at

Clinton Correctional Facility ("Clinton"). (Dkt. No. 1.) Plaintiff's amended complaint (Dkt. No. 6), the operative pleading, was accepted for filing on September 22, 2016 (the "September 2016 Order.") (Dkt. No. 10.)

Remaining Defendants are Thomas L. LaValley, former Superintendent at Clinton, Watch Commander John Doe at Clinton, and Jane Does ## 1-5, all of whom are alleged to be medical personnel at the Champlain Valley Physicians' Hospital ("CVPH"), a private hospital located in Plattsburgh, New York. *Id*. at 8.[1] Plaintiff, who at all relevant times was on a hunger strike, claims that on May 13, 2013, Defendants conspired to and did force medical treatment on Plaintiff and subjected him to excessive force and assault and battery in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution and state law while he was a patient at CVPH. (Dkt. No. 6 at 14-16.) Specifically, Plaintiff claims it was "on the order of LaValley through Watch Commander Doe" that non-party DOCCS personnel placed Plaintiff in soft restraints attached to his hospital bed at CVPH, thereby allowing nurse Jane Doe # 3 and nurse Jane Doe # 4 to draw blood and administer intravenous ("IV") fluids over his objections and without his consent pursuant to the orders of doctor Jane Doe # 1, doctor Jane Doe # 2, and doctor Jane Doe # 5. *Id*. at 16.

LaValley, the sole defendant served and appearing in this action, now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds of no personal involvement and qualified immunity. (Dkt. Nos. 47, 47-9.) Plaintiff has responded in opposition and LaValley has filed a reply. (Dkt. Nos. 53, 54.)

---

[1] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

More than two months after LaValley's motion for summary judgment was fully briefed, Plaintiff filed a motion for leave to file a second amended complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure.  (Dkt. No. 55.)  LaValley has filed an opposition and without permission from the Court as required by L.R. 7.1, Plaintiff has filed a reply, which the Court will consider.  (Dkt. Nos. 56, 58.)

For reasons explained below, Plaintiff's motion to amend (Dkt. No. 55) is denied and the Court recommends that LaValley's motion for summary judgment (Dkt. No. 47) be granted and that Plaintiff's amended complaint be dismissed in its entirety.

## II.    PROCEDURAL HISTORY

In the amended complaint, Plaintiff alleges he was on a hunger strike at Clinton.  (Dkt. No. 6 at 14.[2])  On May 13, 2013, Plaintiff was taken to the emergency room at Clinton to be treated for dehydration, but he refused all treatment except for taking his vitals and a "finger stick."  *Id*. at 15.  Plaintiff was transferred to CVPH by ambulance "for low blood sugar" and refused to be treated by the emergency medical service providers.  *Id*.

When he arrived at CVPH at approximately 11:40 a.m., he also refused treatment.  *Id*.  At 12:00 p.m., Plaintiff agreed to have his glucose level checked.  *Id*.  At 12:15 p.m., Plaintiff refused an IV and nurse Jane Doe # 3 told Plaintiff the "consequences of his refusal of treatment."  *Id*.  At 12:30 p.m., nurse Jane Doe # 3 and doctor Jane Doe # 5 had a discussion with

---

[2]  By way of background, Plaintiff started his hunger strike on April 11, 2013, and refused to eat and drink until he could get his hand "fixed" and be transferred to Clinton's Behavior Housing Unit.  (Dkt. No. 6 at 14.)  On April 29, 2013, Plaintiff swallowed a handful of aspirin, staples, and a pencil.  *Id*.  Plaintiff was taken to the emergency room at Clinton and then sent to CVPH for evaluation.  *Id*.  Later that day, Plaintiff was discharged from CVPH and transferred to Albany Medical Center, where he was examined, treated, and had a psychiatric consultation about his suicide attempt and personality disorder.  *Id*.  On May 7, 2013, Plaintiff was discharged from Albany Medical Center and sent back to Clinton, where he was admitted to an observation cell.  *Id*. at 15.

the corrections officers about treating Plaintiff against his will. *Id.* The officers told nurse Jane Doe # 3 and doctor Jane Doe # 5 that they could not treat Plaintiff without his consent or a court order and that they were instructed "not to allow hospital staff to provide any further care until their sergeant arrive[d]." *Id.* At approximately 1:00 p.m., nurse Jane Doe # 4, doctor Jane Doe # 1, and doctor Jane Doe # 2 talked to Plaintiff and he answered their questions "correctly." *Id.* at 15-16.

Shortly thereafter, LaValley and Watch Commander John Doe conspired with Jane Does ## 1-5 to forcibly restrain Plaintiff, draw his blood, and place an IV in his arm without his consent or a court order. *Id.* at 15. On order of LaValley, given through Watch Commander John Doe, the corrections officers "forcefully" restrained plaintiff. *Id.* While Plaintiff was restrained, nurse Jane Doe # 3 stuck a needle in Plaintiff's arm and nurse Jane Doe # 4 drew blood and installed an IV line into the needle. *Id.* Both nurses acted on orders of doctors Jane Does ## 1, 2, and 5. *Id.* Plaintiff was also placed in soft restraints by the corrections officers so he would not pull out the IV line. *Id.*

At approximately 3:10 p.m., Plaintiff was transferred to Albany Medical Center by ambulance and admitted to the hospital, where he pulled out the IV line and refused treatment. *Id.* at 15-16. Plaintiff was hospitalized at Albany Medical Center from May 13, 2013, through May 15, 2013, where he refused any treatment. *Id.* at 16. On May 15, 2013, Plaintiff was discharged from Albany Medical Center and transferred back to Clinton. *Id.*

Only Plaintiff's claims that Defendants LaValley, Watch Commander John Doe and Jane Does ## 1-5 conspired to and did force medical treatment on Plaintiff without his consent, and subjected Plaintiff to excessive force and assault and battery in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution and state law, survived the

4

District Court's *sua sponte* review conducted pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  (Dkt. No. 10 at 7.)  The September 2016 Order directed Plaintiff to take reasonable steps through discovery to ascertain the identities of the "John and Jane Doe" defendants, and when identified, seek to amend the amended complaint to add the individuals as defendants in this action pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.  *Id*. at 8-9.[3]

LaValley answered the amended complaint on November 4, 2016.  (Dkt. No. 16.)  Also on November 4, 2016, the Court issued a Mandatory Pretrial Discovery and Scheduling Order setting the deadline to amend pleadings by March 6, 2017.  (Dkt. No. 17 at 4.)

Plaintiff was deposed on July 28, 2017, and discovery closed on August 4, 2017.  (Dkt. Nos. 47-6, 28.)  Pursuant to multiple requests by Plaintiff for an extension to the dipositive motion deadline, the Court reset that deadline to November 6, 2017, then to December 29, 2017, and then to January 19, 2018.  (Dkt. Nos. 32, 37, 45.)

On January 8, 2018, LaValley filed the pending motion for summary judgment.  (Dkt. No. 47.)  Also on January 8, 2018, Plaintiff attempted to file a second amended complaint, which was stricken by Text Order on January 9, 2018.  (Dkt. Nos. 46, 50.)  The January 9, 2018, Text Order reminded Plaintiff that if he wished to amend his pleading to identify the Doe Defendants, he was required to seek leave to amend the amended complaint to add the individuals as defendants pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.  (Dkt. No. 50.)

---

[3]  The District Court further explained that "[a]lthough the claims against the 'Doe' defendants have survived *sua sponte* review, until they are identified by name and a second amended complaint identifying them is submitted by plaintiff and approved for filing, the 'Doe' defendants cannot be served with process or directed to respond to the amended complaint. Plaintiff may be able to identify some of or all of the Jane Doe defendants by reviewing his medical records."  (Dkt. No. 10 at 9 n.4.)

On January 26, 2018, Plaintiff filed a letter motion requesting an extension of time to respond to LaValley's motion for summary judgment, which was granted.  (Dkt. No. 51, 52.)  On March 5, 2018, Plaintiff filed a response in opposition to LaValley's motion for summary judgment.  (Dkt. No. 53.)  LaValley filed a reply on March 14, 2018.  (Dkt. No. 54.)

On May 11, 2018, Plaintiff filed the pending motion seeking leave to file a second amended complaint.  (Dkt. No. 55.)  LaValley has filed an opposition to Plaintiff's motion, and Plaintiff has filed a reply.  (Dkt. Nos. 56, 58.)

## III.    DISCUSSION

### A.    Motion to Amend

#### 1.    Applicable Legal Standards

The Federal Rules of Civil Procedure provide that courts "should freely give leave" to amend a complaint "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Second Circuit has stated "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits."  *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (citation omitted).  Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility."  *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000); *see also Couloute v. Ryncarz*, No. 11-CV-5986 (HB), 2012 WL 541089, at *3 (S.D.N.Y. Feb. 17, 2012)[4] (quoting *Monahan*, 214 F.3d at 283.  However, motions to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments

_____

[4]  Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

previously allowed, or undue prejudice to the non-moving party."  *Burch v. Pioneer Credit Recovery, Inc*., 551 F.3d 122, 126 (2d Cir. 2008); *Monahan*, 214 F.3d at 283.

If the amendment seeks to add a party, Rule 21 of the Federal Rules of Civil Procedure, which allows addition of a party "at any time, on just terms," governs.  Fed. R. Civ. P. 21. However, the "showing necessary under Rule 21 is the same as that required under Rule 15(a)." *Johnson v. Bryson*, 851 F. Supp. 2d 688, 703 (S.D.N.Y. 2012); *Soler v. G & U, Inc*., 86 F.R.D. 524, 528 (S.D.N.Y. 1980) ("When considering the addition of new parties under Rule 21, courts apply the same standard of liberality afforded to motions to amend pleadings under Rule 15.").

Once a pretrial scheduling order has been issued, the right to amend a complaint is also subject to Rule 16 of the Federal Rules of Civil Procedure.  Under Rule 16(b)(4), such a "schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause.").  Whether "good cause" exists turns primarily on the "diligence" of the moving party in seeking to meet the deadline in the scheduling order. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007) (citing *Parker*, 204 F.3d at 340-41).  The court also may consider whether the amendment will prejudice the non-moving party.  *Id*. at 244.  The absence of prejudice to the non-moving party, however, is not alone sufficient to satisfy the good cause requirement of Rule 16(b)(4).  *Estate of Ratcliffe v. Pradera Realty Co.*, No. 05 Civ. 10272 (JFK), 2007 WL 3084977, at *1 (S.D.N.Y. Oct. 19, 2007).

Under Rule 15 or 16, leave to amend may be denied if the amendment would be futile. *See, e.g.*, *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 389 (2d Cir. 2015).  Amendment is futile if

the proposed claim could not survive a motion to dismiss pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure. *Lucente v. Int'l Bus. Machines Corp*., 310 F.3d 243, 258 (2d

Cir. 2002) (citing *Dougherty v. N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir.

2002)).  A proposed amended complaint that alleges a time-barred cause of action fails to state a

claim on its face for that cause of action and is therefore futile.  *See Jennis v. Rood*, 310 F. App'x

439, 440 (2d Cir. 2009); *see also Malesko v. Corr. Svcs. Corps.,* 229 F.3d 374,384 (2d Cir. 2000)

(affirming the denial of proposed amendments on futility grounds because the statute of

limitations had run), *rev'd on other grounds*, 534 U.S. 61 (2001).

Leave to amend may also be denied "when a party has been given ample prior

opportunity to allege a claim," *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 72 (2d Cir. 1996),

or "where the motion is made after an inordinate delay, no satisfactory explanation is offered for

the delay, and the amendment would prejudice the defendant."  *Cerni v. J.P. Morgan Sec. LLC*,

208 F. Supp. 3d 533, 543-44 (S.D.N.Y. 2016) (quoting *Kenney v. Clay*, 172 F. Supp. 3d 628, 643

(N.D.N.Y. 2016)).

The decision to grant or deny a motion to amend is committed to the sound discretion of

the trial court and the court's decision is not subject to review on appeal except for abuse of

discretion.  *Nettis v. Levitt*, 241 F.3d 186, 192 (2d Cir. 2001).

### 2.    Analysis

The allegations in Plaintiff's proposed second amended complaint are substantially

similar to the amended complaint.  (*Compare* Dkt. No. 55-2 *with* Dkt. No. 6.)  The primary focus

of Plaintiff's proposed second amended complaint is to (1) identify Jane Doe # 1, Jane Doe # 3,

Jane Doe # 4, Jane Doe # 5, and Watch Commander John Doe, but not Jane Doe # 2; (2) reassert

claims against defendants that were previously dismissed upon initial review; and (3) assert new

claims against a new defendant, alleged to be a sergeant at Clinton.  (*See generally* Dkt. No. 55-2; *see also* Dkt. Nos. 4, 10.)  Defendant LaValley has filed an opposition to the proposed amendment, arguing Plaintiff's motion is untimely, prejudicial, and futile.  (Dkt. No. 56.)

The Court issued a Mandatory Pretrial Discovery and Scheduling Order setting the deadline to amend pleadings as March 6, 2017.  (Dkt. No. 17.)  Plaintiff filed his motion to amend on May 11, 2018.  (Dkt. No. 55.)  Since the deadline to amend pleadings had expired at the time Plaintiff's motion to amend was filed, Plaintiff must show good cause for the amendment.  Fed. R. Civ. P. 16(b); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 87 (2d Cir. 2003).

a.    Undue Delay

In his memorandum of law, Plaintiff has failed to explain why he delayed approximately fourteen months in seeking an order from the Court granting him leave to amend his amended complaint.  (Dkt. No. 55.)  In his reply memorandum, which the Court has considered despite Plaintiff's failure to obtain permission prior to filing, Plaintiff explains the proposed amendments and substitutions are based on information acquired during discovery, which he did not receive until August 18, 2017, six months after the March 6, 2017, deadline to join parties and amend pleadings.  (Dkt. No. 58 at 4.)  Plaintiff also contends "his long delay" was the result of his stay "in the outside hospital for a month, in the infirmary, and transfer to Five Points Correctional Facility in September 2017, where he had no legal document pertain to this matter."  *Id.* (unaltered text).

Here, the Court finds Plaintiff has not made the required showing of good cause since his motion to substitute Jane Doe # 1, Jane Doe # 3, Jane Doe # 4, Jane Doe # 5, and Watch Commander John Doe and to add new claims against a new defendant was made nine months

*after* Plaintiff received discovery showing that these individuals were working at CVPH and

Clinton on the date at issue. (Dkt. No. 58 at 4.) Further, to the extent Plaintiff attributes any

delay to his health or transfer to another facility, as pointed out in LaValley's opposition

memorandum, Plaintiff was able to write and mail papers in several legal actions including the

case at bar over the course of the nine months from August 2017, until May 2018. (Dkt. No. 56

at 11.) Significantly, Plaintiff has offered no reason whatsoever for the four month delay

between the filing of the stricken second amended complaint on January 8, 2018, and the

pending motion to amend. (Dkt. Nos. 46, 50, 55.) Where, as here, a plaintiff has not

demonstrated good cause for the delay, courts may exercise its discretion to deny the motion to

amend because of undue delay. *See, e.g.*, *Kenney*, 172 F. Supp. 3d at 643-44 (denying motion to

amend where the plaintiff "exhibited undue delay" and had not submitted "satisfactory reasons

for the delay"); *Grochowski*, 318 F.3d at 86.

### b.    Prejudice

The Court must also consider the procedural posture of this action. *Kenney*, 172 F. Supp.

3d at 643. Where, as here, discovery has already been completed and the non-movant has filed a

dispositive motion, the Second Circuit has held that a proposed amendment to pleadings is

"especially prejudicial." *Krumme v. WestPoint Stevens, Inc.*, 143 F.3d 71, 88 (2d Cir. 1998)

(affirming denial of motion for leave to amend when the case was "near resolution and discovery

had been completed"). Indeed, "[t]here are numerous instances in which motions for leave to

amend were denied because discovery had already been completed and post-discovery motions

for summary judgment had been submitted." *Kenney*, 172 F. Supp. 3d at 643 (citing *Cresswell v.*

*Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (affirming denial of motion for leave to

amend where discovery had closed and the plaintiff offered no valid excuse for delay)); *see also*

*CL-Alexanders Laing & Cruickshank v. Goldfeld*, 739 F. Supp. 158, 166 (S.D.N.Y. 1990)

(denying motion for leave to amend six months after the close of discovery and after the

submission of the defendant's post-discovery motion for summary judgment).  In this case, the

Court finds that such an amendment at this last stage of the proceeding would cause undue

prejudice to Defendants.

c.    <u>Futility</u>

An amendment of a pleading is considered a "futile" act when the proposed claim would

not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002);

*Lucente*, 310 F.3d 243, 258 (2d Cir. 2002).

Plaintiff's proposed second amended complaint reasserts previously dismissed claims

against CVPH, University of Vermont Health Network ("UVHN"), Eric B. Gorman, and

Stephens M. Mundy.  (Dkt. Nos. 55; 10.)  The factual allegations set forth in the proposed

second amended complaint for these claims are identical to those asserted in the amended

complaint.  (*Compare* Dkt. No. 55 *with* Dkt. No. 6.)

In the proposed second amended complaint, Plaintiff alleges CVPH, UVHN, Gorman,

and Mundy are responsible for the alleged wrongdoing of their staff because they instated a

custom or policy which allowed the wrongdoing of their staff to occur and failed to properly

train and supervised their staff.  (Dkt. No. 55 at 20-21.)  As was the case with the amended

complaint, Plaintiff alleges no facts to plausibly suggest CVPH, UVHN, Gorman, or Mundy are

state actors for § 1983 purposes.  No does Plaintiff assert any plausible facts giving rise to a

conspiracy.

Thus, for the same reasons set forth in the September 2016 Order, Plaintiff's allegations against CVPH, UVHN, Gorman, and Mundy, are insufficient to state a claim upon which relief may be granted. (Dkt. No. 10 at 3-7.) Therefore, to the extent Plaintiff seeks to reasserts these claims, Plaintiff's motion to amend is denied as futile. *See Lucente*, 310 F.3d at 258. (An amendment is futile if the proposed claim could not survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.).

Finally, at the time Plaintiff filed his motion to amend on May 11, 2018, the statute of limitations was expired. Under the prison mailbox rule, *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993), Plaintiff timely commenced this action on May 4, 2016, before the limitations period expired on May 13, 2016. *See Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (holding statute of limitations applicable to claims brought in New York under § 1983 is three years).

In general, a plaintiff may proceed against a "John Doe" placeholder defendant, so long as he replaces the John Doe with a named party within the applicable statute of limitations period. *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468-69 (2d Cir. 1995). Thus, "[a]s a practical matter, a plaintiff who fails to identify John Doe defendants within the statute of limitations risks losing the opportunity to sue those defendants." *Green v. Walsh*, No. 9:05-CV-00327 (TJM/DE), 2008 WL 4517975, at *6 n.8 (N.D.N.Y. Sept. 29, 2008) (citing *Barrow*, 66 F.3d at 469).

Here, Plaintiff did not attempt to replace the John and Jane Doe Defendants until May 11, 2018, almost two years after the limitations period expired. (Dkt. No. 55.) "While 'John Doe' pleadings cannot be used to circumvent statute of limitations, *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993), a plaintiff who finds that the limitations period on his

claim has run may still seek to amend his complaint to add additional defendants, but he will be bound by the requirement that the proposed amendment 'relate back' to the date that the original complaint was filed." *Kavanaugh v. Village of Green Island*, No. 8:14-CV-01244 (BKS/DJS), 2016 WL 7495813, at *3 (N.D.N.Y. Dec. 30, 2016).

Under Rule 15(c)(1)(C) of the Federal Rules of Civil Procedure, the following conditions must be met for a later amendment to a pleading to relate back to the date of the original pleading:

> (1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party should have known that, but for a mistake of identity, the original action would have been brought against it; and . . . (4) the second and third criteria are fulfilled within 120 days of the filing of the original complaint, and . . . the original complaint [was] filed within the limitations period.

*Barrow*, 66 F.3d at 468-69 (citing Fed. R. Civ. P. 15(c)(1)(C)).  However, the Second Circuit has held that Rule 15(c)(1)(C) "does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities," since "the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake." *Id.* at 470. Thus, Plaintiff cannot satisfy the requirements for relation back under Rule 15(c)(1)(C); *see also Scott v. Village of Spring Valley*, 577 F. App'x 81, 83 (2d Cir. 2014) ("[W]e have consistently held that 'the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake.'") (quoting *Hogan v. Fischer*, 738 F.3d 509, 517-18 (2d Cir. 2013) and distinguishing *Krupski v. Costa Crociere S.P.A.*, 560 U.S. 538, 554-55 (2010)).

Alternatively, an amended pleading identifying John Doe defendants may still relate back under Rule 15(c)(1)(A) of the Federal Rules of Civil Procedure,[5] via § 1024 of the New York Civil Practice Law and Rules, which states:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

N.Y. C.P.L.R. § 1024.

Plaintiff argues § 1024 applies in this case. (Dkt. No. 58 at 5.) However, a plaintiff must meet two requirements for relation back under § 1024: (1) he must exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name; and (2) he must describe the John Doe party in such form as will fairly apprise the party that he is the intended defendant. *Hogan*, 738 F.3d at 519 (internal quotations and citations omitted). Here, Plaintiff cannot satisfy the first requirement because he has not pointed to any efforts he made to identify the John and Jane Doe Defendants *before* the statute of limitations expired on May 13, 2016.[6] Thus, Plaintiff's motion to amend is also futile.

In light of the foregoing, Plaintiff's motion to amend is untimely, prejudicial, and futile. Therefore, Plaintiff's motion for leave to amend (Dkt. No. 55) is denied. The amended complaint (Dkt. No. 6) remains the operative pleading.

---

[5] Rule 15(c)(1)(A) states that an amended pleading may relate back when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A).
[6] The Court notes Plaintiff's intentional tort claims under state law, expired on May 13, 2014. *See* N.Y. C.P.L.R. 215(3) (McKinney 2018); *Havell v. Islam*, 739 N.Y.S.2d 371, 372 (N.Y. App. Div. 1st Dept. 2002) ("A claim for damages for an intentional tort, including a tort not specifically listed in CPLR 215(3), is subject to a one-year limitation period.").

### B.    Motion for Summary Judgment

#### 1.    Applicable Legal Standards

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); Fed. R. Civ. P. 56(c).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating genuine issues of material fact exist.  *Salahuddin*, 467 F.3d at 273 (citations omitted).  The nonmoving party must do more than "rest upon the mere allegations . . . of [the plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).  A party opposing summary judgment is required to submit admissible evidence.  *See Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] . . . may rely only on admissible evidence.") (citation and quotation marks omitted).

In *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005), the Second Circuit reminded that on summary judgment motions "[t]he mere existence of a scintilla of evidence in support of

the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." 426 F.3d at 554 (emphasis in original). To defeat summary judgment, nonmoving parties "may not rely on conclusory allegations or unsubstantiated speculation." *Id*. (citation and quotation marks omitted). Rather "[a]t the summary judgment stage, a nonmoving party must offer some hard evidence showing that [his] version of the events is not wholly fanciful." *Id*. (citation and quotation marks omitted). Accordingly, statements "that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 (WHP)(JCF), 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## 2.    Defendant LaValley's Declaration

Defendant LaValley served as Superintendent at Clinton from 2010 to 2014. (Dkt. No. 47-1 at ¶ 5.[7]) In that capacity, his responsibilities involved the oversight of administrative,

---

[7] Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs.

fiscal, and security matters within Clinton. *Id*. at ¶ 6. Pursuant to DOCCS regulation, LaValley was provided with daily Interdepartmental Communication Hunger Strike memoranda regarding any inmate who was currently on a hunger strike. *Id*. at ¶ 8. LaValley states the only contact he had with DOCCS personnel on May 13, 2013, regarding Plaintiff was his receipt of the Interdepartmental Communication Hunger Strike memorandum for that date, which was written before Plaintiff was sent to CVPH that day. *Id*. at ¶ 11. LaValley states he has no recollection of any direct personal contact with Plaintiff at any time. *Id*. at ¶ 9. Nor did he have any contact with CVPH personnel regarding the relevant events of May 13, 2013, at issue in this lawsuit, at any time. *Id*. at ¶ 10.

In support of his motion for summary judgment, LaValley declares:

> I had no other contact or communication with any DOCCS personnel on May 13, 2013 regarding plaintiff, or regarding any decision to provide him with medical treatment, or any decision to restrain him (or use other force with him), or any decision to send him to an outside medical facility.
> I did not direct anyone to provide plaintiff with medical treatment on May 13, 2013, nor did I direct anyone to restrain plaintiff (or to engage in other physical contact with him) on May 13, 2013.
>
> At no time did I instruct anyone to provide plaintiff with medical treatment against his will absent a proper and appropriate court order to do so, nor did I instruct anyone to restrain plaintiff for the purposes of providing him with medical treatment against his will absent a proper and appropriate court order.

*Id*.

LaValley further states:

> I had no personal involvement in plaintiff being sent to CVPH on or about May 13, 2013.
>
> I had no personal involvement with plaintiff being allegedly provided medical treatment on May 13, 2013.

I had no personal involvement with plaintiff allegedly being restrained (or being subjected to any other physical force) while at CVPH on that date.

I was not involved in the decision to send plaintiff to CVPH (or any other outside medical facility) on May 13, 2013; was not present at CVPH on May 13, 2013, was not involved in any decision to send DOCCS personnel to accompany plaintiff to CVPH on May 13, 2013; was not involved in any decision regarding the actions of DOCCS staff who were present at CVPH on May 13, 2013; and was not involved in any decision to restrain plaintiff, or to use any other physical force in regard to plaintiff on May 13, 2013.

Indeed, I was not aware of the alleged, relevant May 13, 2013 events complained of in the [amended] Complaint until after they had occurred, and to my knowledge, I first learned of his claims regarding those events when I later reviewed plaintiff's appeal of an Inmate Grievance Review Committee ("IGRC") decision denying a grievance he had filed regarding those events.

*Id.* at ¶ 12.

### 3.    Plaintiff's Testimony

Plaintiff began his hunger strike on or about April 10, 2013. *Id.* at 15. On May 13, 2013, Plaintiff was sent to the emergency room at Clinton because his blood sugar was low. *Id.* at 21. There, he refused any medical treatment, including an IV. *Id.* at 22. Non-party medical personnel decided to send Plaintiff to CVPH for low blood sugar. *Id.* at 21-22.

Upon arriving at CVPH, Plaintiff refused all medical treatment. *Id.* at 23. Medical personnel at CVPH wanted to treat Plaintiff's low blood sugar. *Id.* A physician at CVPH stated "he can't refuse" but the corrections officers refused to allow CVPH to treat Plaintiff without a court order. *Id.* at 24. One of the officers stepped out of the hospital room to telephone the Watch Commander at Clinton, who in turn, said he was going to call the superintendent. *Id.* at 24-25. Plaintiff testified "we just waited for the superintendent." *Id.* at 24. Thereafter, the officer received a telephone call and stepped out of the hospital room. *Id.* When he returned, the

18

officers stated they could not treat Plaintiff and they were instructed to wait until a sergeant and another officer arrived.  *Id*. at 26-27.  Upon the sergeant and officer's arrival, they continued to wait to receive authorization from the Watch Commander at Clinton.  *Id*. at 31-32.  The sergeant said the Watch Commander at Clinton "was waiting for the superintendent . . . they couldn't make no decision without a superintendent."  *Id*. at 36.

Shortly thereafter, the sergeant stepped out of the room and when he came back said he "got the call from the Watch Commander, then it was a go ahead."  *Id*. at 38-39.  Plaintiff testified DOCCS personnel "held [him] down" while the nurses stuck a needle into his arm, drew his blood, and put the IV into his arm to treat his low blood sugar.  *Id*. at 39-40.  Plaintiff's arms were also restrained to the bed with "soft restraints" so he could not pull out the IV.  *Id*. at 41-47.  Plaintiff testified DOCCS personnel performed a "proper restraint."  *Id*. at 47.

Plaintiff admitted that he had no contact with LaValley on May 13, 2013.  *Id*. at 56-57.  Plaintiff testified that he has never spoken to LaValley about the May 13, 2013, events at issue in this lawsuit or about any medical treatment provided while at CVPH on that date.  *Id*. at 55-56, 83-84.  Plaintiff admitted that he did not overhear any conversation between LaValley and anyone else on May 13, 2013.  *Id*. at 57.  Further, Plaintiff testified that he did not overhear any conversations on May 13, 2013, between DOCCS personnel who were with him at CVPH on that date and other DOCCS personnel.  *Id*. at 40-42, 57-58.

### 4.    Personal Involvement

LaValley contends Plaintiff's claims must be dismissed for lack of personal involvement. (Dkt. No. 47-9 at 7-11.)  It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885

19

(2d Cir. 1991)); *Iqbal*, 556 U.S. at 676.  "[V]icarious liability is inapplicable to . . . § 1983 suits."
*Iqbal* 556 U.S. at 676.

Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered
"personally involved" only if they (1) directly participated in the violation, (2) failed to remedy
that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a
policy or custom under which the violation occurred, (4) had been grossly negligent in managing
subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of
inmates by failing to act on information indicating that the violation was occurring.  *Colon v.*
*Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d
Cir. 1986)).[8]  "Further, a Section 1983 plaintiff must 'allege a tangible connection between the
acts of the defendant and the injuries suffered.'"  *Austin v. Pappas*, No. 04-CV-7263, 2008 WL
857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir.
1986)) (other citation omitted).

"Moreover, where the personal involvement of a defendant in a Section 1983 violation is
premised upon a claim of conspiracy, '[i]t is incumbent on a plaintiff to state more than
conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive him of
his constitutional rights.'"  *Vega v. Artus*, 610 F. Supp. 2d 185, 199 (N.D.N.Y. 2009) (quoting
*Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990)).

---

[8]  The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected
the standards in *Colon* for establishing supervisory liability.  *See Grullon v. City of New Haven*,
720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for
showing a supervisor's personal involvement with respect to certain constitutional violations"
but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead
the warden's personal involvement even under *Colon*"); *see also Hogan*, 738 F.3d at 519 n.3
(expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for
showing a supervisor's personal involvement with respect to certain constitutional violations[.]")
(citing *Grullon*, 720 F.3d at 139).

Here, as set forth above, Plaintiff presents allegations of LaValley's personal involvement that are conclusory and speculative, at best, and based on inadmissible hearsay and double hearsay. (Dkt. Nos. 6 at 15; 47-6 at 46-47, 54-58.) In contrast, LaValley has submitted a declaration averring he had no personal involvement whatsoever in the alleged events at issue in this lawsuit. (Dkt. No. 47-1 at ¶¶ 10-12.) The evidence demonstrates LaValley first learned of Plaintiff's claims regarding the alleged May 13, 2013, events at issue when he reviewed Plaintiff's appeal of an IGRC decision denying his grievance. *Id*. at ¶¶ 12, 13. Indeed, Plaintiff admitted he had no contact with LaValley on May 13, 2013. (Dkt. No. 47-6 at 56-57.) Plaintiff testified he has never spoken to LaValley about the May 13, 2013, events at issue in this lawsuit or about any medical treatment provided while at CVPH on that date. *Id*. at 55-56, 83-84. Plaintiff admitted that he did not overhear any conversation between LaValley and anyone else on May 13, 2013. *Id*. at 57. Plaintiff also testified he did not overhear any conversations on May 13, 2013, between DOCCS personnel who were with him at CVPH and other DOCCS personnel. *Id*. at 40-42, 57-58.

In his opposition submission, Plaintiff contends that by virtue of LaValley's supervisory position, LaValley must have known about the events giving rise to this lawsuit, or at the very least should be charged with constructive knowledge of the constitutional violations alleged. (Dkt. No. 53 at 1-3.) For example, Plaintiff contends that pursuant to DOCCS Employees Rule 7.7, LaValley "was responsible for having a correct count of inmates at Clinton and for seeking that counts are takin in such a manner and reported on such forms as may be required by the Commissioner so he know on May 13, 2013, that Plaintiff was on the facility out count and at CVPH." *Id*. at 27 (unaltered text). Similarly, Plaintiff contends because there "was no immediate danger to [his] safety" on May 13, 2013, pursuant to DOCCS Directive 4944,

LaValley would have been notified by the non-party DOCCS employees prior to "any use of force," and, therefore, would have been notified of the relevant events at CVPH on May 13, 2013. *Id*. at 26. Such allegations, however, are insufficient to demonstrate personal involvement under *Colon*. Indeed, it is well established that a supervisor cannot be liable for damages under § 1983 solely by virtue of being a supervisor. *See Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) (dismissal of a § 1983 claim is proper where the plaintiff does no more than allege defendant was in charge of the prison).

Furthermore, Plaintiff has offered only speculation and conjecture that there was ever an agreement and "meeting of the minds" between Defendants LaValley, Watch Commander John Doe, and Jane Does ## 1-5 to violate Plaintiff's constitutional rights. *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002) (holding conclusory, vague, and general allegations are insufficient to support a conspiracy claim).

In light of the foregoing, the Court concludes that there is no evidence on which a jury could reasonably find for Plaintiff on his claims against LaValley. Therefore, the Court recommends that Defendant LaValley's motion for summary judgment (Dkt. No. 47) be granted for lack of personal involvement. (Dkt. No. 47.)

### 5.    Qualified Immunity

LaValley has also moved for summary judgment on Plaintiff's claims based upon the defense of qualified immunity. (Dkt. No. 47-9 at 12-14.) Inasmuch as the Court is recommending that summary judgment be granted to LaValley based upon the lack of evidence showing personal involvement, the Court need not address the question of qualified immunity.

### C.    Failure to Timely Name and Serve the John and Jane Doe Defendants

Plaintiff had a duty to diligently litigate his claims against the John and Jane Doe

Defendants, including a specific duty to identify, name, and serve them.  *See* Fed. R. Civ. P.

41(b); L.R. 41.2(a); Fed. R. Civ. P. 4(m); Fed. R. Civ. P. 16(f).  As discussed *supra*, Plaintiff has

failed to fulfill that duty and has not shown good cause excusing that failure.  (*See also* Dkt. Nos.

10 at 8-9 & n.4; 50.)

"United States Courts are vested with broad discretion to impose sanctions for non-

compliance with court orders, and those sanctions can include the severe sanction of dismissing a

case." *Tylicki v. Ryan*, 244 F.R.D. 146, 147 (N.D.N.Y. 2006) (Kahn, D.J.) (citing *Internet Law*

*Library, Inc. v. Southridge Capital Mgmt., LLC*, No. 01 Civ. 6600(RLC), 2005 WL 3370542, at

*1 (S.D.N.Y. Dec. 12, 2005) ("Moreover, the court has the inherent authority to dismiss a case

when a party disobeys any of its orders.")).  Furthermore, Rule 41(b) of the Federal Rules of

Civil Procedure provides that a court may, in its discretion, dismiss an action based upon the

failure of a plaintiff to prosecute the case, or to comply with the procedural rules or orders of the

court.  Fed. R. Civ. P. 41(b); *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir.

2001).  This power to dismiss may be exercised when necessary to achieve orderly and

expeditious disposition of cases.  *See Freeman v. Lundrigan*, No. 95-CV-1190 (RSP/RWS),

1996 WL 481534, at *1 (N.D.N.Y. Aug. 22, 1996).  It is also well-settled that the term "these

rules" in Rule 41(b) refers not only to the Federal Rules of Civil Procedure, but also to the local

rules of practice for a district court.  *Tylicki*, 244 F.R.D. at 147.

In determining whether such dismissal is appropriate, the court should consider (1) the

duration of the delay occasioned by the plaintiff's conduct, (2) whether the plaintiff has received

notice that further delay would result in dismissal, (3) whether the defendant is likely to be

prejudiced by further delay, (4) the plaintiff's right to due process, and (5) the efficacy of lesser sanctions. *Lucas v. Miller*, 84 F.3d 532, 535 (2d Cir. 1996); *Davis v. Citibank, N.A.*, 607 F. App'x 93, 94 (2d Cir. 2015). No one factor is dispositive. *See Martens*, 273 F.3d at 180. However, with regards to *pro se* litigants, Rule 41(b) dismissal "remains a harsh remedy to be utilized only in extreme circumstances," and *pro se* plaintiffs "should be granted special leniency regarding procedural matters." *LeSane*, 239 F.3d at 209 (citation omitted).

Here, the Court finds several factors weigh in favor of dismissal. Plaintiff's failure to name and serve the John and Jane Doe Defendants has persisted for almost two years; the individuals designated as John and Jane Does have been prejudiced by the failure; and the Court has considered and found no sanction less drastic than dismissal would be appropriate.[9] Furthermore, for reasons set forth in Section III.A, the statute of limitations has long since expired. Therefore, the Court recommends *sua sponte* dismissing Plaintiff's claims against the John and Jane Doe Defendants with prejudice for failure to diligently litigate. *See, e.g.*, *McNamee v. Schoharie Cty. Jail*, No. 9:06-CV-1364 (TJM/GHL), 2008 WL 686796, at *1 (N.D.N.Y. Mar. 10, 2008) (*sua sponte* dismissing the complaint against defendants with prejudice for failure to prosecute); *Garcia v. City of New York*, No. 2016 WL 1275621, at *4 (W.D.N.Y. Mar. 31, 2016) (same).

**WHEREFORE**, based on the foregoing, it is hereby

**ORDERED** that Plaintiff's motion to amend (Dkt. No. 55) is **DENIED**; and it is further

---

[9] Generally, a party should be given notice prior to dismissal of their complaint for failure to prosecute. *See U.S. ex rel. Drake v. Norden Systems, Inc.*, 375 F.3d 248, 254 (2d Cir. 2004). However, "this is not an absolute requirement." *Caussade v. United States*, 293 F.R.D. 625, 630 (S.D.N.Y. 2013) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962) ("[A] District Court may dismiss a complaint for failure to prosecute even without affording notice of its intention to do so or providing an adversary hearing before acting.")).

**RECOMMENDED** that Defendant LaValley's motion for summary judgment (Dkt. No. 47) be **GRANTED** and that Plaintiff's claims against him be **DISMISSED with prejudice**; and it is further

**RECOMMENDED** that Plaintiff's remaining claims against the John and Jane Doe Defendants be *sua sponte* **DISMISSED with prejudice** for failure to diligently litigate; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[10] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: August 2, 2018
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[10]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2012 WL 541089
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Matthew COULOUTE, Jr., Plaintiff,
v.
Amanda RYNCARZ and Stacey Blitsch, Defendants.

No. 11 CV 5986(HB).
|
Feb. 17, 2012.

## OPINION & ORDER

Hon. HAROLD BAER, JR., District Judge.

**\*1** Before the Court is a motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Matthew Couloute, Jr. ("Plaintiff") filed this Complaint seeking damages against Amanda Ryncarz and Stacey Blitsch (collectively "Defendants") for engaging in tortious interference with prospective business relations when they allegedly posted comments about Plaintiff on an Internet website. For the following reasons, the motion to dismiss is granted and leave to amend the Complaint is denied.

## I. BACKGROUND

The following is meant to provide context and has no bearing on the present motion: Plaintiff's relationship with Defendant Blitsch began in 2003 in California. They separated sometime after they moved to Atlanta and had a child together. Plaintiff moved to Florida with their son, and Defendant Blitsch followed. Plaintiff now resides in New Jersey. Plaintiff's relationship with Defendant Ryncarz began during Plaintiff's residency in Florida. After they separated, Plaintiff married a third woman not involved in this lawsuit. Both Defendants still reside in Florida.

The following facts are taken from Plaintiff's original Complaint and are assumed to be true for the purposes of this motion to dismiss. Since 2011, Plaintiff has practiced law out of his office in Manhattan. Compl. ¶¶ 7–8. Plaintiff

alleges that between December 25, 2010, and May 2011, Defendants posted malicious statements about him on the website www.liarscheatersrus.com. *Id.* ¶ 9. In particular, Plaintiff asserts that at least the following statements were made by Defendant Ryncarz on or shortly after December 25, 2010:

1. "[Mr. Couloute] lied and cheated all through his 40 years of life." *Id.* ¶ 10.

2. "[Mr. Couloute] [u]ses people/his son/women to get what he wants then dumps you when he's done with them. Has no long term friends. He rents or finances everything and owns absolutely nothing." *Id.*

3. A comment posted anonymously responding to earlier comments, including: "He is very very manipulating he's an attorney so he's great at lying and covering it up without batting an eye." [1] *Id.*

[1]   The comment in full reads: "This is the absolute truth about this man!! He will stop communication with you suddenly, then reach out years later as he did with me trying to sweet talk you and make you feel like you're the most special woman in the world that he's been looking for. He is very very manipulating he's an attorney so he's great at lying and covering it up without batting an eye. Our relationship didn't last long as I figured him out pretty quickly but for others, BE FOREWARNED, HE'S SCUM! RUN FAR A WAY!" Compl. ¶ 10.

And by Defendant Blitsch on or shortly after January 4, 2011:

1. "[W]hat these ladies have said about his character is very true. I met him and dated briefly and I was taken in with the charm and instant "connection" he claimed we had ... [A]s soon as I started asking questions about other aspects of his life and figured out he wasn't comple[tely] honest he turned cold then disappeared. And of course another male is going to say Matt is a "solid dude" ... if you agree with lieing [sic] and manipulating any female you come in contact with I guess he could be considered that...." *Id.* ¶ 11.

2. A comment referring to Plaintiff's previous legal employer, United Football League: "I came across this site by accident by following a UFL news feed, so your friend Matt has more problems than these posts

if in search for the league his name is associated with this site." *Id.* ¶ 12.

**\*2** Plaintiff alleges that Defendants made these statements knowing that Plaintiff was working in New York as an attorney and made them with the aim of interfering with Plaintiff's ability to market his legal skills. In doing so, Defendants "unfairly and maliciously damaged one of Mr. Couloute's most valuable asset [sic] as an attorney, his reputation for honesty and integrity." *Id.* ¶ 13. Plaintiff's proposed Amended Complaint includes the allegation that these statements defamed him, causing present and prospective clients to view Plaintiff in a negative and false light. Am. Compl. ¶ 13. Plaintiff states that due to these postings, prospective clients are discouraged from contacting Plaintiff for legal services. *Id.* ¶ 14; *see also* Compl. ¶ 14.

Originally and on August 25, 2011, Plaintiff filed this Complaint alleging a single cause of action for tortious interference with prospective business relations. On September 14, 2011, Defendants filed the present motion to dismiss. On October 8, 2011, Plaintiff opposed the motion and requested leave to amend the Complaint to cure deficiencies elicited in Defendants' motion and to add a second cause of action for defamation. Defendants submitted the reply memorandum to their motion on October 18, 2011, where they argued that the Amended Complaint that Plaintiff sought to submit failed to adequately state a claim. On October 20, 2011, Plaintiff submitted a motion to amend and an accompanying memorandum arguing that the Court should accept the Amended Complaint without addressing the concerns Defendants raised regarding the new defamation claim. [2] The Defendants have not sought leave to respond to Plaintiff's most recent memorandum, nor has Plaintiff sought leave to respond to Defendants' arguments regarding the defamation claim. As such, the motion to dismiss and request for leave to amend the Complaint are considered fully briefed.

---

[2]    Plaintiff submitted his October 20 memorandum twice, once categorizing it as a Motion to Amend/Correct the Complaint and a second time as a Reply Memorandum in support of that same motion. These memoranda are excerpts from Plaintiff's October 8th opposition memorandum, where the request for leave to amend was originally made.

## II. DISCUSSION

### A. Adequacy of Pleadings and Leave to Amend

The Plaintiff's case may be dismissed to the extent that he "fail[s] to state a claim upon which relief can be granted." *Fed.R.Civ.P. 12(b)(6)*. To survive dismissal on this ground, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). The Court's determination of whether a complaint states a "plausible claim for relief" is a "context-specific task" that requires application of "judicial experience and common sense." *Id.* at 1950. Unless the Plaintiff's well-pleaded allegations have "nudged [his] claims across the line from conceivable to plausible, [Plaintiff's] complaint must be dismissed." *Twombly*, 550 U.S. at 570. Additionally, the court must draw all reasonable inferences in the non-movant's favor, *Roth v. Jennings*, 489 F.3d 499, 503 (2d Cir.2007), but it "need not accord [l]egal conclusions, deductions or opinions couched as factual allegations ... a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir.2007) (internal citation and quotation marks omitted).

**\*3** Leave to amend a pleading should be freely granted when justice so requires. *Fed.R.Civ.P. 15(a)(2)*. "[A]bsent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility," the Court will grant leave to amend. *Monahan v. New York City Dept. of Corr.*, 214 F.3d 275 (2d Cir.2000). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss ...." *Lucente v. Inter'l Bus. Machs. Corp.*, 310 F.3d 243 (2d Cir.2002).

### B. Tortious Interference with Prospective Business Relations

Under New York law, [3] to establish a claim for tortious interference with prospective business relations, a plaintiff must establish: "(1) business relations with a third party; (2) the defendant's interference with those business relations; (3) the defendant acted with the sole purpose of

harming the plaintiff or used dishonest, unfair or improper means; and (4) injury to the business relationship." *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 114 (2d Cir.2010).

3    The parties proceed under the assumption that New York law governs the conduct alleged in this case. The possible conflicts of law have not been raised and thus are not presently before the Court. *See Krumme v. WestPoint Stevens Inc.,* 238 F.3d 133, 138 (2d Cir.2000) ("The parties' briefs assume that New York law controls, and such implied consent is sufficient to establish choice of law." (internal quotation marks omitted)).

### i. Original Complaint

Plaintiff concedes that his original Complaint fails to specify a "relationship with a client that was interfered [with] by Defendants' wrongful conduct as alleged in the complaint." [4] Pl.'s Mem. Opp'n Mot. Dismiss ("Pl.'s Opp'n") 1. This shortcoming alone warrants dismissal of the Complaint. *See, e.g., DiFolco,* 622 F.3d at 115 ("[T]he complaint fails entirely to describe any third party with whom [Plaintiff] had prospective business relations to be interfered with ...."). Because of this admitted defect, I turn to Plaintiff's proposed Amended Complaint which seeks to satisfy the pleading requirements.

4    Defendants point to three shortcomings in the Complaint: Plaintiff failed to (1) specify a specific business relationship that was harmed; (2) allege that any of Defendants' actions were specifically directed at the third parties; and (3) allege that Defendants acted with the sole purpose of harming Plaintiff or used wrongful means. Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Supp.") 6–9.

### ii. Proposed Amended Complaint

Plaintiff alleges interference by Defendants with four attorney-client relationships and indicates that these instances are exemplary of Defendants' goal which Plaintiff posits as sufficient to show interference with Plaintiff's legal practice generally. Am. Compl. ¶¶ 15–22. With respect to the four listed clients:

a. Client 1, after having read Defendants' comments on or around March 2011, refused to continue his business relationship with Plaintiff;

b. Client 2, after becoming aware of the comments on September 14, 2011, refused to continue his business relationship with Plaintiff;

c. Clients 3 and 4, after reading the comments in middle to late 2011, refused to engage in business with Plaintiff;

*Id.* at ¶ 16. Plaintiff states that, based on Defendants' knowledge of Plaintiff's profession and the language used by Defendants (calling him a "liar" and a "cheater"), it was Defendants' intention to reach all of Plaintiff's current and prospective clients. *Id.* ¶¶ 17–18; *see also* Pl.'s Opp'n 3–4 (arguing that Defendants "must have known that Plaintiff had current clients"). Not only was the interference the Defendants' sole motive, the means by which Defendants interfered was improper because the comments were false and defamatory. Am. Compl. ¶ 19.

**\*4**  Defendants maintain that the proposed Amended Complaint is still deficient. First, Plaintiff fails to allege that Defendants knew or could have known of a specific business relationship, to say nothing of a failure to make the required showing that it was that client relationship with which she sought to interfere. Defs.' Reply Supp. Mot. Dismiss ("Defs.' Reply") 3 ("Plaintiff alleges *essentially the opposite*—that defendants were generally directing comments at everyone who might be a client."). Second, Plaintiff fails to demonstrate either that Defendants' sole purpose was to harm his business relations or that Defendants used wrongful means to interfere with those relations. *Id.* at 4–5. With respect to the question of Defendants' purpose in posting the comments, Defendants point to the context in which they were made; a website meant to "allow individuals who have been lied to and cheated on in their personal relationships to express themselves about their experience and to 'find support'...." *Id.* at 5.

For Plaintiff's tortious interference claim to survive, Plaintiff must allege that Defendants "directly interfered with the [identified] business relationship by directing some activities towards the third party and convinc[ing] the third party not to enter into a business relationship with the plaintiff." *Zdenek Marek v. Old Navy (Apparel), Inc.,* 348 F.Supp.2d 275, 280 (S.D.N.Y.2004) (internal quotation marks omitted); *see also G.K.A. Beverage Corp. v. Honickman,* 55 F.3d 762, 768 (2d Cir.1995). Plaintiff fails to point to any client, current or prospective, about

which Defendants had knowledge and to whom their comments were directed. *See Old Navy,* 348 F.Supp.2d at 280 ("It is due to this utter failure to allege any knowledge on the part of defendants of any business relationships with which they allegedly interfered that plaintiff's claim must fail."). Plaintiff would have the Court infer from the Defendants' comments (accusing Plaintiff of being a "liar" and a "cheater") and the fact that Defendants "must have known that Plaintiff had current clients" that Defendants specifically targeted those clients. Am. Compl. ¶¶ 17–18; Pl.'s Opp'n 3–4. Plaintiff provides no cases to support the idea that potentially harmful statements posted on a website such as this one, coupled with the knowledge that the statements might be read by third parties, is sufficient to show that one or more relationships were intentionally interfered with by Defendants. In their search for a lawyer, the clients, as asserted by Plaintiff, were influenced by the comments in their decision not to retain Plaintiff's services. [5] Even though Plaintiff's reputation has suffered, I am unwilling to take the leap from generalized comments calling Plaintiff a "liar" and a "cheater"—on a website called "liarscheatersrus" no less—to actions directed at specific business relationships. *See Memnon v. Clifford Chance US, LLP,* 667 F.Supp.2d 334, 349 (S.D.N.Y.2009) ("[T]he wrongful conduct that is relevant [is] that which was directed not at the plaintiff, but at the third party with whom the plaintiff has or seeks to have a relationship."); *Dessert Beauty, Inc. v. Fox,* 568 F.Supp.2d 416, 429 (S.D.N.Y.2008) (posting statements on a website directed at the "public and customers at large [was] far too general to constitute a specific third party for purposes of a tortious interference claim" (internal quotation marks omitted)); *see also DiFolco,* 622 F.3d at 115 (describing "harm to ... career development, economic harm in the form of lost income and benefits, harm to her professional and personal reputation, and harm consisting of mental anguish and emotional distress" as "too conclusory, vague, and lacking in a factual basis to make out [plaintiff's] tortious interference claim"). To do otherwise would be to elevate conceivable, "defendant-unlawfully-harmed-me" accusations to the level of plausibility. *Iqbal,* 129 S.Ct. at 1949.

[5] Defendants do not even raise the issue of whether Plaintiff satisfied the "but for" causation requirement in the claim. *See Riddell Sports Inc. v. Brooks,* 872 F.Supp. 73, 78 (S.D.N.Y.1995) ("[A] plaintiff must allege that, but for defendant's conduct, his prospective business relations would have coalesced

into an actual contract."). I am doubtful, though, that Plaintiff has even satisfied this requirement. While Plaintiff says that clients refused to enter into agreements or continue established business relationships with him after reading the comments, *see* Am. Compl. ¶ 16, "mere contentions that third parties canceled contracts ... because of the alleged defamatory remarks made by [Defendants], offered with no factual basis to support the allegations, [are] insufficient to state a cause of action for tortious interference with contractual relations." *M.J. & K. Co. v. Matthew Bender and Co.,* 220 A.D.2d 488, 631 N.Y.S.2d 938, 940 (N.Y.App.Div.1995); *see also Fine v. Dudley D. Doernberg & Co.,* 203 A.D.2d 419, 610 N.Y.S.2d 566, 567 (N.Y.App.Div.1994) ("The requirements for establishing liability for interference with prospective contractual relations are more demanding than those for interference with [the] performance of an existing contract." (internal quotation marks omitted)).

**\*5** Plaintiff's claim for tortious interference with prospective business relations is dismissed, and Plaintiff's request for leave to amend the Complaint as to this claim is denied as futile.

## C. Defamation

A plaintiff asserting a claim for defamation is required to plead: "(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege." *Albert v. Loksen,* 239 F.3d 256, 265–66 (2d Cir.2001) (footnotes omitted) (citing *Dillon v. City of New York,* 261 A.D.2d 34, 704 N.Y.S.2d 1, 5 (N.Y.App.Div.1999)). "In evaluating whether a cause of action for defamation is successfully pleaded, the words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader, and if not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction." *Dillon,* 704 N.Y.S.2d at 5 (internal brackets omitted). "Courts will not strain to find defamation where none exists. Loose, figurative or hyperbolic statements, even if deprecating the plaintiff, are not actionable." *Id.* (internal quotation marks and citations omitted). And it is well-established that "[t]ruth provides a complete defense to defamation claims." *Dillon,* 704 N.Y.S.2d at 6 (citing, *inter alia, Rinaldi v. Holt, Rinehart & Winston, Inc.,* 42

2012 WL 541089

N.Y.2d 369, 397 N.Y.S.2d 943, 366 N.E.2d 1299, 1306 (N.Y.1977)).

*i. Plaintiff's Proposed Amended Complaint*

Plaintiff seeks leave to amend the Complaint to add an additional claim for defamation. Plaintiff states that Defendants' comments were "untrue and defamatory in that they falsely reported Plaintiff's professional character, actions and statements, and were made with an intent to harm Plaintiff professionally." Am. Compl. ¶ 25. The comments constitute *slander per se* "because they impugn Plaintiff's honesty, trustworthiness, dependability, and professional fitness and abilities by falsely charging [him] with conduct that would tend to injure [his] trade or business." *Id.* at ¶ 29, 397 N.Y.S.2d 943, 366 N.E.2d 1299.

*ii. Defendants' Statements are Hyperbolic Opinions*

The key question here is whether, drawing all reasonable inferences in favor of Plaintiff, the comments contain assertions of fact or opinion. The New York Court of Appeals distilled the following three factors which courts are instructed to consider in determining whether a statement is one of fact or opinion:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal [to] readers or listeners that what is being read or heard is likely to be opinion, not fact.

*6  *Brian v. Richardson,* 87 N.Y.2d 46, 637 N.Y.S.2d 347, 660 N.E.2d 1126, 1129 (N.Y.1995) (internal quotation marks and citations omitted), *cited in Levin v. McPhee,* 119 F.3d 189, 196 (2d Cir.1997). The third factor "lends both depth and difficulty to the analysis" and is critical to determining whether the alleged defamatory statements consist of "assertions of facts [or] nonactionable expressions of opinion." *Id.* It is important for a court to "consider the content of the communications

as a whole, as well as its tone and apparent purpose." *Id.* at 1129–30 (citation omitted). "Rather than sifting through a communication for the purpose of isolating and identifying assertions of fact, the court should look to the over-all context in which the assertions were made and determine on that basis whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff." *Id.* at 1130 (internal quotation marks omitted). Beyond the "immediate context in which the disputed words appear," the New York Court of Appeals requires courts "to take into consideration the larger context in which the statements were published, including the nature of the particular forum." *Id.*

Defendants argue that the comments are hyperbolic statements of opinion. *See* Defs.' Reply 8–10. With the possible exception of the statement that Plaintiff "rents or finances everything and owns absolutely nothing"—a statement clearly capable of being proven true or false—the comments, even if viewed in isolation, are opinion. Defendants state that Plaintiff "lied and cheated all through his 40 years of life", and that, because Plaintiff is an attorney, "he's great at lying and covering it up without batting an eye." Comments such as these are clearly hyperbolic. And when viewed within the larger context of the website on which they were posted, there can be no doubt that a reasonable reader would understand the comments to be opinion. As Defendants note, liarscheatersrus.com is "specifically intended to provide a forum for people to air their grievances about dishonest romantic partners ." *Id.* at 9, 637 N.Y.S.2d 347, 660 N.E.2d 1126. The average reader would know that the comments are "emotionally charged rhetoric" and the "opinions of disappointed lovers." *Id.* Of course the Internet makes it more likely that a greater number of people will read comments such as these, and thereby amplify the impact they may have on a person, but this does not change the underlying nature of the comments themselves. *See Sandals Resorts Intern., Ltd. v. Google, Inc.,* 86 A.D.3d 32, 925 N.Y.S.2d 407, 415–16 (N.Y.App.Div.2011) (noting the Internet "encourage[es] a freewheeling, anything-goes writing style", and that "readers give less credence to allegedly defamatory remarks published on the Internet than to similar remarks made in other contexts" (internal quotation marks omitted)). Because I find that Defendants' comments are opinion, the Plaintiff's request for leave to amend the Complaint to add an additional claim for defamation is

denied as futile. *See* Robert D. Sack, *Sack on Defamation* § 4:3.1 (4th ed. 2011) ("If a statement appears in a place usually devoted to, or in a manner usually thought of as representing personal viewpoints, it is also likely to be understood—and deemed by a court—to be nonactionable opinion.").

### III. CONCLUSION

**\*7** For the foregoing reasons, Defendants' motion to dismiss the Complaint is GRANTED, and the Plaintiffs request for leave to amend the Complaint is DENIED. The Clerk of the Court is directed to close the relevant motions and remove the matter from my docket.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 541089

---

**End of Document**                                          © 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.   6

KeyCite Yellow Flag - Negative Treatment
Distinguished by Bartels v. Incorporated Village of Lloyd Harbor, E.D.N.Y., March 31, 2015

2007 WL 3084977
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

ESTATE OF Courtney L. RATCLIFFE, Nancy
Ratcliffe, and Alfred Ratcliffe, Plaintiff,
v.
PRADERA REALTY COMPANY, Anastasios
Tzezailidis, 287 10th Glass Restaurant, Inc., Timothy
Sherry, Fernando Henao and John Does I-V and
ABC Companies VI-X, being fictitious entities and/
or persons, t/a or d/b/a Pradera Realty Company
and/or 287 10th Glass Restaurant, Inc. jointly,
severally and in the alternative, Defendants.

No. 05 Civ. 10272(JFK).
|
Oct. 19, 2007.

**Attorneys and Law Firms**

David J. Detoffol, Esq., New York, NY, for Plaintiffs the
Estate of Courtney Ratcliffe, Nancy Ratcliffe, and Alfred
Ratcliffe.

Abrams, Gorelick, Friedman & Jacobson, P.C., Glenn
A. Jacobson, Esq., of Counsel, New York, NY, for
Defendants 287 10th Glass Restaurant, Inc., Timothy
Sherry, and Fernando Henao.

*OPINION & ORDER*

JOHN F. KEENAN, United States District Judge.

**BACKGROUND**

**\*1** Before the Court is the motion of Plaintiffs
Alfred Ratcliffe, Nancy Ratcliffe, and the Estate of
Courtney Ratcliffe (collectively, "Plaintiffs") to amend
their complaint, pursuant to Rules 15(a) and 16(b) of the
Federal Rules of Civil Procedure, to include a claim for
exemplary damages based on evidence newly obtained

during the course of discovery. For the following reasons,
Plaintiffs' motion to amend their complaint is granted.

Plaintiffs' claims arise from the tragic accidental death
of Courtney Ratcliffe ("Ms.Ratcliffe"), a 23-year old
college student, who in the early morning of November
1, 2003, sustained fatal head injuries after falling in the
common stairway of the Manhattan apartment building
in which she lived. Plaintiffs brought suit against the
owners of Ms. Ratcliffe's apartment building (collectively,
the "Pradera Defendants") and against 287 10th Glass
Restaurant, Inc., Timothy Sherry, and Fernando Henao,
(collectively, the "Glass Defendants"), the owners and
operators of the Glass restaurant and lounge ("Glass"),
an establishment located approximately two blocks from
Ms. Ratcliffe's residence, where the decedent allegedly
consumed alcohol in the hours prior to her death. In
their Second Amended Complaint ("SAC"), Plaintiffs
asserted causes of action, on behalf of Ms. Ratcliffe's
estate, against the Pradera Defendants for negligence, on
the ground that the handrail of the common stairway
down which Ms. Ratcliffe fell was defective; and against
the Glass Defendants, for negligently serving alcohol to
Ms. Ratcliffe while she was visibly intoxicated in the
hours prior to her death. The SAC also included a
claim of negligence against both the Pradera and Glass
Defendants on behalf of Alfred and Nancy Ratcliffe, Ms.
Ratcliffe's parents. Plaintiffs now seek to file a Proposed
Third Amended Complaint (the "TAC") that includes
new allegations of conduct and a claim for exemplary
damages that relate solely to the Glass Defendants. [1]

---

[1]  The TAC does not contain any new allegations
    or claims against the Pradera Defendants. The
    Pradera Defendants' motion for summary judgment
    seeking dismissal of Plaintiffs' claims and the Glass
    Defendants' cross-claims is fully briefed and will be
    decided by a future Order of the Court.

**DISCUSSION**

Plaintiffs originally moved to amend their complaint on
May 12, 2007. In that motion, Plaintiffs argued that leave
to amend should be granted because Plaintiffs satisfied
the requirements of Rule 15(a). Defendants opposed the
motion on Rule 15(a) grounds. By Order dated July 16,
2007, the Court dismissed Plaintiffs' Rule 15(a) motion
without prejudice to allow Plaintiffs to re-file a motion,
and the defendants to re-file an opposition brief, that

addressed the standard for amendment set forth in Rule 16(b), which governs the amendment of pleadings in cases where a scheduling order has been entered and the motion for amendment occurs after the expiration of the deadline for amendment to pleadings. *See Estate of Ratcliffe v. Pradera Realty Co.,* No. 05 Civ. 10272(JFK), 2007 U.S. Dist. LEXIS 51800 (S.D.N.Y. July 16, 2007). As the Court observed in its Order of July 16, 2007, a scheduling order was entered in this case which set January 11, 2007 as the deadline for amendments to pleadings. *See* First Amended Discovery Plan, Nov. 13, 2006 (Doc # 28.) Here, therefore, "the lenient standard [for amendment of pleadings] under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.' " *Grochowski v. Phoenix Constr.,* 318 F.3d 80, 86 (2d Cir.2003) (quoting Fed. R. Civ. P 15(a) and 16(b)). Whether good cause exists within the meaning of Rule 16(b) turns upon the diligence of the party seeking to amend. *Id.* In addition, "while the absence of prejudice to a nonmoving party may be relevant to leave to amend under Rule 15(a), it does not fulfill the good cause requirement of Rule 16(b)." *Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.,* No. 02 Civ. 1230(LMM)(THK), 2006 U.S. Dist. LEXIS 9931, at *20 (S.D.N.Y. Mar. 10, 2006). Where the moving party demonstrates that it could not have met the deadline of a scheduling order despite the exercise of diligence, the court may extend the deadline and thus grant the movant leave to amend the complaint. *See Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 340 (2d Cir.2000).

**\*2** In the TAC, Plaintiffs seek to add a claim for exemplary damages. The TAC contains the allegation that the Glass Defendants' negligent conduct included their "fail[ure] to monitor the TIPS training certification of its bartenders," (Pl. Mem., Ex. A ¶ 33), and states that the Glass Defendants' conduct, in serving Ms. Ratcliffe while she was visibly intoxicated, was "wanton, willful and reckless" and constituted "gross negligence." *(Id.)* The TAC also expressly cites to New York's Dram Shop Act, N.Y. G.O.L. § 11-101, as authority for the relief sought.

Plaintiffs contend that good cause for the proposed amendment exists because Plaintiffs only recently obtained, and could not have obtained earlier with due diligence, the evidence upon which their claim for exemplary damages is based. The evidence at issue

consists, first, of the deposition testimony of Vanessa Vega ("Vega") and, second, of records that Plaintiffs subsequently obtained as a result of facts revealed in Vega's deposition.

Vega, the general manager of Glass who worked at Glass on the night of October 31, 2003, and the early morning hours of November 1, 2003, was deposed on May 2, 2007, while fact discovery was ongoing.[2] Vega testified that she was certified as a trainer in Training in Intervention Procedures ("TIPS"), a program which provides training related to the responsible sale and service of alcohol. Although TIPS instruction for employees of bars and restaurants is not mandatory under New York law, Glass required all of its employees to participate in the TIPS training. Vega testified that she administered the TIPS training course to the entire Glass staff on a Sunday afternoon in late October, 2003. After the training, Vega distributed a 40-question multiple choice test to the employees. The test forms were later mailed to Health Communications, Inc., the company that owns TIPS. Among the employees who attended the TIPS training and who took the test was Homberto Guzman ("Guzman"), a cocktail server and bartender at Glass, who worked as a bartender at Glass on the night of October 31, 2003. Vega testified that Guzman failed the TIPS test that was administered to Glass's employees in October, 2003.

[2]    Pursuant to the Second Amended Discovery Plan (Doc. # 35), entered on April 30, 2007, all discovery, apart from expert depositions, was to be completed by July 2, 2007.

As a result of the information gleaned from Vega's deposition testimony, Plaintiffs subpoenaed from Health Communications, Inc. records of the Glass employees' TIPS test results as well as email correspondence between Vega and Health Communications, Inc. Those records were received by Plaintiffs on June 7, 2007. The record of the results of the TIPS test that Vega administered to the Glass employees indicated that the test was administered on October 26, 2003, and that "Homberto Gozman" failed the test. (*See* Pl. Mem ., Ex. D.) The subpoenaed documents also included an email, dated October 30, 2003, that Vega sent to a Health Communications' processing manager, in which Vega stated that she was aware that Guzman had failed the test and expressed an interest in having Guzman re-take the test.

Case 9:16-cv-00528-TJM-TWD    Document 59    Filed 08/02/18    Page 34 of 86
Estate of Ratcliffe v. Pradera Realty Co., Not Reported in F.Supp.2d (2007)

2007 WL 3084977

**\*3** Plaintiffs contend that the above-mentioned evidence establishes that Vega permitted Guzman to work as a bartender on the night of Ms. Ratcliffe's death, despite her prior knowledge that Guzman had failed the TIPS test, and that this conduct constitutes "an element of fault and/or intent on the part of the bar that supports a claim of wanton and reckless misconduct and blatant disregard for a known hazard, and thus supports a claim for punitive damages." (Pl. Mem. at 7.)

The Glass Defendants argue that no good cause exists for Plaintiffs' amendment, because Plaintiffs could have amended their complaint at an earlier date to include the allegation of gross negligence and a claim for exemplary damages. While they do not concede Plaintiffs' entitlement to pursue exemplary damages, the defendants argue that Plaintiffs plausibly could have asserted a claim for gross negligence on the basis of the New York City Medical Examiner's Report of Autopsy (the "ME Report"), which included findings regarding Ms. Ratcliffe's high blood alcohol content and which Plaintiffs possessed as of December 29, 2006. In support of their argument that Plaintiffs have sought to allege gross negligence at an earlier date, the defendants point to various statements made by Plaintiffs' counsel, David DeToffol, Esq. ("DeToffol"). First, the defendants point to DeToffol's statement, in his affirmation in support of Plaintiffs' previous motion to amend, that "findings of gross negligence could be garnered from" the ME's Report. (Decl. of Thomas Catalano, Ex. K ¶ 6.) Second, the defendants cite to DeToffol's statement, in the same affirmation, that the January 2007 deposition testimonies of Ms. Ratcliffe's apartment-mates also revealed evidence of the defendants' gross negligence. (*Id.* ¶ 8.) Finally, the defendants cite DeToffol's statement, made at a status conference held before the Court on April 23, 2007, that Plaintiffs intended to pursue claims of gross negligence. Thus, the Glass Defendants contend that, as early as January 2007, Plaintiffs believed that the defendants had been grossly negligent and therefore were in a position to seek leave to amend the SAC to add a claim for exemplary damages. Plaintiffs have no good cause, the defendants insist, for waiting until May 2007 to amend their complaint when the amendment could have been made in five months earlier.

Although Plaintiffs may have contemplated at an earlier date asserting a claim for exemplary damages on the basis of the findings contained in the ME Report and

the deposition testimony of Ms. Ratcliffe's apartment-mates, the fact remains that Plaintiffs did not actually decide to allege that the Glass defendants were culpable of gross negligence until Plaintiffs had deposed Vega and acquired the TIPS records. As the defendants themselves point out, under New York law, it would have been insufficient for Plaintiffs to seek compensatory, let alone exemplary, damages solely on the basis of the allegation that the ME Report revealed that Ms. Ratcliffe had a high blood alcohol content. (*See* Pl. Mem. at 14, citing, inter alia, *Romano v. Stanley,* 90 N.Y.2d 444, 661 (1997), for the proposition that "evidence of a high blood alcohol content ... alone cannot establish, as a matter of law, the 'visible intoxication' " requirement set forth in New York's Dram Shop statute). It is evident that, regardless of DeToffol's conclusory statements in his earlier affirmation, Plaintiffs believed they were able to assert a claim for exemplary damages only after the new evidence came to light.

**\*4** The Glass Defendants do not, and cannot, argue, that evidence arising from Vega's deposition or the TIPS records could have been discovered earlier through Plaintiffs' exercise of due diligence. It was not until May 2007 that Plaintiffs deposed Vega and not until June 2007 that Plaintiffs obtained the TIPS records. Plaintiffs sought to amend their complaint on May 12, 2007, a mere ten days after Vega was deposed. Thus, Plaintiffs have shown that they could not have obtained the new facts earlier and that they exercised diligence in seeking to amend soon after learning the new facts. Plaintiffs therefore have shown good cause for their proposed amendment, within the meaning of Rule 16(b).

Further, the procedural posture of this case weighs in favor of granting amendment. The Glass defendants have no motion for summary judgment pending, and at the time the instant motion was filed, discovery was ongoing. *Compare Grochowski v. Phoenix Constr.,* 318 F.3d 80, 86 (2d Cir.2003) (upholding denial of leave to amend where amendment was sought after discovery had closed and while summary judgment motion was pending). Thus, there is no indication that the Glass Defendants would be prejudiced by the filing of the TAC or that amendment would unduly delay this litigation.

Having determined that Plaintiffs have shown good cause for their proposed amendment under Rule 16(b), the Court next must address the factors set forth in Rule

15(a). *See Parker,* 204 F.3d at 340 (noting that movant seeking leave to amend must satisfy the requirements of both Rule 16(b) and Rule 15(a)). Rule 15(a) provides, in relevant part, that "a party may amend the party's pleading only by leave of court ... and leave shall be freely given when justice so requires." A Court should deny a motion to amend only for good reasons, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182 (1962). The Glass Defendants argue that, even if good cause is deemed to exist for the proposed amendment, the amendment should be denied on the ground of futility.

Where a party opposes leave to amend on "futility" grounds, the appropriate legal standard is whether the proposed amended complaint fails to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g., S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Bldg. 1 Housing Dev. Fund Co.,* 608 F.2d 28, 42 (2d Cir.1979) ("A trial court does not abuse its discretion in denying leave to amend a complaint which even as amended would fail to state a cause of action."); *Barrett v. United States Banknote Corp.,* 806 F.Supp. 1094, 1098 (S.D.N.Y.1992) ("Leave to amend will not be granted under Rule 15(a), however, where there are no colorable grounds for the proposed claim-that is, where amendment would prove futile.... The 'colorable grounds' requirement mandates an inquiry-comparable to that required by Fed.R.Civ.P. 12(b)(6) ...-as to whether the proposed amendments state a cognizable claim.... In sum, amendment is futile if a proposed claim could not withstand a motion to dismiss made pursuant to Fed.R.Civ.P. 12(b)(6).").

**\*5** On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the factual allegations of the complaint as true. *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). The issue is not whether the plaintiff will ultimately prevail, but whether it is entitled to offer evidence to support its claim. *Id.* Dismissal is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957) (internal quotations omitted)).

A court should "read the complaint generously and draw reasonable inferences in favor of the pleader." *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). The district court should grant a Rule 12(b)(6) motion "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984) (citing *Conley,* 355 U.S. at 45-46). Except in certain circumstances, consideration of a motion to dismiss must focus on the allegations contained on the face of the complaint. *See Cortec Industries, Inc. v. Sum Holding, L.P.,* 949 F.2d 42, 47 (2d Cir.1991). "Because the Court's futility inquiry is governed by the same principles as those employed by the court when deciding on a Rule 12(b)(6) motion to dismiss, evidence outside the face of the complaint is not properly considered." *Brezel v. Deloitte & Touche, LLP,* No. 03 Civ. 1540(RMB), 2004 U.S. Dist. LEXIS 1841, at \*3-4 (S.D.N.Y. Feb. 9, 2004) (internal quotation marks and citations omitted).

The Glass Defendants argue that the proposed amendment is futile because Plaintiffs have "identified no evidence which, even if accepted as true, would entitle plaintiffs to punitive damages...." (Def. Mem. at 11.) In support of their argument, the defendants state that Plaintiffs have failed to marshal any evidence to establish that Ms. Ratcliffe was served alcohol at Glass on the night of her death; that Ms. Ratcliffe exhibited any signs of intoxication while she was at Glass; or that, even assuming that Ms. Ratcliffe was served alcohol at Glass, she was served by Guzman, who failed the TIPS course, rather than by the other bartender who was working on October 31, 2003, who had passed the TIPS course. The defendants specifically cite the deposition testimony of various witnesses who were present at Glass on the night of Ms. Ratcliffe's death, including Ms. Ratcliffe's apartment-mates and employees of Glass, and claim that none of these witness have offered any testimony to show that Ms. Ratcliffe was actually served alcohol at Glass or that she exhibited signs of intoxication, such as slurred speech, dizziness, or unsteady gait. The defendants also contend that the allegation that Guzman failed his TIPS training and was working at Glass on the night of Ms. Ratcliffe's death is irrelevant to a claim for exemplary damages, because TIPS training is not required by New York law and was administered voluntarily by Glass to its employees, and because the allegation rests on the " groundless assumption" that it was Guzman, rather than

Case 9:16-cv-00528-TJM-TWD   Document 59   Filed 08/02/18   Page 36 of 86
Estate of Ratcliffe v. Pradera Realty Co., Not Reported in F.Supp.2d (2007)

2007 WL 3084977

the other bartender, who served Ms. Ratcliffe. (Def. Mem. at 15.)

**\*6** The Glass Defendants' "futility" argument must be rejected because it is based on Plaintiffs' purported failure to produce sufficient evidence, during the course of fact discovery, to support a claim for exemplary damages. In deciding whether the proposed amendment is futile, the Court cannot consider evidence that arises from the deposition testimony of fact witnesses or that otherwise falls outside of the complaint. *See Brezel,* 2004 U.S. Dist. LEXIS 1841, at \*4 (holding that court could not consider deposition testimony in determining whether proposed amendment was futile under rule 15(a)); *Hannah v. Metro-North Commuter R. Co.,* 753 F.Supp. 1169, 1178 (S.D.N.Y.1990) (on motion to amend, "it would be improper for the Court to address these arguments, as they require consideration of factual matters outside the scope of the complaint"). Thus, in determining whether Plaintiffs' proposed added claim of exemplary damages is futile, the Court must limit its consideration to the allegations contained in the TAC and decide whether, under New York law, Plaintiffs have sufficiently stated a claim for punitive, or exemplary damages. *See Finlay v. Simonovich,* No. 97 Civ. 1455, 1997 U.S. Dist. LEXIS 19100, at \*11 (S.D.N.Y. Dec. 2, 1997) (in deciding whether proposed amended complaint, in which plaintiff seeks to add claim for punitive damages, is futile, "[t]he issue ... is whether plaintiff's proposed amended complaint states sufficient facts to support punitive damages under New York law").

Under New York's Dram Shop Act, N.Y. General Obligations Law § 11-101, which expressly provides for the right to recover exemplary damages, a plaintiff's allegations that the defendant acted in a "wanton, willful, and reckless" manner are sufficient to state a claim for exemplary damages. *See, e.g., McCauley v. Carmel Lanes, Inc.,* 178 A.D.2d 835, 836-37 (N.Y.App. Div.3d Dep't 1991) (holding that "plaintiff's allegations of defendant's 'wanton, willful and reckless' conduct are sufficient to allow" plaintiff to amend complaint to include claim for exemplary damages); *McCulloch v. Standish,* 167 A.D.2d 723, 724 (N.Y.App. Div.3d Dep't 1990). Here, as discussed above, the TAC includes the allegation that the Glass Defendants' conduct was "wanton, willful and reckless constituting gross negligence ...." (Pl. Mem., Ex. A ¶ 33.) Whether Plaintiffs will be able to offer facts in support of their claim that the defendants acted with gross negligence sufficient to withstand summary judgment remains to be seen. Nevertheless, for purposes of determining whether the proposed amendment is futile, the allegations contained in the TAC regarding the Glass Defendants' conduct are sufficient to state a claim for exemplary damages. Accordingly, Plaintiffs' proposed TAC cannot be rejected as futile.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to file the TAC is GRANTED. The Glass Defendants have twenty (20) days from the entry of this Order to file an amended answer. Plaintiffs and the Glass Defendants are directed to submit to the Court, within ten (10) days of the entry of this Order, a joint proposed briefing schedule for the Glass Defendants' motion for summary judgment.

**\*7  SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 3084977

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 4517975
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Steffon GREENE, Plaintiff,

v.

Kevin WALSH, et al., Defendants.

Civil Action No. 9:05-CV-00327 (TJM/DEP).
|
Sept. 29, 2008.

West KeySummary

1    **Civil Rights**

   👉 Criminal Law Enforcement;Prisons

   An inmate's claim against the sheriff for the
   alleged failure to protect the inmate from
   harm was subject to summary judgment in
   favor of the sheriff where he had no personal
   involvement. The inmate and another inmate
   had been locked in separate cells following
   a verbal altercation. A correctional officer
   opened the cells to allow another inmate to
   move about. When the cells were opened,
   the other inmate immediately rushed into the
   inmate's cell and punched him in the face.
   The correctional officer immediately sounded
   an alarm and the situation was quickly
   terminated. The sheriff had no personal
   involvement in the incident at all. 42 U.S.C.A.
   § 1983.

   Cases that cite this headnote

**Attorneys and Law Firms**

Steffon Greene, pro se.

Hon. Gordon J. Cuffy, Onondaga County Attorney,
Michael McCarthy, Esq., Deputy County Attorney, of
Counsel, Syracuse, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.

 **\*1** This *pro se* action brought pursuant to 42 U.S.C. §
1983 was referred by this Court to the Hon. David E.
Peebles, United States Magistrate Judge, for a Report
and Recommendation pursuant to 28 U.S .C. § 636(b)
and Local Rule N.D.N.Y. 72.3(c). The Report and
Recommendation dated June 24, 2008 recommended that
the pending motion for summary judgment be granted
and the action be dismissed. No objections to the Report
and Recommendation have been filed and Plaintiff's
time to do so has expired. Furthermore, after examining
the record, this Court has determined that the Report
and Recommendation is not subject to attack for plain
error or manifest injustice. Accordingly, the Court adopts
the Report and Recommendation for the reasons stated
therein.

It is therefore,

**ORDERED** that Defendant's motion (Dkt. No. 44) is
**GRANTED** and Plaintiff's claims against defendant Kevin
Walsh are **DISMISSED, with prejudice,** and Plaintiff's
claims against Corrections Sergeant LeBoeuf and Dr.
Mark Johnstone are **DISMISSED, without prejudice.** The
Clerk of the Court is instructed to mark this case closed.

**IT IS SO ORDERED.**

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

Plaintiff Steffon Greene, a former prison inmate who is
proceeding *pro se* and *in forma pauperis,* has commenced
this civil rights action pursuant to 42 U.S.C. § 1983
against the Onondaga County Sheriff and various other
employees of the County, including a medical doctor,
complaining of constitutional violations alleged to have
occurred during the time of his confinement in a prison
facility operated by the County. In his complaint, as
amended, plaintiff asserts claims stemming from the
failure of corrections officers to protect him from a fellow
inmate known to be antagonistic toward him, as well
as the alleged failure of medical personnel to properly

diagnose and treat injuries suffered at the hands of that other inmate. Plaintiff seeks recovery of compensatory damages in the amount of $18 million based upon the assault, and $1 million based upon the defendants' failure to properly diagnose and treat his resulting injuries, and additionally seeks punitive damages in the sum of $250,000 against each of the named defendants.

Now that pretrial discovery has concluded, the sole defendant served and appearing in the action, Onondaga County Sheriff Kevin Walsh, has moved for summary judgment requesting dismissal of plaintiff's claims against him, arguing that they are substantively deficient and additionally asserting his entitlement to qualified immunity.[1] Because neither plaintiff's complaint nor the remaining portions of the record now before the court disclose any evidence of his personal involvement in the constitutional deprivations alleged, I recommend that the defendant's motion for summary judgment be granted.

[1]     In his motion defendant also seeks, in the alternative, an order precluding the plaintiff from offering expert medical testimony at trial in light of his failure to properly disclose his intention to do so during the course of pretrial discovery. In light of my recommendation with regard to the substantive portion of defendant's motion it is unnecessary to address this alternative request for relief.

I. *BACKGROUND*[2]

[2]     As will be seen, in light of the plaintiff's failure to respond to the defendant's motion, the facts recited in defendant's Local Rule 7.1(a)(3) Statement of Material Facts are deemed to have been established, for purposes of the instant motion. *See* pp. 9-11, *post.* In light of the procedural posture of the case, however, all inferences will be drawn, and any residual ambiguities resolved, in favor of the plaintiff. *See Wells-Williams v. Kingsboro Psychiatric Ctr.,* No. 03-CV-134, 2007 WL 1011545, at *2 (E.D.N.Y. Mar. 30, 2007) (citations omitted)

At the times relevant to this proceeding the plaintiff, who was subsequently transferred into the custody of the New York State Department of Correctional Services ("DOCS"), and later released from prison altogether, was an inmate at the Onondaga County Justice Center ("OCJC"), located in Syracuse, NY. Defendant's Local Rule 7 .1(a)(3) Statement (Dkt. No. 44-10) ¶ 8; *see also* Amended Complaint (Dkt. No. 8). On May 30,

2004, while housed at the OCJC, plaintiff and Joseph O'Donnell, another inmate, became involved in a verbal altercation concerning use of the jail phone. Defendant's Local Rule 7.1.(a)(3) Statement (Dkt. No. 44-10) ¶ 9. As a result of the incident both of the participants in the argument were locked into separate cells, and a "no contact" order was issued for each inmate. *Id.;* Defendant's Motion (Dkt. No. 44) Exh. B.

**\*2**   At or about 11:30 am on the following day Corrections Sergeant LeBoeuf, who had arrived to relieve the deputy on duty in the pod for lunch, noted the "locked in" status of the plaintiff and O'Donnell, but briefly unlocked the two inmates' cells in order to allow a steward inmate to retrieve their lunch trays.[3] Defendant's Local Rule 7.1.(a)(3) Statement (Dkt. No. 44-10) ¶ 10; Defendant's Motion (Dkt. No. 44) Exh. C. When the two cells were unlocked, inmate O'Donnell immediately rushed into the plaintiff's cell and punched him. Defendant's Local Rule 7.1.(a)(3) Statement (Dkt. No. 44-10) ¶¶ 11, 13; Defendant's Motion (Dkt. No. 44) Exh. C. Upon witnessing the incident, Corrections Sergeant LeBoeuf signaled a "code orange" alert, indicating the existence of an emergency on the pod. Defendant's Local Rule 7.1.(a)(3) Statement (Dkt. No. 44-10) ¶ 11; Defendant's Motion (Dkt. No. 44) Exh. C. Several corrections workers responded to the "code orange", and the incident was ultimately terminated with the return of inmate O'Donnell to the first floor of the pod, and of the plaintiff to his cell. Defendant's Local Rule 7.1.(a)(3) Statement (Dkt. No. 44-10) ¶¶ 13-14.

[3]     It is apparent from defendant's papers, although not expressly so stated, that the plaintiff has incorrectly spelled that corrections sergeant's name as "LeBeaf". The clerk is hereby requested to adjust his records to reflect the correct spelling of that individual's name as "LeBoeuf."

Shortly following the incident the plaintiff was examined by Mary Beth Ranier, a nurse at the facility. Defendant's Local Rule 7.1.(a)(3) Statement (Dkt. No. 44-10) ¶ 14; Defendant's Motion (Dkt. No. 44) Exhs. C and E (Plaintiff's Medical Records).[4] Upon examination it was determined that plaintiff had suffered a hematoma to his left eye, with "moderate swelling noted." Defendant's Local Rule 7.1.(a)(3) Statement (Dkt. No. 44-10) ¶ 15; Defendant's Motion (Dkt. No. 44) Exh. E. Ice was administered and Motrin 800 prescribed for plaintiff's pain, and Greene was placed on a physician's assistant

sick call list for further evaluation. Defendant's Local Rule 7.1. (a)(3) Statement (Dkt. No. 44-10) ¶ 15; Defendant's Motion (Dkt. No. 44) Exh. E at pp. 4-5.

[4]    Plaintiff's medical records, which were compiled and forwarded to the court in hard copy, have been filed under seal pursuant to an order issued on October 17, 2007. *See* Dkt. No. 45.

On June 1, 2004, plaintiff was seen by Physician's Assistant ("PA") Sara Austin-Wilson. Defendant's Local Rule 7.1. (a)(3) Statement (Dkt. No. 44-10) ¶ 16. PA Austin-Wilson observed that the area affected by plaintiff's reported injury "puffed up" when he blew his nose, and further noted mild left periorbital ecchymosis and palpable swelling, recommending an outside evaluation to rule out the existence of any fracture. *Id.* ¶ 16; Defendant's Motion (Dkt. No. 44) Exh. E at pp. 4-5.

Plaintiff was transferred later that same day to the Upstate Medical Center emergency room for evaluation. Defendant's Local Rule 7.1(a)(3) Statement ¶ 17. There, Greene was examined by Dr. Peter J. Mariani, and x-rays of his left supraorbital region were taken. *Id.* ¶ 18; Defendant's Motion (Dkt. No. 44) Exh. E at pp. 15-19. As a result of Dr. Mariani's examination and review of plaintiff's x-rays, "[n]o obvious osseous abnormality" was discerned. *Id.* Plaintiff was ultimately discharged from Upstate at approximately 3:00 pm on the following day, and returned to the OCJC. *Id.* ¶ 19; Defendant's Motion (Dkt. No. 44) Exh. E at pp. 11-12. A consultation return form completed at the hospital's emergency room listed a diagnosis of plaintiff's condition as a head injury with an assessment of mild to moderate pain, with no dizziness or blurred vision, and recommended neurological checks quarterly for a twenty-four hour period. *Id.* ¶ 19; Defendant's Motion (Dkt. No. 44) Exh. E at p. 12.

**\*3**  Plaintiff was transferred into DOCS custody on June 4, 2004 and initially designated to the Elmira Correctional Facility ("Elmira"). Defendant's Local Rule 7.1.(a)(3) Statement (Dkt. No. 44-10) ¶ 21. Upon that transfer Greene's medical records were transmitted to the DOCS with a note on the cover sheet indicating "Recent Injury to Eye-Punched in Eye-See Report." *Id.* ¶ 22; Defendant's Motion (Dkt. No. 44) Exh. E at p. 3. In his complaint plaintiff asserts that on June 15, 2004, following his transfer into Elmira, he underwent a CAT scan at the Arnot Ogden Medical Center, located in Elmira, New York, revealing a "depressed orbital floor fracture" in his left eye with "associated blood in the left maxillary sinus." Amended Complaint (Dkt. No. 8) Section 6(b) ¶¶ 7-8. Plaintiff subsequently underwent corrective surgery on June 24, 2004 to repair the damage to his left orbital bone, and now alleges that he has a vitallium plate in the floor of his left orbit and suffers from a variety of resulting symptoms, including "scarring, numbness of his left cheek and upper lip area, chronic rhinitus ... and the need now for corrective eye glasses ." *Id.* at ¶ 11.

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on March 15, 2005, and later filed an amended complaint-the operative pleading now before the court-on April 25, 2005.[5] Dkt. Nos. 1, 8. In his complaint, as amended, plaintiff asserts that the defendants failed to adequately protect him from harm while incarcerated in the OCJC, and additionally that the corrections and medical officials involved were deliberately indifferent to his medical needs stemming from the incident. Named as defendants in plaintiff's complaint are Onondaga County Sheriff Kevin Walsh, Corrections Sergeant LeBoeuf, Dr. Mark Johnstone, M.D., and a single John Doe defendant.

[5]    While plaintiff applied for and was granted leave to amend his complaint to identify the defendant previously sued only as "Officer John Doe", *see* Dkt. No. 31, he failed to do so, later advising the court in writing that he was opting to proceed based on the earlier-filed amended complaint. *See* Dkt. No. 41.

On October 15, 2007 defendant Walsh, the only one of the named defendants who has been served and appeared in the action, filed a motion seeking summary judgment dismissing plaintiff's complaint or, alternatively, an order precluding the admission of expert medical testimony on plaintiff's behalf at trial. Dkt. No. 44. In his motion, defendant Walsh offers a variety of grounds for dismissal of plaintiff's claims including, *inter alia,* lack of personal involvement, additionally seeking a finding that he is entitled to qualified immunity. Defendant's motion, to which plaintiff has not responded, is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). [6] *See also* FED. R. CIV. P. 72(b).

6      Defendant's notice of motion contains language
        advising the plaintiff of the potential consequences
        of failing to properly oppose the motion, and in that
        regard generally complies with the requirements of
        N.D.N.Y. L.R. 56.2.

## III. *DISCUSSION*

### A. *Plaintiff's Failure to Oppose Defendant's Motion for Summary Judgment*

Before turning to the merits of plaintiff's claims, a threshold issue to be addressed is the legal significance, if any, of his failure to oppose defendant's summary judgment motion, and specifically whether that failure automatically entitles the defendant to dismissal of plaintiff's complaint, based upon his motion.

**\*4** This court's rules provide that

> [w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

N.D.N.Y.L.R. 7.1(b)(3). Undeniably, *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions. *See Jemzura v. Public Serv. Comm'n, 961 F.Supp. 406, 415 (N.D.N.Y.1997)* (McAvoy, C.J.)). Despite this measure of deference, the failure of an unrepresented plaintiff to oppose a summary judgment motion does not preclude the court from granting the motion. *Robinson v. Delgado,* No. 96-CV-169, 1998 WL 278264, at \*2 (N.D.N.Y. May 22, 1998) (Pooler, J. & Hurd, M.J.); *Cotto v. Senkowski,* No. 95-CV-1733, 1998 WL 278264, at \*1 (N.D.N.Y. Oct. 23, 1997) (Pooler, J. & Hurd, M.J.); *Wilmer v. Torian, 980 F.Supp. 106, 106-07 (N.D.N.Y.1997)* (Pooler, J. & Hurd, M.J.). As can be seen by the face of Local Rule 7.1(b)(3), however, before summary judgment can be granted under such circumstances the court must review the motion to determine whether it is facially meritorious. *See Allen v. Comprehensive Analytical Group, Inc.,* 140 F.Supp.2d 229,

231-32 (N.D.N.Y.2000) (Scullin, C.J.); *Leach v. Dufrain, 103 F.Supp.2d 542, 545-46 (N.D.N.Y.2000)* (Kahn, J.).

While a plaintiff's failure to properly oppose a defendant's motion does not assure that the motion, however lacking in merit, will be granted, that failure is not without consequences. By choosing not to submit papers in opposition to his motion, plaintiff has left the facts set forth in defendant's Local Rule 7.1(a)(3) Statement unchallenged. Courts in this district have routinely invoked Local Rule 7.1(a)(3) and its predecessor, Local Rule 7.1(f), thereby deeming facts set forth in a statement of material facts not in dispute to have been admitted based upon an opposing party's failure to properly respond to that statement.[7] *See, e.g., Elgamil v. Syracuse Univ.,* No. 99-CV-611, 2000 WL 1264122, at \*1 (N.D.N.Y. Aug. 22, 2000) (McCurn, S.J.) (listing cases); *see also Monahan v. New York City Dep't of Corrs.,* 214 F.3d 275, 292 (2d Cir.2000) (discussing district courts' discretion to adopt local rules like 7.1(a)(3)). I recommend that the court follow this well-established practice and, notwithstanding plaintiff's *pro se* status, accept defendant's assertion of facts as set forth in his Local Rule 7.1(a)(3) Statement as uncontroverted, in light of plaintiff's failure to respond to that statement, when reviewing the pending motion for facial sufficiency.

7      According to Local Rule 7.1(a)(3), "any facts set
        forth in the Statement of Material Facts shall be
        deemed admitted unless specifically controverted by
        the opposing party." *See* N.D.N.Y.L.R. 7.1(a)(3).

### B. *Summary Judgment Standard*

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82-83 (2d Cir.2004). A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also*

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

*Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) (citing *Anderson* ). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *but see Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620-21 (2d Cir.1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

**\*5** When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4, 106 S.Ct. at 2511 n. 4; *Security Ins.,* 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137-38 (2d Cir.1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir.2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

### C. *Personal Involvement*

The only defendant appearing to date in this action is Onondaga County Sheriff Kevin Walsh. In his motion, defendant Walsh urges dismissal of plaintiff's claims against him based upon the plaintiff's failure to establish the requisite personal involvement on his part in the constitutional deprivations alleged.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

Neither plaintiff's complaint nor the record now before the court implicates any awareness on the part of, or involvement by, Sheriff Walsh in either the alleged failure to protect or in connection with the medical services provided to the plaintiff following the May 30, 2004 incident. It is true that in his amended complaint, plaintiff does assert that Sheriff Walsh was negligent in training the other defendants in proper procedures regarding keep-lock and work "no contact" procedures. *See* Amended Complaint (Dkt. No. 8), Third Cause of Action. Plaintiff also asserts that defendant Walsh was deliberately indifferent to his needs and "failed to make inquires into the activities of his subordinates." *Id.* § 6(c) (3). Such conclusory allegations, unsupported by anything of evidentiary value, are insufficient to avoid dismissal of civil rights claims on a motion for summary judgment for lack of personal involvement. *See Deluca v. Bank of Tokyo-Mitsubishi UFJ, LTD.,* No. 06 Civ. 5474, 2008 WL 857492, at \*7 (S.D.N.Y. Mar. 31, 2008); *Brown v. Goord,* No. 04-CV-0785, 2007 WL 607396, at \*4 (N.D.N.Y. Feb. 20, 2007) (McAvoy, S.J.).

**\*6** It appears likely that plaintiff is asserting liability on Sheriff Walsh's part based upon his capacity as the supervisor of the jail facility in which the incident occurred. It is well-established, however, that this does not provide a sufficient basis for finding liability in a case such as this; a supervisor cannot be held liable for damages under section 1983 solely by virtue of being a supervisor-there is no *respondeat superior* liability under section 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, may have failed

to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152-53 (2d Cir.2007); *see also Richardson,* 347 F.3d at 435; *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986).

The record contains no evidence that would support liability on the part of Sheriff Walsh under any of these alternative theories. The actions of Corrections Sergeant LeBoeuf, which form the underpinning of plaintiff's failure to protect claim, appear to have occurred not pursuant to any established policy or practice at the OCJC, instead at most constituting an isolated act of negligence or lapse in judgment. The alleged failure on the part of medical personnel to properly diagnose plaintiff's injuries, once again, does not appear to have been the result of any policy or practice at the facility leading to the denial or deprivation of proper medical care. Under these circumstances, I recommend the entry of summary judgment dismissing plaintiff's claims against Sheriff Walsh for lack of personal involvement.

D. *Dismissal of Claims Against Remaining Named Defendants*

In addition to Sheriff Walsh, plaintiff's complaint also asserts claims against Sergeant LeBoeuf and Dr. Mark Johnstone. [8] Neither of these defendants has either been served in the action or appeared voluntarily. Although defendant's motion does not explicitly request this relief, I have *sua sponte* determined to raise the question of whether plaintiff's claims should proceed against the two remaining, unserved defendants.

[8]    Plaintiff has also sued an unknown corrections officer as a "John Doe" defendant. Because plaintiff has failed to take measures necessary to identify and join that individual by his or her correct name, his claim against the Doe defendant is subject to dismissal. As a practical matter, a plaintiff who fails to identify "John Doe" defendants within the statute of limitations risks losing the opportunity to sue those defendants. *See Barrow v. Wethersfield Police Dep't,* 66 F.3d 466, 469

(2d Cir.1995); *Cole v. Miraflor,* No. 99 CIV 0977, 2001 WL 138765, at *4-5 (S.D.N.Y. Feb. 19, 2001).

The decision to raise this issue is bottomed upon the requirement, imposed by Rule 4(m) of the Federal Rules of Civil Procedure, that service in a case be made within 120 days of issuance of the summons, absent a court order extending that period. [9] "[W]here good cause is shown, the court has no choice but to extend the time for service, and the inquiry is ended." *Panaras v. Liquid Carbonic Indus. Corp.,* 94 F.3d 338, 340 (7th Cir.1996). "If, however, good cause does not exist, the court may, in its discretion, either dismiss the action without prejudice or direct that service be effected within a specified time." *Id.* (citing Fed.R.Civ.P. 4(m)); *Zapata v. City of New York,* 502 F.3d 192, 196 (2d Cir.2007) ("[D]istrict courts have discretion to grant extensions even in the absence of good cause."); *Romandette v. Weetabix Co., Inc.,* 807 F.2d 309, 311 (2d Cir.1986). When examining whether to extend the prescribed period for service, a district court is afforded ample discretion to weigh the "overlapping equitable considerations" involved in determining whether good cause exists and whether an extension may be granted in the absence of good cause. *See Zapata,* 502 F.3d at 197.

[9]
        That rule provides that
                [i]f a defendant is not served within 120 days after the complaint is filed, the court-on motion or on its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period....
        Fed.R.Civ.P. 4(m). This court's local rules shorten the time for service from the 120 day period under Rule 4(m) to sixty days. *See* N.D.N.Y.L.R. 4.1(b).

*7 A plaintiff's *pro se* status entitles him or her to a certain degree of leniency insofar as service of process is concerned; courts generally favor resolution of a case on its merits rather than on the basis of a procedural technicality. *Poulakis v. Amtrak,* 139 F.R.D. 107, 109 (N.D.Ill.1991). When a plaintiff proceeds *in forma pauperis,* such as is the case in this instance, the court is obligated to issue the plaintiff's process to the United States Marshal, who must in turn effect service upon the defendants, thereby relieving the plaintiff of the burden to serve process once reasonable steps have been taken to identify for the court the defendants named in the complaint. *Byrd v. Stone,* 94 F.3d 217, 219 (6th Cir.1996).

That does not mean, however, that a *pro se* plaintiff may stand idly by upon being notified that efforts by the U.S. Marshals Service to serve a particular defendant have been unsuccessful. *VanDiver v. Martin,* 304 F.Supp.2d 934, 938-43 (E.D.Mich.2004). In such instances it is incumbent upon the plaintiff to develop, though pretrial discovery or otherwise, any additional information necessary to permit service by the United States Marshals Service. *See VanDiver,* 304 F.Supp.2d at 942.

In this case the two defendants at issue have not been served or otherwise appeared in the action within the appropriate time period. Based upon a review of the record I am unable to find good cause justifying plaintiff's failure to effectuate timely service, and discern no sufficient basis presented to exercise my discretion in favor of extending the governing period of service. Accordingly, since this court has never acquired jurisdiction over them, plaintiff's complaint should be dismissed as against those defendants, without prejudice. *See, e.g., Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 709 F.Supp. 1279, 1282 (S.D.N.Y.1989) (citing *Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 444-45, 66 S.Ct. 242, 245-46, 90 L.Ed. 185 (1946)) (court lacks jurisdiction until defendants properly served with summons and complaint).

## IV. *SUMMARY AND RECOMMENDATION*
Plaintiff's failure to effectuate service and obtain jurisdiction over two of the named defendants, including Corrections Sergeant LeBoeuf and Dr. Mark Johnstone, provide ample basis for dismissal of plaintiff's claims against those defendants, without prejudice. Turning to plaintiff's claims against the sole defendant who has been served and appeared in the action, Onondaga County Sheriff Kevin Walsh, while defendant Walsh has raised several arguments challenging the merits of plaintiff's

failure to protect and deliberate indifference claims- and there is considerable facial merit to his arguments regarding those claims-in light of the present posture of the case I find it unnecessary to make a recommendation regarding those arguments or the additional assertion of entitlement to qualified immunity. Neither plaintiff's complaint nor the record before the court discloses any basis for finding personal involvement on the part of Sheriff Walsh in the constitutional deprivations alleged. Defendant Walsh is therefore entitled to summary judgment dismissing plaintiff's claims against him on this basis, with prejudice.

**\*8** Accordingly, it hereby

RECOMMENDED, that the defendant's motion (Dkt. No. 44) be GRANTED and that plaintiff's claims against defendant Kevin Walsh be DISMISSED, with prejudice, and that his claims against Corrections Sergeant LeBoeuf and Dr. Mark Johnstone additionally be DISMISSED, without prejudice

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.

### All Citations

Not Reported in F.Supp.2d, 2008 WL 4517975

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 7495813
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kevin T. KAVANAUGH, Plaintiff,

v.

VILLAGE OF GREEN ISLAND; Village of Green
Island Police Officers Paul Johnson and William
Rice, individually and/or as agents, servants,
and/or employees of the Village of Green Island;
City of Watervliet; City of Watervliet Police
Officer Anthony Harbour, individually and/or
as agent, servant, and/or employee of the City of
Watervliet; City of Albany; City of Albany Police
Officer Anthony Scalise, individually and/or as
agent, servant, and/or employee of the City of
Albany; New York State Trooper Eric Johnson,
individually and/or as an agent, servant, and/
or employee of the State of New York; County
of Albany; Hon. Craig D. Apple, Albany County
Sheriff; John/Jane Doe 5 and 6, whose names are
presently unknown, individually and/or as agents,
servants, and/or employees of the County of Albany;
Correctional Medical Care, Inc.; Azaz Haider-
Shah, Jacklyn Clark, and Jessica Ross, individually
and/or as agents, servants, and/or employees
of Correctional Medical Care, Inc., Defendants.

8:14-CV-01244 (BKS/DJS)
|
Signed 12/30/2016

**Attorneys and Law Firms**

For Plaintiff: Lee C. Kindlon, Gennaro D. Calabrese, The
Kindlon Law Firm, PLLC, 74 Chapel Street, Albany, NY
12207.

For Defendants City of Albany and City of Albany Police
Officer Anthony Scalise: Stephen J. Rehfuss, The Rehfuss
Law Firm, P.C., 40 British American Boulevard, Latham,
NY 12110.

For Defendants City of Watervliet and City of Watervliet
Police Officer Anthony Harbour: Jonathan M. Bernstein,
Goldberg Segalla LLP, 8 Southwoods Boulevard, Suite
300, Albany, NY 12211.

For Defendant New York State Trooper Eric Johnson:
Eric T. Schneiderman, Attorney General of the State
of New York, Maria Lisi-Murray, Assistant Attorney
General, of Counsel, The Capitol Albany, NY 12224.

For Defendants Correctional Medical Care, Inc.,
Azaz Haider-Shah, Jacklyn Clark, and Jessica Ross:
Christopher F. DeFrancesco, Smith, Sovik, Kendrick
& Sugnet, P.C., 250 South Clinton Street, Suite 600,
Syracuse, NY 13202.

For Defendants Village of Green Island, Village of Green
Island Police Officer Paul Johnson, and Village of Green
Island Police Officer William Rice: Robert D. Cook Cook,
Netter, Cloonan, Kurtz & Murphy, P.C., 85 Main Street,
P.O. Box 3939, Kingston, NY 12402.

For Defendants County of Albany and Hon. Craig D.
Apple, Albany County Sheriff: Tracy Murphy, Albany
County Attorney's Office, 112 State Street, Room 600,
Albany, NY 12207.

**MEMORANDUM-DECISION AND ORDER**

Hon. Brenda K. Sannes, United States District Court
Judge:

**I. INTRODUCTION**

*1 Plaintiff Kevin T. Kavanaugh brings this action
against Defendants under 42 U.S.C. § 1983 and New
York State law alleging various claims arising out of his
arrest on July 21, 2013. (Dkt. No. 103). Defendant New
York State Trooper Eric Johnson ("Trooper Johnson")
moves under Fed. R. Civ. P. 12(b)(6) to dismiss portions
of the Second Amended Complaint. (Dkt. No. 109).
Defendants City of Albany and City of Albany Police
Officer Anthony Scalise (the "Albany Defendants") also
move for partial dismissal. (Dkt. No. 110). Plaintiff has
opposed Defendants' motions. (Dkt. Nos. 137, 146). [1] For
the reasons that follow, Defendants' motions are granted
in part and denied in part.

[1]     Various defendants have also filed memoranda
        opposing dismissal of their cross-claims for
        indemnification and contribution with regard to
        Plaintiff's state law claims. (See Dkt. Nos. 136,
        139, 140, 142). However, the moving Defendants
        did not seek to dismiss these cross-claims in their
        motions to dismiss. (Dkt. Nos. 109, 110). The Albany

Case 9:16-cv-00528-TJM-TWD    Document 59    Filed 08/02/18    Page 45 of 86

Kavanaugh v. Village of Green Island, Not Reported in Fed. Supp. (2016)

2016 WL 7495813

Defendants now argue in their reply brief that any cross-claims for indemnification against them should be dismissed. (Dkt. No. 144, pp. 9-10). The Court need not address the viability of these cross-claims since the moving Defendants did not properly seek to dismiss them, and moreover, the issue was first raised in reply papers. *See* Knight v. Storex Sys., Inc., 739 F. Supp. 739, 743 (N.D.N.Y. 1990) ("The court will not address issues raised for the first time in the reply papers.").

## II. FACTS [2]

[2]    The facts are taken from the Second Amended Complaint and assumed to be true for the purposes of this decision. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

On or about July 21, 2013, at or around the intersection of Clinton Avenue and Henry Johnson Boulevard in Albany, New York, Plaintiff was in the driver's seat of a car, surrounded by employees of the New York State Police, the City of Albany Police Department, the City of Watervliet Police Department, and the Village of Green Island Police Department. (Dkt. No. 103, ¶ 24). A Village of Green Island Police Officer "and/or" City of Watervliet Police Officer took hold of Plaintiff as he was exiting the car and caused him to slam to the pavement, landing on his stomach and face. (*Id.*, ¶ 25). While the left side of Plaintiff's face was pressed to the ground, the Village of Green Island Police Officers "and/or" the City of Watervliet Police Officer hit him with a blunt object, stood and stomped on the back of his calf and thigh muscles, and forced their knees in his back and neck. (*Id.*, ¶ 26). While Plaintiff's face was pressed to the ground, Trooper Johnson walked over to Plaintiff and kicked him repeatedly in his head, and his arms were pulled in different directions by the other police officers. (*Id.*, ¶¶ 27-28).

While Plaintiff was being grabbed, thrown, hit, kicked, and injured by the police officers, the City of Albany Police Officer failed to act and prevent the police officers from causing harm and injury to Plaintiff. (*Id.*, ¶ 29). Once handcuffs were placed on Plaintiff and his hands were behind his back, the Village of Green Island Police Officers "and/or" the City of Watervliet Police Officer picked him up by the handcuffs and threw Plaintiff against a patrol car and proceeded to slam his head repeatedly on the roof of the patrol car. (*Id.*, ¶¶ 30-31). While Plaintiff was being propped up against the patrol car, the Village

of Green Island Police Officers "and/or" the City of Watervliet Police Officer grabbed his foot and violently ripped his shoe off by repeatedly rolling and twisting Plaintiff's foot and ankle, and after the shoe was removed, the Village of Green Island Police Officers "and/or" the City of Watervliet Police Officer grabbed Plaintiff's other foot and violently ripped the shoe off by repeatedly rolling and twisting his foot and ankle. (*Id.*, ¶¶ 32-33).

**\*2** While Plaintiff was being subjected to pain and suffering, the other police officers failed to act and prevent the Village of Green Island Police Officers "and/or" the City of Watervliet Police Officer from causing harm and injury to Plaintiff. (*Id.*, ¶ 35). After both shoes were removed, the Village of Green Island Police Officers "and/or" the City of Watervliet Police Officer threw Plaintiff headfirst into the back seat of a patrol car, and he was brought to Green Island Police Station for processing. (*Id.*, ¶¶ 36-37). Partly because Plaintiff made complaints about his injured right foot and ankle, he was transported to Samaritan Hospital in Troy, New York; the medical professionals there examined his right foot—which was pale, cold, and discolored—and were unable to find a pedal pulse. (*Id.*, ¶¶ 38-39). Plaintiff advised the medical professionals that he had thirteen screws surgically implanted in his right foot in 2012; they determined that Plaintiff needed urgent vascular surgery and transferred him to Albany Medical Center for a vascular evaluation. (*Id.*, ¶¶ 40-41).

Plaintiff was discharged from Albany Medical Center on July 22, 2013, without undergoing vascular surgery, and he was transported to Albany County Correctional Facility, where he was placed under the care and custody of the County of Albany, Hon. Craig D. Apple, members of the Albany County Sheriff's Office and Albany County Correctional Facility, Correctional Medical Care, Inc., and employees of Correctional Medical Care, Inc. (*Id.*, ¶ 42). Plaintiff was placed in "C" building of Albany County Correctional Facility, not the medical tier. (*Id.*, ¶ 43). Plaintiff notified employees of the County of Albany and Correctional Medical Care, Inc., including Defendants Azaz Haider-Shah, Jacklyn Clark, and Jessica Ross, that his foot was in severe pain, that he could not walk on his right foot, that he needed medical attention, and that he needed to go to the hospital, but in response to his complaints and pleas, they ignored, neglected, "and/or" belittled Plaintiff, and failed to provide him necessary and adequate medical care and assistance. (*Id.*, ¶¶ 44-45).

Case 9:16-cv-00528-TJM-TWD    Document 59    Filed 08/02/18    Page 46 of 86

Kavanaugh v. Village of Green Island, Not Reported in Fed. Supp. (2016)

2016 WL 7495813

On the morning of July 24, 2013, when Plaintiff was scheduled to appear in court, he was finally transported from Albany County Correctional Facility to Albany Medical Center. (*Id.*, ¶ 47). Prior to being transported to Albany Medical Center, Plaintiff had not feeling in his right foot, and it was noticeably swollen and discolored. (*Id.*, ¶ 48). Due to the severity of the condition and lack of proper treatment, Plaintiff suffered an amputation below his right knee. (*Id.*, ¶ 49).

Plaintiff alleges that the City of Albany, among other municipal defendants, "failed to adequately train and/ or supervise" its employees "to avoid the constitutional violations of Plaintiff's rights and resultant damages described herein." (*Id.*, ¶ 52). Specifically, Plaintiff alleges that the City of Albany "failed to train their employees about the affirmative duty to intervene and prevent the use of excessive force by others." (*Id.*, ¶ 121). Finally, Plaintiff alleges that this failure amounted to deliberate indifference to his rights and caused his injuries. (*Id.*, ¶¶ 122-24).

## III. STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.' " *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

## IV. DISCUSSION

Defendants' motions to dismiss pertain to the following claims in the Second Amended Complaint: 1) official capacity claims against Trooper Johnson and Officer Scalise; 2) assault under New York law against Trooper Johnson; 3) battery under New York law against Trooper Johnson; 4) intentional infliction of emotional distress under New York law against Trooper Johnson; 5) negligence under New York law against Trooper Johnson; 6) denial of substantive due process under the Fifth

and Fourteenth Amendments against Trooper Johnson; 7) failure to intervene against Officer Scalise; and 8) municipal liability against the City of Albany for Officer Scalise's alleged failure to intervene. [3]

[3]    The Second Amended Complaint does not indicate whether Plaintiff brings his failure to intervene claim under Section 1983 and/or New York state law.

### A. Official Capacity Claims

**\*3** As an initial matter, Defendants argue that Plaintiff's claims against Trooper Johnson and Officer Scalise in their official capacities must be dismissed. (Dkt. No. 109-1, pp. 5-6; Dkt. No. 110-6, p. 12). Plaintiff brings various claims against these defendants in their individual and official capacities as employees of the State of New York and the City of Albany, respectively. (Dkt. No. 103). Plaintiff does not dispute Defendants' argument that his official capacity claims should be dismissed. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Id.* (quoting *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658, 691 n. 55 (1978)). "It is not a suit against the official personally, for the real party in interest is the entity." *Id.*

Here, Plaintiff's official capacity claims against Trooper Johnson must be dismissed as barred by the Eleventh Amendment since the real party in interest is New York State. *See Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("Eleventh Amendment does not permit suit ... for money damages against state officials in their official capacities."). Moreover, Plaintiff's official capacity claims against Officer Scalise must be dismissed as duplicative since the real party in interest is the City of Albany, against whom Plaintiff has also brought suit. [4] *See Kennedy v. City of Albany*, No. 15 Civ. 491, 2015 WL 6394513, at *5, 2015 U.S. Dist. LEXIS 143568, at *12 (N.D.N.Y. Oct. 22, 2015) (dismissing official capacity claims and noting that "[a] claim against officers in their official capacity is essentially a claim against the city").

[4]    To the extent Plaintiff seeks punitive damages against Officer Scalise in his official capacity, such a claim must be dismissed since municipalities, and municipal employees sued in their official capacities, are not

Case 9:16-cv-00528-TJM-TWD   Document 59   Filed 08/02/18   Page 47 of 86

Kavanaugh v. Village of Green Island, Not Reported in Fed. Supp. (2016)

2016 WL 7495813

liable for punitive damages. *See Dzwonczyk v. Syracuse City Police Dept.*, 710 F. Supp. 2d 248, 271 (N.D.N.Y. 2008) (citing cases).

**B. Time-Barred Claims**

Defendants argue that Plaintiff's claims under New York state law for assault, battery, intentional infliction of emotional distress, and failure to intervene are barred by the statute of limitations. (Dkt. No. 109-1, pp. 6-7; Dkt. No. 110-6, pp. 5-9). Plaintiff's claims against Defendants accrued on the date of Plaintiff's arrest and alleged injuries, July 21, 2013. *See Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) ("accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action") (citation omitted). The one year statute of limitations for Plaintiff's intentional tort claims against Trooper Johnson expired on July 21, 2014, several months before Plaintiff commenced this action on October 10, 2014. *See* N.Y. C.P.L.R. 215(3) (McKinney 2016); *Havell v. Islam*, 739 N.Y.S.2d 371, 372 (N.Y. App. Div. 1st Dept. 2002) ("A claim for damages for an intentional tort, including a tort not specifically listed in CPLR 215(3), is subject to a one-year limitation period."). Accordingly, Plaintiff state law claims against Trooper Johnson for assault, battery, and intentional infliction of emotional distress must be dismissed as time-barred.

As to Plaintiff's failure to intervene claim against Officer Scalise under New York law, the statute of limitations is one year and ninety days. *See* N.Y. Gen. Mun. Law § 50-i(1) (State law tort claims against municipal corporations and their employees are subject to a one year and ninety day statute of limitations.). Plaintiff commenced this action before the limitations period expired on October 19, 2014. However, Plaintiff's original pleading did not identify Officer Scalise as a defendant, but referred to "City of Albany Police Officers JOHN DOE 2 and 3, whose names are presently unknown." (Dkt. No. 1). In general, a plaintiff may proceed against a "John Doe" placeholder defendant, so long as he replaces the John Doe with a named party within the applicable statute of limitations period. *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468-69 (2d Cir. 1995). Here, Plaintiff did not replace the John Does with Officer Scalise until he filed the Second Amended Complaint on February 26, 2016, more than a year after the limitations period expired. (Dkt. No. 103). While " 'John Doe' pleadings cannot be used to circumvent statutes of limitations," *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993),

a "plaintiff who finds that the limitations period on his claim has run may still seek to amend his complaint to add additional defendants, but he will be bound by the requirement that the proposed amendment 'relate back' to the date that the original complaint was filed." *Abreu v. City of New York*, 657 F. Supp. 2d 357, 363 (E.D.N.Y. 2009).

**\*4** Under Rule 15(c)(1)(C) of the Federal Rules of Civil Procedure, the following conditions must be met for a later amendment to a pleading to relate back to the date of the original pleading:

> (1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party should have known that, but for a mistake of identity, the original action would have been brought against it; and ... [4] the second and third criteria are fulfilled within 120 days of the filing of the original complaint, and ... the original complaint [was] filed within the limitations period.

*Barrow*, 66 F.3d at 468-69 (citing Fed. R. Civ. P. 15(c)(1)(C)). However, the Second Circuit has held that Rule 15(c)(1)(C) "does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities," since "the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake." *Id.* at 470. Thus, Plaintiff cannot satisfy the requirements for relation back under Rule 15(c)(1)(C). *See also Scott v. Village of Spring Valley*, 577 Fed.Appx. 81, 83 (2d Cir. 2014) ("[W]e have consistently held that 'the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake.' ") (quoting *Hogan*, 738 F.3d at 517-18, and distinguishing *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 554-55 (2010)).

Alternatively, an amended pleading identifying John Doe defendants may still relate back under Rule 15(c)(1)(A) of

Case 9:16-cv-00528-TJM-TWD   Document 59   Filed 08/02/18   Page 48 of 86

Kavanaugh v. Village of Green Island, Not Reported in Fed. Supp. (2016)

2016 WL 7495813

the Federal Rules of Civil Procedure, [5] via § 1024 of the New York Civil Practice Law and Rules, which states:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

N.Y. C.P.L.R. § 1024. Plaintiff argues that § 1024 applies in this case. (Dkt. No. 137-1, p. 7). Plaintiff must meet two requirements for relation back under § 1024: 1) he must "exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name"; and 2) he must "describe the John Doe party in such form as will fairly apprise the party that [he] is the intended defendant." Hogan, 738 F.3d at 519 (internal quotations and citations omitted).

[5]    Rule 15(c)(1)(A) states that an amended pleading may relate back when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A).

Here, Plaintiff cannot satisfy the first requirement because he has not pointed to any efforts he made to identify the City of Albany John Doe defendants *before* the statute of limitations expired on October 19, 2014. Plaintiff states that he did not know which City of Albany police officers were present for his arrest when he filed the original Complaint, and that he did not learn that Officer Scalise was present "until the deposition of Defendant Eric Johnson, which occurred on January 5, 2016." (Dkt. No. 137-1, p. 4). Plaintiff concedes that he did not seek to identify Officer Scalise with a freedom of information law request or by any other informal means, and he did not seek discovery from Defendant City of Albany as to the identity of witnesses until November 24, 2015. (*Id.*, pp. 5-6; *see also* Dkt. No. 137-5). To the extent Plaintiff claims that Defendant City of Albany withheld this information in its Rule 26(a) initial disclosures on October 22, 2015 (*see* Dkt. No. 137-4), even assuming that were true, it would not excuse Plaintiff's failure to

exercise due diligence before the statute of limitations expired on October 19, 2014. In sum, there is no allegation or indication whatsoever that Plaintiff exercised due diligence to identify Officer Scalise before the statute of limitations expired. Accordingly, Plaintiff's failure to intervene claim may not relate back under Rule 15(c)(1)(A) and N.Y. C.P.L.R. § 1024, and therefore, it must be dismissed as time-barred. [6] *See Ceara v. Deacon*, 68 F. Supp. 3d 402, 409 (S.D.N.Y. 2014) ("Federal and New York courts have held that where there is no indication in the record that a plaintiff has exercised due diligence prior to the expiration of the statute of limitations, a plaintiff is not entitled to make use of the 'John Doe' procedure provided in CPLR § 1024.") (citing cases); *Bender v. City of New York*, No. 14 Civ. 4386, 2015 WL 524283, at *5, 2015 U.S. Dist. LEXIS 16002, *12 (S.D.N.Y. Feb. 10, 2015) ("Because of the complete lack of evidence as to Bender's due diligence, § 1024 will not permit the relation back of her requested amendment to the date of the filing of the original complaint."); *JCG v. Ercole*, No. 11 Civ. 6844, 2014 WL 1630815, at *14, 2014 U.S. Dist. LEXIS 57417, at *54 (S.D.N.Y. Apr. 24, 2014) (relation back did not apply where "Plaintiff appears to have expended no efforts at all to identify the Individual Defendants in the three years that followed [incident], waiting until the statute of limitations had nearly run to file his complaint. In that time, he could have served discovery demands upon the known parties, sought disclosures pursuant to a Freedom of Information Law ('FOIL') request, or written letters to the Attorney General's Office.") (internal quotation and citation omitted) (report and recommendation adopted, No. 11 Civ. 6844, 2014 WL 2769120, 2014 U.S. Dist. LEXIS 83800 (S.D.N.Y. June 18, 2014)).

[6]    In its September 23, 2015 Memorandum-Decision & Order, the Court declined to dismiss Plaintiff's state law claims against City of Watervliet Police Officer John Doe 1 as time-barred because the record did "not reflect what effort, if any, Plaintiff made to identify John Doe 1 before the statute of limitations expired," and therefore, the Court could not determine whether Plaintiff exercised due diligence for purposes of relation back under § 1024. (Dkt. No. 52, p. 24). In contrast, here Plaintiff has detailed his efforts to identify Officer Scalise, which reflect that he made no such effort before the statute of limitations expired.

## C. Duplicative Claims

Case 9:16-cv-00528-TJM-TWD Document 59 Filed 08/02/18 Page 49 of 86

Kavanaugh v. Village of Green Island, Not Reported in Fed. Supp. (2016)

2016 WL 7495813

**\*5** Trooper Johnson argues that Plaintiff's assault and battery claims under New York law are duplicative of his excessive force claim under § 1983. (Dkt. No. 109-1, p. 7). However, the Court need not address this argument, since Plaintiff's assault and battery claims must be dismissed as time-barred, as discussed above. Trooper Johnson also argues that Plaintiff's claim for denial of substantive due process under the Fourteenth Amendment is duplicative of his excessive force claim under § 1983. (*Id.*). Plaintiff does not respond to this argument. The Supreme Court has held that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)); *see also Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005).

Here, Plaintiff's allegations against Trooper Johnson focus on the use of excessive force, and therefore, are covered by the Fourth Amendment. Accordingly, Plaintiff's substantive due process claim against Trooper Johnson, which arises out of the same circumstances, must be dismissed as duplicative.[7] *See Graham v. Poole*, 476 F. Supp. 257, 261 (W.D.N.Y. 2007) (dismissing the plaintiff's claims under Fifth and Fourteenth Amendments where Eighth Amendment covered claims); *Raymond v. Bunch*, 136 F. Supp. 2d 71, 81 (N.D.N.Y. 2001) (dismissing substantive due process claim as duplicative of excessive force claim); *Snow v. Village of Chatham*, 84 F. Supp. 2d 322, 327 (N.D.N.Y. 2000) (dismissing Fourteenth Amendment due process claim "since the Fourth Amendment, and not some generalized concept of substantive due process, provides the constitutional foundation for false arrest claims").

[7]      To the extent Plaintiff alleges a claim for denial of substantive due process under the Fifth Amendment, it is also subject to dismissal for the separate reason that Trooper Johnson is not alleged to be a federal actor. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.' "); *Kennedy v. City of Albany*, No. 15 Civ. 491, 2015 WL 6394513, at \*5, 2015 U.S. Dist. LEXIS 143568, at \*14 (N.D.N.Y. Oct. 22, 2015) ("Defendants are not alleged to be

federal actors, and, accordingly, Plaintiff's claims for Fifth Amendment due process violations are dismissed.").

Trooper Johnson further contends that Plaintiff's negligence claim under New York law is not cognizable "[i]n the context of a claim that an officer used excessive force in violation of the Fourth Amendment." (Dkt. No. 109-1, p. 7). In response, Plaintiff argues that the Second Amended Complaint "alleges in the alternative that Defendant Johnson's conduct was negligent." (Dkt. No. 146-1, p. 5). While Plaintiff's negligence and excessive force claims may be inconsistent, "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Thus, at this stage of the case, Plaintiff may proceed with his negligence claim while also alleging excessive force. *See also Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 399 (S.D.N.Y. 2013) (denying motion to dismiss, finding that the "Complaint plausibly alleges that these Defendants committed state-law assaults and batteries or negligence in the alternative"); *Negron v. City of New York*, 976 F. Supp. 2d 360, 373 (E.D.N.Y. 2013) (finding that the plaintiff could maintain both negligence and assault and battery claims).

### D. Municipal Liability Claim

**\*6** The Albany Defendants argue that Plaintiff's § 1983 municipal liability claim against the City of Albany based on Officer Scalise's alleged failure to intervene must be dismissed. (Dkt. No. 110-6, pp. 9-12). In the Second Amended Complaint, Plaintiff alleges that Defendant City of Albany "failed to train [its] employees about the affirmative duty to intervene and prevent the use of excessive force by others." (Dkt. No. 103, ¶ 121). Plaintiff further alleges that this failure amounted to deliberate indifference to his rights and caused his injuries. (*Id.*, ¶¶ 122-24). Defendants argue that "these conclusory, boilerplate allegations fail to state a plausible Monell claim." (Dkt. No. 110-6, p. 11).

A municipality may not be held liable under § 1983 on the basis of *respondeat superior*. *Monell*, 436 U.S. at 694-95. Rather, municipalities are responsible only for "their own illegal acts," *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986), and are not vicariously liable for civil rights violations perpetrated by their employees. *See Monell*, 436 U.S. at 691. In order to sustain a § 1983 claim for municipal liability, a plaintiff must show that he

Case 9:16-cv-00528-TJM-TWD   Document 59   Filed 08/02/18   Page 50 of 86

Kavanaugh v. Village of Green Island, Not Reported in Fed. Supp. (2016)

2016 WL 7495813

suffered a constitutional violation, and that the violation resulted from an identified municipal policy or custom. [8] *Monell*, at 694-95. A municipal policy or custom may be established by any of the following: 1) a formal policy, officially promulgated by the municipality, *id.* at 690; 2) action taken by the official responsible for establishing policy with respect to a particular issue, *Pembaur*, 475 U.S. at 483-84; 3) unlawful practices by subordinate officials so permanent and widespread as to practically have the force of law, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127-30 (1985) (plurality opinion); or 4) a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

[8]     Although Plaintiff's state law failure to intervene claim against Officer Scalise is time-barred, as discussed above, Plaintiff appears to have also pled a timely Section 1983 failure to intervene claim, which can support a municipal liability claim under Section 1983. *See Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (Section 1983 claims filed in New York are subject to a three-year statute of limitations) (citing N.Y. C.P.L.R. § 214); *see also Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (municipal liability under *Monell* may only lie where there is an underlying constitutional violation).

In taking the fourth route, Plaintiff must ultimately show that:

> (1) that a policymaker of the municipality knows to a moral certainty that its employees will confront a given situation; (2) that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) that the wrong choice by the employee will frequently cause the deprivation of a citizen's constitutional rights.

*Young v. County of Fulton*, 160 F.3d 899, 903–04 (2d Cir. 1998) (citing *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992) (internal quotations and alterations omitted)). However, at the pleading stage, Plaintiff's allegations must only be sufficient to infer a failure to

train that amounts to deliberate indifference. This Court previously dismissed without prejudice Plaintiff's failure to intervene claim against Defendant City of Albany, holding that "Plaintiff fails to state a plausible *Monell* claim because the Complaint does not allege any facts to infer that a failure to intervene was due to a municipal policy or custom." (Dkt. No. 52, p. 11). The original Complaint did not set forth any allegations whatsoever regarding a policy or custom by the City of Albany. (Dkt. No. 1). In contrast, the Second Amended Complaint alleges that Defendant City of Albany failed to train its employees to intervene and prevent the use of excessive force by others and that this failure led to Plaintiff's injuries. While these allegations are fairly bare bones, "it is hard to fathom how a plaintiff could provide more detail at the pleading stage regarding a *Monell* claim based on failure to train." *Kimbrough v. Town of Dewitt Police Dept.*, No. 08 Civ. 03, 2010 WL 3724017, at *6, 2010 U.S. Dist. LEXIS 96243, at *18 (N.D.N.Y. Sept. 15, 2010) (denying motion to dismiss *Monell* claim). Accordingly, Plaintiff's allegations are sufficient to infer a failure to train that amounts to deliberate indifference. [9] *See also Best v. Village of Ellenville*, No. 14 Civ. 968, 2014 WL 6387146, at *2, 2014 U.S. Dist. LEXIS 160879, at *6 (N.D.N.Y. Nov. 14, 2014) ("The lone allegation in the amended complaint regarding the Village of Ellenville's failure to train is sufficient at this stage."); *Vasconcellos v. City of New York*, No. 12 Civ. 8445, 2014 WL 4961441, at *13, 2014 U.S. Dist. LEXIS 143429, at *28-29 (S.D.N.Y. Oct. 2, 2014) (denying motion to dismiss *Monell* claim based on alleged failure to train officers).

[9]     Defendant City of Albany's argument that Plaintiff is "[u]nable to point to a pattern of conduct or any additional direct or circumstantial proof validating these allegations," (Dkt. No. 110-6, p. 11), is one better suited for summary judgment. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) (pointing out that to prevail on a municipal liability claim, a "pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train") (internal quotation and citation omitted).

## V. CONCLUSION

**\*7** For these reasons, it is

Case 9:16-cv-00528-TJM-TWD    Document 59    Filed 08/02/18    Page 51 of 86
Kavanaugh v. Village of Green Island, Not Reported in Fed. Supp. (2016)
2016 WL 7495813

**ORDERED** that Defendant New York State Trooper Eric Johnson's motion to dismiss (Dkt. No. 109) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Plaintiff's official capacity claims against New York State Trooper Eric Johnson are **DISMISSED**; and it is further

**ORDERED** that Plaintiff's claims under New York state law for assault, battery, and intentional infliction of emotional distress, Counts Two, Three, and Four of the Second Amended Complaint, are **DISMISSED** as against New York State Trooper Eric Johnson; and it is further

**ORDERED** that Plaintiff's claim under § 1983 for denial of substantive due process under the Fifth and Fourteenth Amendments, Count Twelve of the Second Amended Complaint, is **DISMISSED** as against New York State Trooper Eric Johnson; and it is further

**ORDERED** that Defendant New York State Trooper Eric Johnson's motion to dismiss (Dkt. No. 109) is otherwise **DENIED**; and it is further

**ORDERED** that Defendants City of Albany's and City of Albany Police Officer Anthony Scalise's motion to dismiss

(Dkt. No. 110) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Plaintiff's official capacity claims against City of Albany Police Officer Anthony Scalise are **DISMISSED**; and it is further

**ORDERED** that Plaintiff's claim for failure to intervene, Count Nine of the Second Amended Complaint, is **DISMISSED** as against City of Albany Police Officer Anthony Scalise only to the extent it is asserted under New York state law; and it is further

**ORDERED** that Defendants City of Albany's and City of Albany Police Officer Anthony Scalise's motion to dismiss (Dkt. No. 110) is otherwise **DENIED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2016 WL 7495813

---

    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

1999 WL 983876
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Craig COLE, Plaintiff,

v.

Christopher P. ARTUZ, Superintendent, Green
Haven Correctional Facility, R. Pflueger, A.
Glemmon, Sgt. Stevens, Lt. Haubert, Capt.
W.M. Watford, Capt. T. Healey, and John
Doe # 1–5, all as individuals, Defendants.

No. 93 Civ. 5981(WHP) JCF.
|
Oct. 28, 1999.

**Attorneys and Law Firms**

Mr. Craig Cole, Bare Hill Correctional Facility, Malone,
New York, Legal Mail, Plaintiff, pro se.

William Toran, Assistant Attorney General, Office of the
Attorney General of the State of New York, New York,
New York, for Defendant.

*MEMORANDUM & ORDER*

PAULEY, J.

 **\*1** The remaining defendant in this action, Correction
Officer Richard Pflueger, having moved for an order,
pursuant to Fed.R.Civ.P. 56, granting him summary
judgment and dismissing the amended complaint, and
United States Magistrate Judge James C. Francis IV
having issued a report and recommendation, dated
August 20, 1999, recommending that the motion
be granted, and upon review of that report and
recommendation together with plaintiff's letter to this
Court, dated August 28, 1999, stating that plaintiff does
"not contest the dismissal of this action", it is

ORDERED that the attached report and
recommendation of United States Magistrate Judge
James C. Francis IV, dated August 20, 1999, is adopted in
its entirety; and it is further

ORDERED that defendant Pflueger's motion for
summary judgment is granted, and the amended
complaint is dismissed; and it is further

ORDERED that the Clerk of the Court shall enter
judgment accordingly and close this case.

*REPORT AND RECOMMENDATION*

FRANCIS, Magistrate J.

The plaintiff, Craig Cole, an inmate at the Green Haven
Correctional Facility, brings this action pursuant to 42
U.S.C. § 1983. Mr. Cole alleges that the defendant
Richard Pflueger, a corrections officer, violated his First
Amendment rights by refusing to allow him to attend
religious services. The defendant now moves for summary
judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure. For the reasons set forth below, I recommend
that the defendant's motion be granted.

*Background*

During the relevant time period, Mr. Cole was an
inmate in the custody the New York State Department
of Correctional Services ("DOCS"), incarcerated at the
Green Haven Correctional Facility. (First Amended
Complaint ("Am.Compl.") ¶ 3). From June 21, 1993 to
July 15, 1993, the plaintiff was in keeplock because of
an altercation with prison guards. (Am.Compl.¶¶ 17–
25). An inmate in keeplock is confined to his cell for
twenty-three hours a day with one hour for recreation.
(Affidavit of Anthony Annucci dated Dec. 1, 1994 ¶
5). Pursuant to DOCS policy, inmates in keeplock must
apply for written permission to attend regularly scheduled
religious services. (Reply Affidavit of George Schneider
in Further Support of Defendants' Motion for Summary
Judgment dated September 9, 1996 ("Schneider Aff.") ¶
3). Permission is granted unless prison officials determine
that the inmate's presence at the service would create
a threat to the safety of employees or other inmates.
(Schneider Aff. ¶ 3). The standard procedure at Green
Haven is for the captain's office to review all requests
by inmates in keeplock to attend religious services.
(Schneider Aff. ¶ 3). Written approval is provided to the
inmate if authorization is granted. (Affidavit of Richard
Pflueger dated April 26, 1999 ("Pflueger Aff.") ¶ 5). The
inmate must then present the appropriate form to the

gate officer before being released to attend the services. (Pflueger Aff. ¶ 5).

**\*2** On June 28, 1993, the plaintiff submitted a request to attend the Muslim services on July 2, 1993. (Request to Attend Scheduled Religious Services by Keep–Locked Inmate dated June 28, 1993 ("Request to Attend Services"), attached as Exh. B to Schneider Aff.) On June 30, 1993, a supervisor identified as Captain Warford signed the request form, indicating that the plaintiff had received permission to attend the services. (Request to Attend Services). Shortly before 1:00 p.m. on July 2, 1993, the plaintiff requested that Officer Pflueger, who was on duty at the gate, release him so that he could proceed to the Muslim services. (Pflueger Aff. ¶ 3). However, Officer Pflueger refused because Mr. Cole had not presented the required permission form. (Pflueger Aff. ¶ 3). The plaintiff admits that it is likely that he did not receive written approval until some time thereafter. (Deposition of Craig Cole dated February 28, 1999 at 33–35, 38).

On August 25, 1993, the plaintiff filed suit alleging that prison officials had violated his procedural due process rights. On December 4, 1995, the defendants moved for summary judgment. (Notice of Defendants' Motion for Summary Judgment dated December 4, 1995). The Honorable Kimba M. Wood, U.S.D.J., granted the motion and dismissed the complaint on the grounds that the plaintiff failed to show that he had been deprived of a protected liberty interest, but she granted the plaintiff leave to amend. (Order dated April 5, 1997). On May 30, 1997, the plaintiff filed an amended complaint, alleging five claims against several officials at the Green Haven Correctional Facility. (Am.Compl.) On November 16, 1998, Judge Wood dismissed all but one of these claims because the plaintiff had failed to state a cause of action or because the statute of limitations had elapsed. (Order dated Nov. 16, 1998). The plaintiff's sole remaining claim is that Officer Pflueger violated his First Amendment rights by denying him access to religious services on July 2, 1993. The defendant now moves for summary judgment on this issue, arguing that the plaintiff has presented no evidence that his First Amendment rights were violated. In addition, Officer Pflueger contends that he is entitled to qualified immunity. (Defendants' Memorandum of Law in Support of Their Second Motion for Summary Judgment).

A. *Standard for Summary Judgment*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995); *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the movant meets that burden, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute concerning material facts. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *Anderson,* 477 U.S. at 255; *Vann v. City of New York,* 72 F.3d 1040, 1048– 49 (2d Cir.1995). But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. *Anderson,* 477 U.S. at 249–50 (citation omitted). "The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir.1997) (citation and internal quotation omitted); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995) (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible") ((citations omitted)). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Electric Industrial Co.,* 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288 (1968)); *Montana v. First Federal Savings & Loan Association,* 869 F.2d 100, 103 (2d Cir.1989).

Cole v. Artuz, Not Reported in F.Supp.2d (1999)
1999 WL 983876
Case 9:16-cv-00528-TJM-TWD   Document 59   Filed 08/02/18   Page 54 of 86

**\*3** Where a litigant is *pro se,* his pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's "bald assertion," unsupported by evidence, is not sufficient to overcome a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991); *Gittens v. Garlocks Sealing Technologies,* 19 F.Supp.2d 104, 110 (W.D.N.Y.1998); *Howard Johnson International, Inc. v. HBS Family, Inc.,* No. 96 Civ. 7687, 1998 WL 411334, at \*3 (S.D .N.Y. July 22, 1998); *Kadosh v. TRW, Inc.,* No. 91 Civ. 5080, 1994 WL 681763, at \*5 (S.D.N.Y. Dec. 5, 1994) ("the work product of *pro se* litigants should be generously and liberally construed, but [the *pro se'* s] failure to allege either specific facts or particular laws that have been violated renders this attempt to oppose defendants' motion ineffectual"); *Stinson v. Sheriff's Department,* 499 F.Supp. 259, 262 (S.D.N.Y.1980) (holding that the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended").

B. *Constitutional Claim*
It is well established that prisoners have a constitutional right to participate in congregate religious services even when confined in keeplock. *Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993); *Young v. Coughlin,* 866 F.2d 567, 570 (2d Cir1989). However, this right is not absolute. *See Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990) (right to free exercise balanced against interests of prison officials). Prison officials can institute measures that limit the practice of religion under a "reasonableness" test that is less restrictive than that which is ordinarily applied to the alleged infringement of fundamental constitutional rights. *O'Lone v. Estate of Shaabazz,* 482 U.S. 342, 349 (1986). In *O'Lone,* the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 349 (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). The evaluation of what is an appropriate and reasonable penological objective is left to the discretion of the administrative officers operating the prison. *O'Lone,* 482 U.S. at 349. Prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547 (1979).

The policy at issue here satisfies the requirement that a limitation on an inmate's access to religious services be reasonable. The practice at Green Haven was to require inmates in keeplock to present written approval to the prison gate officer before being released to attend religious services. This policy both accommodates an inmate's right to practice religion and allows prison administrators to prevent inmates posing an active threat to security from being released. The procedure is not overbroad since it does not permanently bar any inmate from attending religious services. Rather, each request is decided on a case-by-case basis by a high ranking prison official and denied only for good cause.

**\*4** Furthermore, in order to state a claim under § 1983, the plaintiff must demonstrate that the defendant acted with deliberate or callous indifference toward the plaintiff's fundamental rights. *See Davidson v. Cannon* 474 U.S. 344, 347–48 (1986) (plaintiff must show abusive conduct by government officials rather than mere negligence). Here, there is no evidence that the defendant was reckless or even negligent in his conduct toward the plaintiff or that he intended to violate the plaintiff's rights. Officer Pflueger's responsibility as a prison gate officer was simply to follow a previously instituted policy. His authority was limited to granting access to religious services to those inmates with the required written permission. Since Mr. Cole acknowledges that he did not present the necessary paperwork to Officer Pflueger on July 2, 1993, the defendant did nothing improper in denying him access to the religious services. Although it is unfortunate that the written approval apparently did not reach the plaintiff until after the services were over, his constitutional rights were not violated. [1]

[1]   In light of this finding, there is no need to consider the defendant's qualified immunity argument.

*Conclusion*
For the reasons set forth above, I recommend that the defendant's motion for summary judgment be granted and judgment be entered dismissing the complaint. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

have ten (10) days to file written objections to this report and recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable William H. Pauley III, Room 234, 40 Foley Square, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 983876

---

**End of Document** © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 857528
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Richard AUSTIN, Plaintiff,
v.
Brian PAPPAS, John Does, Yonkers
Police Commissioner Charles C. Coles,
Westchester County, Defendants.

No. 04-CV-7263 (KMK)(LMS).
|
March 31, 2008.

**Attorneys and Law Firms**

Mr. Richard Austin, Stormville, NY, pro se.

Rory Carleton McCormick, Esq., Corporation Counsel,
City of Yonkers, Yonkers, NY, for Defendants.

*ORDER ADOPTING REPORT
& RECOMMENDATION*

KENNETH M. KARAS, District Judge.

**\*1** Richard Austin ("Plaintiff") filed this suit pursuant
to 42 U.S .C. § 1983 ("Section 1983") against Yonkers
Police Officer Brian Pappas ("Defendant Pappas"),
several John Doe Yonkers Police Officers ("John Doe
Defendants"), former Yonkers Police Commissioner
Charles C. Cola ("Defendant Cola") (whose name is
misspelled in Plaintiff's Complaint as Charles C. Coles),
and Westchester County (collectively, "Defendants"),
alleging violations of Plaintiff's civil rights under the
First, Fourth, Fifth, Eighth, and Fourteenth Amendments
of the United States Constitution, along with various
supplemental state law claims.[1] (Compl.¶¶ 17, 19.)
Plaintiff alleged that these violations occurred when
Defendants failed to protect Plaintiff from Franklyn
Kelley, a private individual who physically attacked
Plaintiff during the course of Plaintiff's May 16, 2003
arrest. (*Id.* ¶ 10.) Plaintiff alleged that Defendant Pappas
and the John Doe Defendants handcuffed him and pinned
him to the ground while Franklyn Kelley repeatedly
kicked and punched Plaintiff in the face. (*Id.* ("The officers
did nothing to protect the plaintiff from this vicious

assault, even though plaintiff was helpless and in their
custody [.]").) Defendants moved for summary judgment,
and this Motion was referred by Judge McMahon to Chief
Magistrate Judge Lisa M. Smith for review pursuant to 28
U.S.C. § 636(b)(1). On August 2, 2007, Magistrate Judge
Smith issued a thorough Report and Recommendation
("R & R"), concluding that this Court should grant
Defendants' Motion for Summary Judgment on the
ground that Plaintiff has failed to demonstrate that there
exists a genuine issue of material fact as to whether his
constitutional rights were violated. Plaintiff was advised
of his right to file objections to the R & R, but he did not
do so.

[1]    On August 8, 2005, Plaintiff's claim against
Westchester County was dismissed by the Honorable
Gerald E. Lynch, to whom this case was initially
assigned. On February 28, 2006, the case was
transferred to White Plains and reassigned to Judge
Colleen McMahon. The case was reassigned to the
undersigned on August 6, 2007.

A district court reviewing a report and recommendation
" 'may accept, reject, or modify, in whole or in part,
the findings or recommendations made by the magistrate
judge.' " *Donahue v. Global Home Loans & Fin., Inc.,* No.
05-CV-8362, 2007 WL 831816, at \*1 (S.D.N.Y. Mar. 15,
2007) (quoting 28 U.S.C. § 636(b)(1)(C)). Under 28 U.S.C.
§ 636(b)(1) and Rule 72(b) of the Federal Rules of Civil
Procedure, parties may submit objections to a magistrate
judge's report and recommendation. The objections must
be "specific" and "written," and must be made "within 10
days after being served with a copy of the recommended
disposition." Fed.R.Civ.P. 72(b)(2); *see also* 28 U.S.C. §
636(b)(1).

Where a party does not submit an objection, " 'a district
court need only satisfy itself that there is no clear error
on the face of the record.' " *Donahue,* 2007 WL 831816,
at \*1 (quoting *Nelson v. Smith,* 618 F.Supp. 1186, 1189
(S.D.N.Y.1985)). In addition, a party's failure to object
waives that party's right to challenge the report and
recommendation on appeal. *See Fed. Deposit Ins. Corp.
v. Hillcrest Assocs.,* 66 F.3d 566, 569 (2d Cir.1995) ("Our
rule is that 'failure to object timely to a magistrate's report
operates as a waiver of any further judicial review of the
magistrate's decision.' " (quoting *Small v. Sec'y of Health
and Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989))).

**\*2** Here, Plaintiff has not filed objections to the R & R. Accordingly, the Court has reviewed the R & R for clear error only. In so doing, the Court adopts the conclusion reached in the R & R that Defendants' Motion for Summary Judgment should be granted, but the Court does so in part on different grounds than those relied on in the R & R.

First, the Court agrees with Magistrate Judge Smith that Defendants' noncompliance with Local Civil Rule 56.2 should be overlooked because any prejudice resulting from noncompliance was cured by the following: (i) Magistrate Judge Smith advised Plaintiff of the nature of summary judgment during a March 23, 2007 conference; and (ii) Magistrate Judge Smith annexed a Rule 56.2 notice to the R & R, a document to which Plaintiff was free to file objections. *See Narumanchi v. Foster,* No. 02-CV-6553, 2006 WL 2844184, at \*2 (E.D.N.Y. Sept. 29, 2006) (refusing to deny defendant's motion for summary judgment based on failure of defendant to comply with Local Civil Rule 56.2 because "[a]ny prejudice to *pro se* plaintiffs [was] cured" by court's actions).

As expressed in the R & R, though Plaintiff did not file any opposition to Defendants' Motion for Summary Judgment, Defendants were still required to meet their burden of demonstrating to the Court that "no material issue of fact remains for trial." *See Amaker v. Foley,* 274 F.3d 677, 681 (2d Cir.2001). The Court finds no clear error in Magistrate Judge Smith's determination that Defendants satisfied this burden.

With respect to Defendants Pappas and Cola, the Court finds that Plaintiff has failed to offer any evidence demonstrating that they were personally involved in the alleged violation of Plaintiff's constitutional rights. The " 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 122 (2d Cir.2004) (quoting *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977)). For purposes of Section 1983 liability, personal involvement can be established by evidence that:

> '(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong,

> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring.'

*Id.* at 127 (quoting *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)); *accord Hayut v. State Univ. of N.Y.,* 352 F.3d 733, 753 (2d Cir.2003); *Schiller v. City of New York,* No. 04-CV-7922, 2008 WL 200021, at \*4 (S.D.N.Y. Jan. 23, 2008); *Fair v.. Weibur,* No. 02-CV-9218, 2006 WL 2801999, at \*4 (S.D.N.Y. Sept. 28, 2006). Further, a Section 1983 plaintiff must "allege a tangible connection between the acts of the defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986); *see also Fair,* 2006 WL 2801999, at \*4 (citing *Bass* ).

**\*3** In support of their Motion for Summary Judgment, Defendants submitted evidence that Defendant Pappas did not directly participate in the arrest of Plaintiff, but he instead arrested Plaintiff's accomplice. For example, on April 8, 2004, at a hearing before the Honorable Richard A. Molea of the Westchester County Court, Defendant Pappas testified that he remained with Plaintiff's accomplice while other officers arrested Plaintiff. (Defs.' Affirmation in Supp., Ex. J, 50-51.) Further, in response to interrogatories served on him by Plaintiff, Defendant Pappas stated that he "did not observe what transpired during the course of plaintiff's arrest." (*Id.,* Ex. L.) Finally, Defendants offer a police report indicating that "Pappas was detaining [Plaintiff's accomplice] in the garage area, as additional units arrived and placed [Plaintiff] into custody." (*Id.,* Ex. C.)

Plaintiff has failed to offer any evidence refuting Defendant Pappas' version of events. In other words, Plaintiff has offered no evidence demonstrating that Defendant Pappas was actually one of the officers who arrested him and allegedly pinned him to the ground while Kelley assaulted him. In fact, during his deposition testimony, Plaintiff admitted that he was not sure whether Defendant Pappas was one of the police officers who

arrested him, and that the reason Defendant Pappas was named as a defendant in the present suit was because Plaintiff had seen his name on Plaintiff's felony complaint. (*Id.,* Ex. G, 32-35.) As such, the unrefuted evidence before the Court demonstrates that Defendant Pappas was not one of the officers directly involved in Plaintiff's arrest. Plaintiff therefore has failed to satisfy a prerequisite to liability under Section 1983-namely that Defendant Pappas had personal involvement in the alleged violation of Plaintiff's constitutional rights. *See Back,* 365 F.3d at 122. Thus, Plaintiff's claim against Defendant Pappas must be dismissed.

Plaintiff alleged that Defendant Cola, Yonkers Police Commissioner at the time of Plaintiff's 2003 arrest, violated Plaintiff's constitutional rights by "authoriz[ing], tolerat[ing], as institutionalized practices, and ratif[ying] the misconduct [of Defendant Pappas and John Doe Defendants]." (Compl.¶ 14.) More specifically, Plaintiff charges Defendant Cola with failure to properly: (1) discipline subordinate officers; (2) take adequate precautions in hiring subordinate officers; (3) report criminal acts by police personnel to the Westchester County District Attorney; and (4) establish a system for dealing with complaints about police misconduct. (*Id.*) Plaintiff does not assert that Defendant Cola directly participated in the violation of his constitutional rights; instead, Plaintiff urges the Court to find Defendant Cola liable under Section 1983 based on his role as supervisor of Defendant Pappas and the John Doe Defendants.

"It is well settled, however, that the doctrine of respondeat superior standing alone does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity." *See Hayut,* 352 F.3d at 753 (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978)). Instead, it is necessary to establish a supervisory official's personal involvement in the alleged constitutional violation. *See id.; Fair,* 2006 WL 2801999, at *4.

**\*4** Plaintiff has failed to provide the Court with any evidence from which a reasonable jury could conclude that Defendant Cola was personally involved in the alleged violation of Plaintiff's constitutional rights. Plaintiff has offered no evidence demonstrating that Defendant Cola was aware of and failed to remedy constitutional violations by subordinate officers, or that he acted in a grossly negligent or deliberately indifferent manner

in supervising or training subordinate officers. There is also no evidence in the record to support a theory that Defendant Cola created a policy or custom that fostered and led to the alleged violation of Plaintiff's rights. *See Hayut,* 352 F.3d at 754 (finding as fatal to plaintiff's Section 1983 claim the fact that there existed "no evidence that, after becoming aware of the alleged harassment, any of the [supervisory officials] failed to respond or remedy the situation, that any of these [supervisory officials] created or allowed a policy to continue under which alleged harassment could occur, or that they were grossly negligent in monitoring [the alleged harasser's] conduct"); *Harris v. City of New York,* No. 01-CV-6927, 2003 WL 554745, at *6 (S.D.N.Y. Feb. 26, 2003) ("[P]laintiff has put forth no evidence pointing to defendant ['s] personal involvement in plaintiff's alleged deprivation of rights .... Plaintiff's conclusory allegations regarding defendant['s] alleged supervisory role, without more, cannot withstand summary judgment."). Further, nothing in the record, even drawing all inferences in Plaintiff's favor, suggests any tangible connection between Defendant Cola's training or supervision of subordinate officers and the alleged violation of Plaintiff's rights. In fact, the record contains no evidence with regard to Defendant Cola whatsoever. Without such evidence, no reasonable jury could conclude that Defendant Cola had personal involvement in the alleged violation of Plaintiff's constitutional rights, which means that Plaintiff has failed to satisfy a prerequisite to Section 1983 liability, and therefore that Defendant Cola is entitled to summary judgment in his favor. *See Davis v. Kelly,* 160 F.3d 917, 921 (2d Cir.1998) ("After an opportunity for discovery, undisputed allegations that [a] supervisor lacked personal involvement will ultimately suffice to dismiss that official from the case.").

In sum, the Court finds that Plaintiff has failed to establish the personal involvement of Defendants Pappas and Cola in the alleged violation of his rights. For reasons set forth more fully in the R & R, the Court also dismisses the Complaint as to the John Doe Defendants because Plaintiff's time limit to amend the Complaint in order to substitute in named defendants has lapsed. Therefore, the Court finds it unnecessary to reach the question of whether Plaintiff has adequately established an underlying violation of his constitutional rights. Finally, having determined that no cognizable federal claims exist, the Court will follow Magistrate

2008 WL 857528

Judge Smith's recommendation in declining to exercise jurisdiction over the state law claims.

**\*5**  Accordingly, it is hereby:

ORDERED that the Report and Recommendation dated August 2, 2007, is ADOPTED on the grounds set forth in this Order; and it is further

ORDERED that Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 is GRANTED.

The Clerk of Court is respectfully directed to enter judgment in favor of Defendants, to terminate Defendant's Motion (Dkt. No. 28), and to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 857528

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:16-cv-00528-TJM-TWD    Document 59    Filed 08/02/18    Page 60 of 86

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

2005 WL 3370542
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

INTERNET LAW LIBRARY, INC.
and Hunter M.A. Carr, Plaintiffs,
v.
SOUTHRIDGE CAPITAL
MANAGEMENT, LLC, et al., Defendants.
COOTES DRIVE, LLC.,
Defendant, Counterclaim-Plaintiff,
v.
INTERNET LAW LIBRARY, INC.,
Plaintiff, Counterclaim-Defendant.
Jack TOMPKINS, Kerwin Drouet, et al., Plaintiffs,
v.
SOUTHRIDGE CAPITAL
MANAGEMENT, et al., Defendants.

No. 01 Civ. 6600(RLC).
|
Dec. 12, 2005.

**Attorneys and Law Firms**

Koerner Silberberg & Weiner, LLP, New York, NY, for Internet Law Library, Inc.

Maryann Peronti, of counsel.

Christian, Smith & Jewell, Houston, TX, for Internet Law Library, Inc.

Gary M. Jewell, James W. Christian, of counsel.

Tate & Associates, Richmond, TX, for Internet Law Library, Inc.

Richard L. Tate, James W. Christian, of counsel.

Dla Piper Rudnick Gray Cary U.S. LLP, New York, NY, for Southridge Capital Management LLC, Cootes Drive LLC, Stephen Hicks, Daniel Pickett, Christy Constabile, David Sims, Navigator Mangement Ltd.

Perrie M. Weiner, Caryn G. Mazin, Palmina M. Fava, of counsel.

Kramer Levin Naftalis & Frankel LLP, New York, NY, for Citco Group Limited.

Michael J. Dell, of counsel.

Law Offices of Michael S. Rosenblum, Los Angeles, CA, for Southridge Capital Management LLC, Cootes Drive LLC, Stephen Hicks, Daniel Pickett, Christy Constabile, David Sims, and Navigator Management Ltd.

Michael S. Rosenblum, Amy M. Caves, of counsel.

Hanley Conroy Bierstein & Sheridan LLP, New York, NY, for Kirwin Drouet, Jack Thompkins and Hunter M.A. Carr.

Thomas I. Sheridan, III, of counsel.

Morrison & Foerster LLP, New York, NY, for Mark Valentine.

Carl H. Loewenson, Jr., James E. Johnson, Joel C. Haims, of counsel.

Gibbons, Del Deo, Dolan, Griffinger & Vecchione, PC, New York, NY, for Thomson Kernaghan & Co, Ltd., and TK Holdings, Inc.

Debra A. Clifford, of counsel.

OPINION

CARTER, J.

BACKGROUND

**\*1** This case is the result of several actions arising out of a set of related financing transactions. [1] The court consolidated these cases and named ITIS Holdings Inc. ("INL") (f/k/a ITIS Inc. and Internet Law Library), Hunter Carr, Kerwin Drouet, and Jack Tompkins the plaintiffs. *Internet Law Library, Inc. v. South Ridge Capital Mgmt., LLC,* 208 F.R.D. 59 (S.D.N.Y.2002) (Carter, J). Accordingly, Southridge Capital Management LLC, Stephen Hicks, Daniel Pickett, Christy Constabile, David Sims, Navigator Management Ltd., The Citco Group Limited, Citco Trustees (Cayman) Limited and Cootes Drive, LLC ("Cootes Drive") were named defendants and Cootes Drive's claims against INL became counterclaims. *Id.*

Case 9:16-cv-00528-TJM-TWD    Document 59    Filed 08/02/18    Page 61 of 86

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

1    On January 12, 2001, INL, its Chief Executive Officer, Hunter M .A. Carr, and several shareholders filed suit against Southridge and a number of its representatives in the Southern District of Texas claiming, among other things, fraud, misrepresentation of material facts, manipulation of INL's stock and breach of contract. *See Internet Law Library, Inc., et al. v. South Ridge Capital Mgmt., LLC et al,* 01 Civ. 660(RLC). Later, some additional shareholders of INL brought suit in the Southern District of Texas alleging much the same facts. *See Brewer, et al. v. South Ridge Capital Mgmt ., LLC, et al.,* 0202 Civ. 0138(RLC). Finally, Cootes Drive LLC, a Southridge affiliate, brought suit in this court against INL and several of its directors asserting claims for breach of contract and fraud. *See Cootes Drive, LLC v. Internet Law Library, Inc.,* 01 Civ. 0877(RLC).

Over the years the court has dealt with various issues, (*see e.g., Internet Law Library Inc. v. South Ridge Capital Mgmt., LLC,* 223 F.Supp.2d 474 (S.D.N.Y.2002) (Carter, J) (hereinafter *"Internet Law I"* )) with which familiarity is assumed. Most importantly, the court dismissed the plaintiffs' claims with prejudice in *Internet Law Library Inc. v. South Ridge Capital Mgmt ., LLC,* 2003 WL 21537782 (S.D.N.Y.2003) (Carter, J.) (hereinafter *Internet Law II* ).

In the instant matter, defendant Cootes Drive moves for partial summary judgment against INL on its third counterclaim for breach of contract for failure to redeem preferred stock pursuant to a stock purchase agreement. Defendant Cootes Drive also seeks partial summary judgment against INL on its fourth counterclaim for breach of contract for failure to honor a promissory note. The plaintiffs cross move to dismiss defendants' counterclaims pursuant to Rule 37(b)(2)(C), F.R. Civ. P., due to alleged abuses of discovery procedures, and move for the court to reconsider its judgment entered July 8, 2005 dismissing plaintiffs' claims with prejudice. Under separate covers, plaintiffs have twice moved to supplement the record of the aforementioned motions and defendants have moved to strike some of plaintiffs' supporting affidavits. We consolidate the former motions with the latter and resolve them all in this opinion. Because of the nature of the issues raised in plaintiffs' motions, we reach them first.

## DISCUSSION

## I PLAINTIFFS' MOTION FOR RECONSIDERATION

Plaintiffs' motion for reconsideration brought pursuant to U.S. Dist. Ct. S.D.N.Y. Local Civil Rule 6.3 is based on the court's possible oversight of two matters: (a) the *res judicata* effect of its June 8, 2003 decision, specifically whether plaintiffs' affirmative defenses are barred, and (b) because Rule 37(b)(2)(C), Fed. R. Civ. P ("Rule 37") allegedly does not authorize sanctions. The parties have also made a request for the to court clarify these two issues, especially as they pertain to the order entered on July 8, 2003.

Under Rule 37, if a party "fails to obey an order entered under Rule 26(f) ... the court in which the action is pending may ... (C) ... strike [ ] out pleadings or parts thereof ... or dismiss[ ] the action or proceeding or any part thereof, or render judgment by default against the disobedient party." Plaintiffs' attempt to read the rule as only being applicable to parties who fail to participate in discovery is inapposite to the plain meaning of the statute. Moreover, the court has the inherent authority to dismiss a case when a party disobeys any of its orders. *See Chambers v. Nasco, Inc.,* 501 U.S. 32, 45 (1991). Plaintiffs flagrantly disregarded the discovery instructions of this court. As a result the court, acting well within its explicit and implicit authority, dismissed the plaintiffs' complaint. The court did not, however, dismiss the defendants' counterclaims or the plaintiffs' affirmative defenses to those counterclaims.

**\*2** Cootes Drive argues that because the claims in plaintiffs' dismissed complaint form the basis for their affirmative defenses, plaintiffs' affirmative defenses are now barred by claim preclusion. Under the doctrine of claim preclusion, once a judgment has been made on the merits, the parties are prohibited from bringing a second suit based upon the same claims. *Hough v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 757 F. Supp 283, 291 (S.D.N.Y.1991) (Conner, J.) Cootes Drive would be correct to assert that plaintiffs are precluded from bringing another complaint based upon the same claims found in their dismissed complaint. [2] However, that issue is not before the court. The court mindfully chose not to dismiss the plaintiffs' affirmative defenses. Thus, these affirmative defenses have not been adjudicated and there is no logic or fairness to treating them as if they have.

Case 9:16-cv-00528-TJM-TWD   Document 59   Filed 08/02/18   Page 62 of 86

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

2    A dismissal under Rule 37 is an adjudication on the
     merits. *See* Rule 41(b), F.R. Civ P.; *Nasser v. Isthmian
     Lines,* 331 F .2d 124 (2d Cir.1964).

We confirm that the court was within its authority
in dismissing plaintiffs' complaint and that plaintiffs'
affirmative defenses still stand. The court did not
overlook these subjects. Accordingly, the motion for
reconsideration is denied.

## II PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

While arguing that the court lacked the authority to
dismiss their claims pursuant to Rule 37, the plaintiffs
have the audacity to request that we now dismiss Cootes
Drive's counterclaims pursuant to the same rule and
for the same alleged conduct. Without delving into
the sophistical reasoning that allows them to entertain
these contradictory propositions, it bears repeating that
plaintiffs flagrantly defied the court's order. The plaintiffs
and not Cootes Drive disrespected the court. If Cootes
Drive had done so, or if they ever do, the court would not
hesitate to impose sanctions. The motion is denied.

## III PLAINTIFFS' MOTIONS TO SUPPLEMENT THE RECORD

On February 12, 2004 and on April 6, 2004, plaintiffs
filed motions to supplement the record. The documents
that are the subject of these motions were produced
in connection with an action pending in Georgia. The
documents themselves are the organizational documents
and various agreements between companies affiliated with
Cootes Drive. There are also letters and memoranda sent
to and from these affiliated companies and the law firm
of Dorsey & Whitney LLP, their transactional counsel.
Plaintiffs assert that these documents demonstrate that the
defendants operated their businesses in a tiered structure
in order to limit liability. Even if true, this assertion
does not make the documents relevant to Cootes Drive's
claims of breach or plaintiffs' motions to dismiss and for
reconsideration. Indeed, many of the documents predate
the note and agreement by several years. Because plaintiffs
have not sufficiently demonstrated the relevance of the
documents to the motions that they seek to supplement,
plaintiffs' two motions to supplement the record are
denied.

## IV MOTIONS TO STRIKE PLAINTIFFS' AFFIDAVITS

**\*3**  Cootes Drive moves to strike portions of the affidavit
of Hunter M. Carr, dated September 19, 2003 (the
"Carr Affidavit") and the affidavit of Richard L. Tate,
dated September 22, 2003 (the "First Tate Affidavit")
based on evidentiary objections. The court finds that
these affidavits comport with Rule 56(e). Cootes Drive's
motions to strike the Carr Affidavit and the First Tate
Affidavit are denied.

The Citco Group Limited and Citco Trustees (Cayman)
Limited (the "Citco defendants") move to strike the
Affidavit of Richard L. Tate, dated October 20, 2003
(the "Second Tate Affidavit"). The Second Tate Affidavit
is submitted as a response to the Citco Defendants'
motion for summary judgment. However, to the court's
best knowledge or that of the Citco defendants, there
never was such a motion. Submission of a reply to a
nonexistent motion is clearly inappropriate; furthermore,
even if the submission of the affidavit were appropriate, the
contents are not. An attorney's affidavit is typically used
to present documents to the court and should not be used
as counsel's personal vehicle to lobby the court. *Universal
Film Exchanges, Inc. v. Walter Reade, Inc.,* 37 F.R.D. 4, 5
(S.D.N.Y.1965) (Levet, J.). In the Second Tate Affidavit,
Tate, attorney for the plaintiffs, engages in extensive
argumentation and draws numerous conclusions of law.
Tate further swears to several matters of which he could
have no direct personal knowledge of as an attorney that
came upon this matter after the fact. The Second Tate
Affidavit is more akin to a memorandum of law than to an
attorney's affidavit. The motion to strike the Second Tate
Affidavit in its entirety is granted.

## V COOTES DRIVE'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT

In deciding a motion for summary judgment, the court's
role is not to determine the truth of the matter but to
determine whether there is a genuine issue for trial.
*Anderson v. Liberty Lobby, Inc .,* 477 U.S. 242, 249
(1986). A party is entitled to summary judgment when
"the pleadings, depositions, answers to interrogatories
and admissions on file, together with the affidavits, if any,
show that there is no genuine issue as to any material fact
and that the moving party is entitled to judgment as a
matter of law." Rule 56(c), F.R. Civ. P.

Case 9:16-cv-00528-TJM-TWD    Document 59    Filed 08/02/18    Page 63 of 86
Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...
2005 WL 3370542

1. Counterclaim Three: The Convertible Preferred Stock Purchase Agreement

After several months of negotiations, on or about May 11, 2000, Cootes Drive [3] and INL entered into the Convertible Preferred Stock Agreement (the "agreement"). Under the agreement, INL agreed to sell Cootes Drive shares of INL's 5% Series A Convertible Preferred Stock, which could be redeemed for INL common stock at Cootes Drive's request. Cootes Drive's motion for summary judgment on their third counterclaim is based on the failure of INL to honor one of these redemption requests.

[3]    Plaintiffs allege that Cootes Drive was inserted into the agreement at the eleventh hour as a substitute for Southridge and is in fact little more than a "straw man" created to insulate Southridge from liability.

To prevail on a claim for breach of contract under New York law, a party must show: 1) the existence of an agreement between the parties; 2) adequate performance of the contract; 3) breach of the contract; and 4) damages resulting from the breach. [4]  The parties admit that the agreement exists, Pls. Statement Pursuant to Local Rule 56.1 ("Pls.Statement") at ¶ 1, and that the defendants performed. *Id.* at ¶ 6. INL admits that they did not honor Cootes Drive's redemption request. *Id.* at ¶ 14-15. Finally, defendants are able to show damages based upon the position it would have had INL performed under the agreement. Defs. Reply Mem. at 3. Cootes Drive has therefore met the requirements of their claim for breach against INL.

[4]    *Internet Law I,* 223 F.Supp.2d at 490 *citing Harsco Corp.,* 91 F.3d at 348; *See also Bridgeway Corp. v. Citibank, N.A.,* 132 F.Supp.2d 297, 305 (S.D.N.Y.2001) (Chin, J.).

**\*4** While INL does not contest that they failed to honor the redemption request, they defend their failure to redeem the stock on the grounds that defendants, among other things, [5] fraudulently induced them into entering the agreement and materially breached the agreement. As is the case here, "[o]ne who relies upon an affirmative defense to defeat an otherwise meritorious motion for summary judgment must adduce evidence which, viewed in the light most favorable to and drawing all reasonable inferences in favor of the non-moving party, would permit judgment for the non-moving party on the basis of that

defense." *Frankel v. ICD Holdings S.A.,* 930 F.Supp. 54, 65 (S.D.N.Y.1996) (Kaplan, J.). The non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." *SHL Imaging, Inc. v. Artisan House, Inc.* 117 F.Supp.2d 301, 304 (S.D.N.Y.2000) (Pauley, J.). Within this framework the court will examine INL's defenses to Cootes Drive's counterclaims.

[5]    Plaintiff INL also raises a defense of "manipulation". This is not a recognized defense to breach of contract.

Plaintiffs contend that they relied upon a number of false statements made by the defendants outside of the agreement. Before deciding the underlying question of the merits of the fraudulent inducement claims, the court must first determine whether plaintiffs will be allowed to offer evidence pertaining to their claim. Under New York law, if a contract contains a merger clause, parol evidence is not admissible to "vary, or permit escape from the terms of an integrated contract." [6] However, a general merger clause will not preclude a party from introducing parol evidence that they were induced into entering a contract by means of fraud, [7] and a party may escape liability by establishing proof of such fraud. [8] The exception to this rule is that if the contract contains a disclaimer of certain representations, the relying party cannot claim that they were defrauded as to those specific representations. [9]

[6]    *Manufacturers Hanover Trust Co. v. Yanakas,* 7 F.3d 310, 315 (2d Cir1993) *citing Fogelson v. Rackfay Construction Co.,* 300 N.Y. 334, 340, 90 N.E.2d 881, 884 (1950)

[7]    *Sabo v. Delman,* 3 N.Y.2d 155, 161-62, 164 N.Y.S.2d 714, 717-19 (1957); *Bridger v. Goldsmith,* 143 N.Y. 424, 428, 38 N.E. 458, 459 (1894) ("fraud [in the inducement] vitiates every transaction")

[8]    *See Danann Realty Corp. v. Harris,* 5 N.Y.2d 317, 320, 157 N.E.2d 597, 598, 184 N.Y.S.2d 599, 601 (1959)(contract provided that "all understandings and agreements heretofore had between the parties hereto are merged in this contract ... neither party [is] relying upon any statement or representation not embodied in the is contract").

[9]    *Citibank v. Plapinger,* 66 N.Y.2d 90, 94, 495 N.Y.S.2d 309, 312 (1985) (provision in multimillion dollar agreement stating that all guarantees are "absolute and unconditional" precluded defense of fraud)

Case 9:16-cv-00528-TJM-TWD    Document 59    Filed 08/02/18    Page 64 of 86

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

The agreement between the parties contains both a merger clause [10] and a disclaimer of reliance. [11] Plaintiffs defend against these facts by asserting that the disclaimer is general and not specific. [12] In New York, no particular words are needed to make a disclaimer specific. [13] However, a specific disclaimer must "contain explicit disclaimers of the particular representations that form the basis of the fraud in the inducement ... the touchstone is specificity." [14] The disclaimer in question appears at the end of warranties and representations section of the agreement and reiterates that no warranties or representations shall be made other than those in the immediately preceding section. [15] This is, by nature, a general disclaimer; it lacks the specificity to meet the standard the Second Circuit has applied under New York law. New York law requires more than a "generalized boilerplate exclusion [clause]," [16] a disclaimer must speak directly to the matter at issue in order to preclude a claim of fraud in the inducement. [17] The court therefore finds that plaintiffs are not barred from introducing evidence of fraud in the inducement.

[10] "The Transaction Documents ... contain the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, oral or written, with respect to such matters ..." agreement § 4.2.

[11] "The Company acknowledges and agrees that no Purchaser makes or has made any representations or warranties with respect to the transactions contemplated hereby other than those specifically set forth in this Section 2.2" agreement § 2.2.

[12] "[A] general merger clause is ineffective to exclude parol evidence to show fraud in inducing the contract ..." *Danann Realty* at 320.

[13] *Wells Fargo Bank Northwest, N.A. v. Taca Intern. Airlines, S .A,* 247 F.Supp.2d 352, 368 (S.D.N.Y.,2002) (Lynch, J.) *quoting Lucas v. Oxigene, Inc.,* No. 94 Civ. 1691, 1995 WL 520752 at *5 (S.D.N.Y.1995) (Mukasey, J.)

[14] *Yanakas,* 7 F.3d 310, 316 *citing Grumman Allied Industries, Inc. v. Rohr Industries, Inc.,* 748 F.2d 729 (2d Cir.1984)

[15] § 2.2 includes representations by the purchasers regarding their organization and authority to enter into the agreement, investment intent, "accredited

investor" status, financial experience, ability to bear risk of the investment, access to information and other securities related matters.

[16] *Yanakas,* 7 F.3d 310, 317.

[17] *DiFilippo v. Hidden Ponds Associates,* 146 A.D.2d 737, 738; 537 N.Y.S.2d 222, 224 (N.Y.A.D. 2 Dept.1989) ("[b]ecause the [disclaimer] provision does not specifically disclaim reliance on any oral representation concerning the particular matter as to which plaintiff now claims he was defrauded, it does not foreclose him from offering evidence of the defendants' oral representations to the contrary.")

**\*5** The court now examines the claims of fraud to determine if there is a genuine dispute as to a material fact. Under New York law, a claim of fraudulent inducement requires proof (1) that the defendants made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendants, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity, (8) to his injury. [18] Plaintiffs list nine misrepresentations that it claims the defendants made to them. Pls. Statement at ¶ 59. Although their claim has been plead with specificity, [19] plaintiffs have failed to prove reliance on each of the statements for one or more of the following reasons. Where the defendants' alleged misrepresentations are contradicted or subsumed by material in the agreement, for example, that INL's stock would be acquired for investment purposes and not for distribution or resale, we find that the plaintiffs' claims are unreasonable as a matter of law. [20] The court finds plaintiffs' reliance on other statements to be simply unreasonable. "Reliance means reasonable reliance." *M.H. Segan Ltd. Partnership v. Hasbro, Inc.* 924 F.Supp. 512, 526 (S.D.N.Y.1996) (Cote, J.) (internal quotations and citations omitted). After analysis of the material provided by the parties, the court concludes that alleged representations such as "[t]hey would not manipulate stock in order to depress its price", Pls. Statement at ¶ 59, are so important to the functioning of a publicly traded company that no reasonable businessperson would have relied on them without putting them in writing after first discussing them at length. [21] Other misrepresentations, for example, that other companies funded by defendants experienced increases in their stock prices, Pls. Statement at ¶ 59, would have been easily verifiable. [22] The remaining statements

Case 9:16-cv-00528-TJM-TWD   Document 59   Filed 08/02/18   Page 65 of 86

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

are uncontraverted or without consequence. Holding, as we do, that INL cannot satisfy the reliance element of their affirmative defense of fraudulent inducement we need not look into the remaining elements of the claim. INL's affirmative defense of fraudulent inducement as to Cootes Drive is hereby struck insofar as it pertains to the third counterclaim.

[18]    *Computerized Radiological Servs. v. Syntex Corp.,* 786 F.2d 72, 76 (2d Cir.1986) *quoting Brown v. Lockwood,* 76 A.D.2d 721, 432 N.Y.S.2d 186, 193 (1980).

[19]    In the court's previous decision, the fraud claims were examined under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, passed pursuant to § 10(b). The court held that because the plaintiff satisfied the elements for pleading a claim under the statutes, they had satisfied the nearly identical common law fraud requirements as well. *Internet Law I,* 223 F.Supp.2d 489-90.

[20]    *See Brown v. E.F. Hutton Group, Inc.,* 991 F.2d 1020, 1031 (2d Cir.1993) (district court correct in granting summary judgment after holding reliance unreasonable as a matter of law where alleged misrepresentations were contradicted by offering materials); *Emergent Capital Inv. Management, LLC v. Stonepath Group, Inc.,* 343 F.3d 189, 196 (2d Cir.2003) (plaintiff's failure to insist that a representation be included in a stock purchase agreement "precludes as a matter of law a finding of reasonable reliance"); *Feinman v. Schulman Berlin & Davis,* 677 F.Supp. 168, 170-71 (S.D.N.Y.1988) (Kram, J.) (dismissal appropriate where plaintiffs relied on statements "directly contradicted by the clear language of the offering memorandum"); *M.H. Segan Ltd. Partnership v. Hasbro, Inc.,* 924 F.Supp. 512, 527 (S.D.N.Y.1996) (Cote, J.) (party failed to establish reasonable reliance as a matter of law where misrepresentations were "directly contradicted" by written waiver agreement).

[21]    "Sophisticated business entities, when put on notice of the existence of material facts which have not been documented, assume the business risk that the facts may not be as represented because a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament." 247 F.Supp.2d 352, 369 (internal quotations omitted) *quoting Lazard Freres & Co. v. Protective Life Ins.,* 108 F.3d 1531, 1543 (2d Cir.1997).

[22]    "Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance." *Grumman Allied Industries, Inc. v. Rohr Industries, Inc.* 748 F.2d 729, 737 (2d Cir.1984).

The court held previously that plaintiffs have successfully pleaded claims to meet the elements of an action for breach of contract. *Internet Law I,* 223 F. Supp at 490. The court now searches the record to see if there is sufficient evidence to prove these allegations. What is in dispute is whether Cootes Drive's breach, namely, selling shares short in violation of the agreement, was material.[23] If Cootes Drive's breach was material, plaintiffs argue, plaintiffs were excused from performance. As discussed above, Cootes Drive has proven its claim and the burden is upon plaintiffs to produce evidence that would "permit judgment for the [plaintiffs] on the basis of [their] defense."[24]

[23]    "Under New York law, for a breach of a contract to be material, it must go to the root of the agreement between the parties. A party's obligation to perform under a contract is only excused where the other party's breach of the contract is so substantial that it defeats the object of the parties in making the contract." *Frank Felix Associates, Ltd. v. Austin Drugs, Inc.,* 111 F.3d 284, 289 (2d Cir.1997) (internal quotations and citations omitted); *Wechsler v. Hunt Health Systems, Ltd.,* 186 F.Supp.2d 402, 413 (S.D.N.Y.2002) ("Under New York law [materiality of a breach] is a question of law for the Court to decide.")

[24]    *Frankel v. ICD Holdings S.A.,* 930 F.Supp. 54 (S.D.N.Y.1996) (Kaplan, J.) (holding that custom crafted disclaimer language in notes negotiated between sophisticated parties waived a defense of fraud in the inducement)

**\*6**   Plaintiffs make grand allegations but actually prove very little. Construing the facts in the light most favorable to them, but without taking any untoward leaps of faith, plaintiffs have shown that defendant Cootes Drive sold 64,346 shares "short"[25] prior to receiving a waiver[26] from INL that enabled them to sell shares in this manner. During the 93 trading days before the waiver, defendant Cootes Drive maintained short positions on only 7 days. Pls. Statement at ¶ 24. The shorted sales make up a very

Case 9:16-cv-00528-TJM-TWD Document 59 Filed 08/02/18 Page 66 of 86
Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...
2005 WL 3370542

small minority of the shares traded by Cootes Drive and a minute percentage of the overall total shares traded during the period. The court finds that, in light of the peculiarities of this case, this small amount of trading is merely a technical violation of the agreement; it does not go to the root of the agreement between the parties and is therefore not is enough to constitute a material breach and excuse INL from performance. [27]

[25]    § 3.13 of the agreement defines short sales as a sale where there was not an equivalent offsetting long position including shares due under a notice of conversion.

[26]    Plaintiffs do not contest the authenticity of the waiver but allege the waiver was given as a result of the underlying fraudulent inducement. Holding, as we do, that plaintiffs' claims of fraudulent inducement are without merit, we find the parties validly entered into the waiver.

[27]    "The right of a party to enforce a contract will not be forfeited or lost by reason of technical, inadvertent, or unimportant omissions or defects." *Cablevision Systems Corp. v. Town of East Hampton,* 862 F.Supp. 875, 885 (E.D.N.Y.1994), *aff'd* 57 F.3d 1062 (2d Cir.1995) (unpublished table decision), *quoting Miller v. Benjamin,* 142 N.Y. 613, 617, 37 N.E. 631 (1894).

The one piece of evidence that plaintiffs produced which tends to mitigate in their favor are the trading records showing that Thomas Kernaghan, an agent and broker for Cootes Drive, was shorting INL stock. However, these trades begin well before the agreement and plaintiffs do not show that the trades were done at the behest of Cootes Drive. Plaintiffs have requested additional discovery to flesh out these particular weaknesses in their defense of breach. Plaintiffs have already been given ample time for discovery. In light of this and plaintiffs' conduct during such discovery, no additional discovery will be granted. [28]

[28]    *See Internet Law II,* 2003 WL 21537782 (S.D.N.Y.2003) (Carter, J.)

INL's defense of breach is hereby struck as it pertains to the third counterclaim. Plaintiffs have also included in their pleadings an everything-but-the-kitchen-sink list of affirmative defenses that they do not even attempt to support. [29] Like their affirmative defenses of fraud and breach, we find these defenses to be without merit as they pertain to Cootes Drive's Third Counterclaim. We hereby

award summary judgment in favor of Cootes Drive on their Third Counterclaim. INL is required to pay damages and interest to Cootes Drive for breach of the agreement.

[29]    Reply to Counterclaims at 17-19.

2. Counterclaim Four: The Promissory Note
Cootes Drive's fourth counterclaim for breach of contract is for failure to repay a promissory note. In New York, proof of a promissory note, demand and nonpayment establishes a prima facie case for recovery. [30] A prima facie case entitles the promisee to judgment as a matter of law. [31] In the instant matter, plaintiffs concede that "Cootes Drive agreed to loan INL $500,000 ... [as] memorialized by a promissory note dated December 5, 2000" (the "note"). Pls. Statement at ¶ 29-30. Plaintiffs further concede that Cootes Drive provided the funds; demanded payment on March 1, 2001; and that "[INL] has not paid the Note" *Id.* at 32-33. Based upon plaintiffs' admissions alone, Cootes Drive has squarely met the burden of proving a prima facie case.

[30]    *See First Federal Sav. Bank v. Tazzia,* 696 F.Supp. 904, 906 (S.D.N.Y.1988) (Sweet, J.); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Fremont,* 760 F.Supp. 334, 336 (S.D.N.Y.1991) (Stanton, J.); *Citicorp Intern. Trading Co., Inc. v. Western Oil & Refining Co., Inc.,* 790 F.Supp 428 (S.D.N.Y.1992) (Sweet, J .).

[31]    *Gross v. Fruchter,* 230 A.D.2d 710, 711, 646 N.Y.S.2d 53, 54 (N.Y.A.D. 2 Dept.1996) (promisee established entitlement to judgment as a matter of law by producing note and demonstrating that maker failed to redeem when requested).

**\*7** Once the promisee has demonstrated a prima facie case for recovery on a note, in order to avoid judgment, it is up to the maker to produce evidence showing a triable issue fact establishing a bona fide defense. *Grasso v. John I. Shutts Agency, Inc.,* 517 N.Y.S.2d 113, 132 A.D.2d 768 (N.Y.App.Div.1987). To this end, mere conclusory allegations will not suffice; a genuine and substantial issue rebutting holder's entitlement to payment must be shown. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Fremont,* 760 F.Supp. 334, 336 (S.D.N.Y.1991) (Stanton, J.). Without being explicit, plaintiffs seem to posit the same defenses to the payment of the note as the agreement, specifically that the note is a result of underlying fraud and that the defendants breached the

Case 9:16-cv-00528-TJM-TWD    Document 59    Filed 08/02/18    Page 67 of 86
Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...
2005 WL 3370542

note in some manner. Although, plaintiffs' fraud defense is invalid for the reasons described above, it is worth noting that it would not be applicable to the note because the plaintiff specifically waived his right to protest payment of the note. Note § 6 ("[a]ll payments of principal and interest shall be made without setoff, deduction or counterclaim.") Under New York law, such a waiver among sophisticated parties is effective to overcome virtually any defense to enforcement. [32]

[32]    *Citicorp Intern. Trading Co., Inc.,* 790 F.Supp at 434; *Thornock v. Kinderhill Corp.,* 749 F.Supp. 513 (S.D.N.Y.1990)* (Sweet, J.) (granting summary judgment in favor of promisee despite maker's defense of fraudulent inducement because such defense was not based upon misrepresentations concerning terms or conditions of loan itself); *Bank of Suffolk County v. Kite,* 49 N.Y.2d 827, 427 N.Y.S.2d 782 (1980)* (Bank entitled to judgment on note despite alleged oral understanding that maker would not be liable where the unexpressed condition was inconsistent with the expressed terms of the note).

Plaintiffs offer no theories as to how Cootes Drive has breached the conditions of the note. Plaintiffs merely allege that after entering the agreement, their position with creditors had become so poor that they had no one else to turn to for money. Even assuming this is an attempt to contrive a non-frivolous economic duress defense, the court finds no merit in it. Plaintiffs were not "forced to agree to [the note] by means of a wrongful threat

precluding the exercise of his free will." [33] INL's defenses to enforcement of the note fail. Summary judgment is awarded to Cootes Drive on their fourth counterclaim. INL must repay the principal and accrued interest on the note.

[33]    *Signet Corp. v. Interbank Financial Services, Inc.,* 755 F.Supp. 103, 105 (S.D.N.Y.1991)* (Eldelstein, J.) *quoting* *Austin Instrument, Inc. v. Loral Corp.,* 29 N.Y.2d 124, 130, 324 N.Y.S.2d 22, 25 (1971).

## CONCLUSION

Plaintiffs' request for the court to reconsider the judgment entered July 8, 2005 is DENIED. Plaintiffs' motion to dismiss Cootes Drive's counterclaims is DENIED. Both of plaintiffs' motions to supplement the record are DENIED. Cootes Drive's motions to strike the Carr Affidavit and First Tate Affidavit are DENIED. The Citco defendants' motion to strike the Second Tate Affidavit is GRANTED. Partial summary judgment in favor of Cootes Drive on its third and fourth counterclaims is GRANTED.

IT IS SO ORDERED

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 3370542

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:16-cv-00528-TJM-TWD   Document 59   Filed 08/02/18   Page 68 of 86
Freeman v. Lundrigan, Not Reported in F.Supp. (1996)
1996 WL 481534

1996 WL 481534
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Millicient FREEMAN, Plaintiff,

v.

Kevin LUNDRIGAN, C.O., Defendant.

No. 96–CV–1190 (RSP/RWS).
|
Aug. 22, 1996.

**Attorneys and Law Firms**

Millicient Freeman, Oriskany, NY, Pro se.

McLane and Smith, L.L.P., Utica, NY (Steven A. Smith, of counsel), for Defendant.

ORDER

POOLER, District Judge.

**\*1** By Order dated February 5, 1996 ("Order"), I approved the Order and Report–Recommendation of Magistrate Judge Ralph W. Smith, Jr., dated October 5, 1995, and dismissed this action as against Daniel Middaugh, Michael Durant, Todd Egger, Robert Stanton and Daryl Bourant. *See* Dkt. No. 11.

A copy of the Order was served on Freeman at her last known address by regular mail on February 6, 1996. On February 12, 1996, the Order was returned to the Court marked "No Longer at This Facility—Please Return to Sender." *See* Dkt. No. 12.

On June 19, 1996, Steven A. Smith, Esq., attorney for the defendant, filed an affidavit with the Court stating that he had attempted to serve a first set of interrogatories on Freeman at the address listed on the summons, and that it was returned to him by the Post Office marked "RTS" or return to sender. *See* Dkt. No. 14.

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute an action or comply with any order of the court. *Link v. Wabash Railroad County Independent School District,*

370 U.S. 626 (1962). This power to dismiss an action may be exercised when necessary to achieve orderly and expeditious disposition of cases. *See Rodriguez v. Walsh,* No. 92–Civ–3398, 1994 WL 9688, \*1 (S.D.N.Y. Jan. 14, 1994) (citations omitted).

Additionally, this Court specifically cautioned Freeman that her failure "to promptly notify the Clerk's Office of any change in her address ... [would] result in the dismissal of the instant action." *See* Dkt. No. 3 at 7.

Moreover, a plaintiff has the duty to inform the Court of any address changes. As I have stated:

> It is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions. It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail. In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries. Address changes normally would be reflected by those inquiries if made in writing.

*Dansby v. Albany Cty Corr. Facility,* No. 95–CV–1525, 1996 WL 172699, \*1 (N.D.N.Y. Apr. 10, 1996) (Pooler, J.) (quoting *Perkins v. King,* No. 84–3310, slip op. at 4 (5th Cir. May 19, 1985) (other citations omitted)); *see generally* Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York.

This matter cannot proceed without notification to the Court by Freeman of her current address. Therefore, it is hereby:

ORDERED, that this action is dismissed, *See* Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York, and it is further;

ORDERED, that the Clerk serve a copy of this Order on Freeman by regular mail at her last known address and on Steven A. Smith, Esq., attorney for the defendant.

1996 WL 481534

**\*2**  IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1996 WL 481534

---

**End of Document**                                            © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 686796
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Ryan S. McNAMEE, Plaintiff,
v.
SCHOHARIE COUNTY JAIL, Lt. James
Hazzard, CPL J. Cronk, Deputy Paul Marsh,
Jr., Deputy N. Alexander, Deputy Howland,
Deputy Hirst, Schoharie County Medical
Dept., Dr. Weitz, Dr. Belinger, Defendants.

No. 9:06-CV-1364 (LEK/GHL).
|
March 10, 2008.

**Attorneys and Law Firms**

Ryan S. McNamee, Wappingers Falls, NY, Plaintiff, pro
se.

O'Connor, O'Connor, Bresee & First, P.C., Justin O.
Corcoran, Esq ., of Counsel, Albany, NY, for Defendants
Weitz and Belanger.

### DECISION AND ORDER

LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a
Report-Recommendation filed on February 13, 2008, by
the Honorable George H. Lowe, United States Magistrate
Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3(c)
of the Northern District of New York. Report-Rec. (Dkt.
No. 32).

Within ten days, excluding weekends and holidays, after
a party has been served with a copy of a Magistrate
Judge's Report-Recommendation, the party "may serve
and file specific, written objections to the proposed
findings and recommendations," FED. R. CIV. P. 72(b),
in compliance with L.R. 72.1. No objections have been
raised in the allotted time with respect to Judge Lowe's
Report-Recommendation. Furthermore, after examining
the record, the Court has determined that the Report-
Recommendation is not subject to attack for plain error
or manifest injustice.

Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt. No.
32) is **APPROVED** and **ADOPTED** in its **ENTIRETY;**
and it is further

**ORDERED,** that Defendants Weitz and Belanger's
Motion to dismiss (Dkt. No. 16) is **GRANTED** and
Plaintiff's claims against them are **DISMISSED with
prejudice;** and it is further

**ORDERED,** that Plaintiff's remaining claims are *sua
sponte* **DISMISSED with prejudice** for failure to diligently
litigate; and it is further

**ORDERED,** that Case no. 9:06-CV-1364 be closed; and it
is further

**ORDERED,** that the Clerk serve a copy of this Order on
all parties.

**IT IS SO ORDERED.**

### REPORT-RECOMMENDATION

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, brought pursuant
to 42 U.S.C. § 1983, has been referred to me for Report
and Recommendation by the Honorable Lawrence E.
Kahn, Senior United States District Judge, pursuant to
28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local
Rules of Practice for this Court. Generally, the Amended
Complaint of Ryan S. McNamee ("Plaintiff") asserts
claims under the First and Eighth Amendments against
the Schoharie County

Jail, the County Medical Department, and nine employees
of the Jail arising from Plaintiff's incarceration at the Jail
between September of 2005 and November of 2006. (*See
generally* Dkt. No. 5 [Plf.'s Am. Compl.].) Among these
claims is a claim that, in September and October of 2006,
Defendants Zeev Weitz (a physician) and David Belanger
(a nurse)[1] violated Plaintiff's Eighth Amendment right to
adequate medical care by "abruptly" taking him off the
prescription drug Lexapro with "no valid explanation"

and merely "to save money," and by failing to cause him to be placed back on that drug. (*Id.* at 11-13.)

> While Plaintiff's Amended Complaint and the caption of this case refer to "Dr. Belinger," I note that defense counsel has stated that the correct spelling of this individual's name is "Belanger." (*See* Dkt. No. 16, Part 3, at 1 [Defs.' Mem. of Law].) Defense counsel has stated also that Defendant Belanger is a Nurse Practitioner, not a doctor, as Plaintiff alleges. (*Id.*)

Currently pending before the Court is a motion by Defendants Weitz and Belanger to dismiss Plaintiff's Eighth Amendment inadequate-medical-care claim against them for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 16.) Despite having been specifically advised of the consequences of failing to respond to Defendants Weitz and Belanger's motion, and having been *sua sponte* granted an extension of the deadline by which he had to so response, Plaintiff has failed to so respond. (Dkt. No. 30.)

**\*2** For the reasons stated below, I recommend that Defendants Weitz and Belanger's motion to dismiss Plaintiff's claim against them be granted. I also recommend that Plaintiff's deliberate-indifference claim against Defendant "Jane Doe # 1" be *sua sponte* dismissed with prejudice due to Plaintiff's failure to name or serve her and/or for his failure to state a claim against her upon which relief might be granted. I also recommend that Plaintiff's claims against Defendant Schoharie County Medical Department be *sua sponte* dismissed with prejudice due to Plaintiff's failure to serve that entity and/or his failure to diligently litigate his claims against that entity. Finally, I recommend that Plaintiff's claims against the remaining Defendants (i.e., Defendants Hazzard, Cronk, Marsh, Hirst, Alexander, Grippin, and Schoharie County Jail) be *sua sponte* dismissed with prejudice due to Plaintiff's failure to diligently litigate his claims against them, unless Plaintiff shows cause for this failure within ten (10) days of the date of this Report-Recommendation.

# I. RECENTLY CLARIFIED LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has

long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a) (2); [2] or (2) a challenge to the legal cognizability of the claim. [3]

[2] *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

[3] *See* *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ( "There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") (citation omitted); *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8 [a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") (citation omitted); *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at \*4-5, 2004 WL 2613993 (E.D.N.Y. Nov.

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-02 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7, 2002 WL 313156 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion-one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Such a statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[4] The purpose of this rule is to "facilitate a proper decision on the merits."[5] A complaint that fails to comply with this rule "presents far too heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[6]

[4]     *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) (quoting *Conley,* 355 U.S. at 47); *see also Swierkiewicz,* 534 U.S. at 512 (quoting *Conley,* 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (quoting *Conley,* 355 U.S. at 47).

[5]     *See Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48).

[6]     *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

The Supreme Court has long characterized this pleading requirement under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially

established pleading requirements that exceed this liberal requirement.[7] However, it is well established that even this liberal notice pleading standard "has its limits."[8] As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard.[9]

[7]     *See, e.g., Swierkiewicz,* 534 U.S. at 513-14 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

[8]     2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

[9]     *See, e.g., Bell Atlantic Corp. v. Twombly,* ---U.S. ----, ---- - ----, 127 S.Ct. 1955, 1964-74, 167 L.Ed.2d 929 (2007) (pleading did not meet Fed.R.Civ.P. 8[a][2]'s liberal requirement), *accord, Dura Pharmaceuticals,* 125 S.Ct. at 1634-1635, *Christopher v. Harbury,* 536 U.S. 403, 416-22, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-35 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Fed.R.Civ.P. 8[a] [2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Fed.R.Civ.P. 8(a) (2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to

state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." --- U.S. ----, ---- -----, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007).[10] Rather than turning on the conceivability of an actionable claim, the Court clarified, the Fed.R.Civ.P. 8 standard turns on the "plausibility" of an actionable claim. *Id. at 1965-74*. More specifically, the Court held that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.; accord, Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) ("[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."* ) [emphasis in original].

[10]   The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly,* 127 S.Ct. at 1969.

**\*3** Having said that, it should be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[11] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se."*[12] In other words, while all pleadings are to be construed liberally, *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality. Indeed, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[13]

[11]   *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) (citation omitted); *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

[12]   *Hernandez,* 18 F.3d at 136 (citation omitted); *see also Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) (citations omitted); *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) (citation omitted).

[13]   *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

Moreover, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[14] Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading.[15] Finally, "all normal rules of pleading are not absolutely suspended."[16] For example, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[17]

[14]   *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires"). Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading.

[15]   *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2, n. 14 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV1433, 2007 WL 201109, at *5, n. 34 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M .J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4, n. 30 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.,* 03-CV-0407, 2006 WL 2794415, at *5, n. 18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J., adopting

report-recommendation of Lowe, M.J.); *Williams v. Weaver,* 3-CV0912, 2006 WL 2799417, at *4, n. 16 (N.D.N.Y. Sept. 26, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

16     *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980) (citations omitted), *accord, Gil v. Vogilano,* 131 F.Supp.2d 486, 491 (S.D.N.Y.2001).

17     *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

## II. BACKGROUND

### A. Summary of Claims Asserted in Plaintiff's Amended Complaint

Liberally construed, Plaintiff's Amended Complaint sets forth the following claims:

(1) Between September of 2005 and November of 2006, Defendants Hazzard, Cronk, Marsh, Hirst, Alexander, and Grippin (and the Jail and the County Medical Department) violated Plaintiff's First Amendment rights by denying him access to the courts and interfering with his ability to practice his Catholic religion, and violated his Eighth Amendment rights by failing to protect him from an assault by a violent inmate, which occurred on November 7, 2005;

(2) During the days following November 7, 2005, Defendant "Jane Doe # 1," who was a physician at the Schoharie County Jail, violated Plaintiff's Eighth Amendment rights by "misdiagnos[ing] [Plaintiff's injury] and prescrib[ing] the wrong medication to [Plaintiff] for headaches that were occurring" as a result of a head injury he suffered during the referenced assault;

(3) On or about September 25, 2006, "with no valid explanation" but merely "to save money for the Schoharie County Jail," Defendant Weitz "abruptly" took Plaintiff off the prescription drug Lexapro (which he had been taking regularly since September 2005 for "anxiety, depression and uncontrollable rage attacks"), causing

Plaintiff to suffer "loss of sleep, disorientation, and illusions [sic]."; and

(4) During the early weeks of October 2006, after three requests to see medical staff about the discontinuation of his Lexapro medication, Plaintiff was finally seen by Defendant Belanger, who failed to discover why Plaintiff had been taken off Lexapro, failed to cause Plaintiff to be placed back on Lexapro, and callously stated that Plaintiff should not be experiencing the side effects he was claiming (although a year before Defendant Belanger had told Plaintiff that an "abrupt" discontinuation of the drug would be "dangerous"). (Dkt. No. 5 [Plf.'s Am. Compl.].)

### B. Defendants' Legal Arguments in Favor of Dismissal

**\*4** In their memorandum of law, Defendants Weitz and Belanger argue that Plaintiff's inadequate-medical-care claim against them should be dismissed for two reasons: (1) Plaintiff has failed to allege facts plausibly suggesting either that he suffered from a serious medical need for purposes of the Eighth Amendment during the time in question, or that Defendants Weitz and/or Belanger was deliberately indifferent to such a need; and (2) Plaintiff has failed to allege facts plausibly demonstrating that, before filing this action in federal court, he exhausted his administrative remedies with regard to his inadequate-medical-care claim against Defendants Weitz and Belanger. (Dkt. No. 16, Part 4, at 5-11 [Defs.' Mem. of Law].)

## III. ANALYSIS

### A. First Basis for Dismissal: Facial Merit of Defendants Weitz and Belanger's Unopposed Motion to Dismiss

Defendants Weitz and Belanger filed their motion to dismiss on May 15, 2007. (Dkt. No. 16.) In light of Plaintiff's special status as a *pro se* civil rights litigant, on August 14, 2007, the Court advised Plaintiff that, while he was not required to respond, Defendants Weitz and Belanger's motion could be granted if the Court determined that they had met their requisite burden, thereby resulting in their dismissal from Plaintiff's action. (Dkt. No. 30.) The Court also *sua sponte* granted Plaintiff an extension of time in which to respond to their motion, until September 13, 2007. (*Id.*) Still, Plaintiff did not respond to the motion.

"Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the nonmoving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause be shown." N.D.N.Y. L.R. 7.1(b)(3).

Here, Defendants Weitz and Belanger's motion to dismiss has been properly filed, Plaintiff has failed to oppose it (despite being warned of the possible consequences of that failure), and Plaintiff has failed to show good cause as to why his failure to oppose the motion should not be deemed as "consent" to the granting of the motion. Therefore, the sole issue remaining before the Court is whether Defendants have met their "burden to demonstrate entitlement to the relief requested" in their motion. N.D.N.Y. L.R. 7.1(b)(3).

As a practical matter, an inquiry into whether a movant has met its "burden to demonstrate entitlement" to dismissal under Local Rule 7.1(b)(3) is a more limited endeavor than a review of a contested motion to dismiss.[18] Specifically, on an uncontested motion to dismiss, the movant's burden of persuasion is lightened such that, in order to succeed, his motion need only be "facially meritorious."[19] A movant's burden in making legal arguments that are facially meritorious has appropriately been characterized as "modest."[20]

[18]　*See, e.g., Hernandez v. Nash,* 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at *7-8, 2003 WL 22143709 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before an unopposed motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious*" ) [emphasis added; citations omitted]; *Race Safe Sys. v. Indy Racing League,* 251 F.Supp.2d 1106, 1109-10 (N.D.N.Y.2003) (Munson, J.) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3] ); *see also Wilmer v. Torian,* 96-CV-1269, 1997 WL 640982, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers), *adopted by* 1997 U.S. Dist. LEXIS 16340, at *2, 1997 WL 640982 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord, Carter v. Superintendent Montello,* 95-CV-0989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F.Supp. 595 (N.D.N.Y.1996) (Pooler, J.).

[19]　*See, e.g., Hernandez,* 2003 U.S. Dist. LEXIS 1625, at *8, 2003 WL 22143709; *accord, Topliff v. Wal-Mart Stores East LP,* 04-CV-0297, 2007 U.S. Dist. LEXIS 20533, at *28 & n. 43, 2007 WL 911891 (N.D.N.Y. March 22, 2007) (Lowe, M.J.); *Hynes v. Kirkpatrick,* 05-CV-0380, 2007 U.S. Dist. LEXIS 24356, at *5-6 & n. 2, 2007 WL 894375 (N.D.N.Y. March 21, 2007) (Lowe, M.J.); *Sledge v. Kooi,* 04-CV-1311, 2007 U.S. Dist. LEXIS 26583, at *28-29 & n. 40, 2007 WL 951447 (N.D.N.Y. Feb. 12, 2007) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 22458, 2007 WL 969576 (N.D.N.Y. March 28, 2007) (McAvoy, J.); *Kele v. Pelkey,* 03-CV-0170, 2006 U.S. Dist. LEXIS 95065, at *5 & n. 2, 2006 WL 3940592 (N.D.N.Y. Dec. 19, 2006) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 4336, 2007 WL 189021 (N.D.N.Y. Jan. 22, 2007) (Kahn, J.).

[20]　*See, e.g., Ciaprazi v. Goord,* 02-CV0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec.22, 2005) (Sharpe, J.; Peebles, M.J.) (characterizing defendants' threshold burden on a motion for summary judgment as "modest") [citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ]; *accord, Saunders v. Ricks,* 03-CV-0598, 2006 WL 3051792, at *9 & n. 60 (N.D.N.Y. Oct.18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.), *Smith v. Woods,* 03-CV-0480, 2006 WL 1133247, at *17 & n. 109 (N.D.N.Y. Apr.24, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.).

**\*5** After carefully reviewing Plaintiff's Amended Complaint, and Defendants Weitz and Belanger's memorandum of law in support of their motion to dismiss, I find that Defendant Weitz and Belanger have met their lightened burden on their unopposed motion, for the reasons stated in their memorandum of law. (*Compare* Dkt. No. 5 [Plf.'s Am. Compl.] *with* Dkt. No. 16, Part 3, at 1-11 [Defs.' Mem. of Law].)

For these reasons, I recommend that the Court grant Defendants Weitz and Belanger's motion to dismiss. Because adequate reason exists to grant Defendants Weitz and Belanger's unopposed motion, the Court need proceed no further in its analysis of Plaintiff's Amended Complaint. However, in the interest of thoroughness,

and toward the end of describing an *alternative basis* for dismissal of Plaintiff's claims against Defendants Weitz and Belanger, I will subject their motion to the more rigorous scrutiny appropriate for a contested motion to dismiss.

### B. Alternative Basis for Dismissal: Substantive Merit of Defendants Weitz and Belanger's Motion to Dismiss

### 1. Failure by Plaintiff to Allege Facts Plausibly Suggesting that Defendants Were Deliberately Indifferent to a Serious Medical Need

A prisoner's allegation of deliberate indifference to a serious medical need arises under the Eighth Amendment when the alleged deliberate indifference occurred while prisoner was incarcerated on a sentence of conviction, and under the Fifth Amendment when the alleged deliberate indifference occurred while prisoner was detained awaiting trial. *Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Cir.2000). Under either constitutional amendment, the legal standard (for a deliberate indifference claim) is the same. *Cuoco,* 222 F.3d at 106.

Generally, to state a claim for inadequate medical care under the United States Constitution, a plaintiff must allege facts plausibly suggesting two things: (1) that he had a sufficiently serious medical need; and (2) that the defendants were deliberately indifferent to that serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).

### a. Whether Plaintiff Had a Sufficiently Serious Medical Need

To be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) [citations omitted], *accord, Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1996), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995); *Chance,* 143 F.3d at 702.

Here, Plaintiff alleges that, during the time in question, he suffered from "mental health problems," specifically, "anxiety, depression and uncontrollable rage attacks." (Dkt. No. 5, at 13 [Plf.'s Am. Compl.].) Conspicuously absent from Plaintiff's Amended Complaint (which is otherwise very lengthy and detailed) is any allegation that, during the time in question, he suffered from panic attacks or that he had attempted (or even contemplated) suicide.

**\*6** After reviewing the relevant case law, I am unable to find that Plaintiff has alleged facts plausibly suggesting a serious medical need under the Eighth Amendment. *See Doty v. County of Lassen,* 37 F.3d 540, 546 (9th Cir.1994) (depression, headaches, nausea and shakes not serious medical needs); *Jones v. Tammany Parish Sheriff,* 06-CV-2875, 2007 U.S. Dist. LEXIS 18816, at *27-28, 2007 WL 647299 (E.D.La. Feb. 1, 2007) ("While some courts have characterized mental illnesses as a 'serious medical need' for purposes of constitutional analysis in Section 1983 claims by detainees, they have generally done so in circumstances in which the plaintiff also exhibited seriously harmful or severe symptoms or other ailments in combination with a mental illness sufficient to render plaintiff's overall condition serious.") [collecting cases]; *White v. Ghost,* 456 F.Supp.2d 1096, 1102-03 (D. Dakota 2006) (bare allegations of "depression" and "suicide" not sufficiently serious, but allegation of two *attempted* suicides sufficiently serious).

### b. Whether Defendants Weitz and/or Belanger Were Deliberately Indifferent to any Serious Medical Need

In any event, even if I were to assume, for the sake of argument, that Plaintiff has alleged facts plausibly suggesting that (during the time in question) he suffered from a serious medical need, I would find that he has not alleged facts plausibly suggesting that either Defendant Weitz or Belanger possessed a sufficient state of mind during the time in question to make him *deliberately indifferent* to that need.

An official is "deliberately indifferent" to a serious medical need when he " 'knows of and disregards an excessive risk to inmate health or safety.' "[21] " '[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' "[22] What this means, as a practical matter, is that "deliberate indifference describes a state of mind more blameworthy than negligence,"[23] one that is "equivalent to criminal recklessness."[24]

21  *Johnson v. Wright,* 412 F.3d 398, 403 (2d Cir.2005) (citing *Farmer v. Brennan,* 511 U.S. 825, 837 [1994] ).

22  *Johnson,* 412 F.3d at 403 (citing *Farmer,* 511 U.S. at 837).

23  *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo,* 94-CV1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr.9, 1998) (Pooler, J.) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.... Disagreement with prescribed treatment does not rise to the level of a constitutional claim.... Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate.... Thus, claims of malpractice or disagreement with treatment are not actionable under *section 1983.*") [citations omitted].").

24  *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness ....") [citation omitted]; *cf. Farmer,* 511 U.S. at 827 ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for 'deliberate indifference' under the Eighth Amendment.").

There is no such criminal recklessness alleged in Plaintiff's Amended Complaint. (See Dkt. No. 5, at 10-13 [Plf.'s

Am. Compl.].) Plaintiff alleges facts plausibly suggesting that, for some if not all of the relevant time period, both Defendants Weitz and Belanger were acting under the *mistaken* belief that, during the weeks before Plaintiff had been taken off of Lexapro, he had not been taking the drug. (*Id.* at 12.) Moreover, Plaintiff does not even conclusorily allege that Defendant Weitz was aware of the withdrawal symptoms that Plaintiff was allegedly experiencing. (*Id.* at 11-13.) At most, there might be a *hint* of negligence alleged. However, negligence is not sufficient to state a claim for deliberate indifference. Nor is a disagreement over a treatment decision-which is what Plaintiff is essentially alleging. *See Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001) ("[D]isagreements [between a prisoner and prison officials] over medications ... are not adequate grounds for a section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment.") [citation omitted]. As the Second Circuit once observed:

> **\*7** It must be remembered that the State is not constitutionally obligated, much as it may be desired by inmates, to construct a perfect plan for [medical] care that exceeds what the average reasonable person would expect or avail herself of in life outside the prison walls. [A] correctional facility is not a health spa, but a prison in which convicted felons are incarcerated. Common experience indicates that the great majority of prisoners would not in freedom or on parole enjoy the excellence in [medical] care which plaintiff [ ] understandably seeks.... We are governed by the principle that the objective is not to impose upon a state prison a model system of [medical] care beyond average needs but to provide the minimum level of [medical] care required by the Constitution.... The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves.... The essential test is one of medical

necessity and not one simply of desirability.

*Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986) [internal quotations and citations omitted].

For the above reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's claims against Defendants Weitz and Belanger due to Plaintiff's failure to allege facts plausibly suggesting that either Defendants Weitz or Belanger was deliberately indifferent to any serious medical need possessed by Plaintiff.

**2. Whether Plaintiff Failed to Exhaust Administrative Remedies**

In the alternative, Defendants Weitz and Belanger argue that Plaintiff's claim against them should be dismissed because Plaintiff's Amended Complaint "contains no allegation that plaintiff ever complained administratively about the same medical decisions by Dr. Weitz and Mr. Belanger about which plaintiff complains at pages 11 through 13 of his complaint." (Dkt. No. 16, Part 3, at 10 [Defs.' Mem. of Law].)

Although I agree with the main thrust of this argument (i.e., that Plaintiff's claim against Defendants Weitz and Belanger should be dismissed due to Plaintiff's failure to exhaust his available administrative remedies), I disagree somewhat with Defendant Weitz and Belanger's reasoning.

For some years now, it has been the majority rule (followed by the Second Circuit) that a prisoner's fulfillment of his duty to exhaust his available administrative remedies under the Prison Litigation Reform Act ("PLRA") is not a fact that the prisoner had to plead in order to state a claim under 42 U.S.C. § 1983 but a fact that may be challenged by a defendant through an affirmative defense (such as on a motion for summary judgment pursuant to Fed.R.Civ.P. 56, or a motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed.R.Civ.P. 12[b][1] ) established by the PLRA. *See, e.g., Jenkins v. Haubert,* 179 F.3d 19, 28-29 (2d Cir.1999) ("Because, under the PLRA, a prisoner must exhaust administrative remedies before filing a § 1983 suit ..., a defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements."); *Snider v. Melindez,* 199 F.3d 108, 114 (2d Cir.1999) ("A court may not dismiss

for failure to exhaust administrative remedies unless the court determines that such remedies are available. Snider's answers [on a form complaint] cannot establish that.").

**\*8** Recently, the Supreme Court upheld this interpretation of the exhaustion requirement, prohibiting circuits (such as the Sixth, Tenth and Eleventh Circuits) from using exhaustion as a heightened pleading requirement in prisoner civil rights case. *See Jones v. Block,* 549 U.S. 199, ---- - ----, ---- - ----, 127 S.Ct. 910, 914-915, 918-923, 166 L.Ed.2d 798 (2007). A prisoner has no independent *duty* to plead facts plausibly suggesting that he exhausted his available administrative remedies, in order to state an actionable claim under 42 U.S.C. § 1983. *Block,* 127 S.Ct. at 919-21. "[T]his is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Id.* at 921. If a prisoner *chooses* to plead facts regarding exhaustion, and those facts plausibly suggest that he failed to exhaust his available administrative remedies, then his Complaint may be dismissed for failure to state a claim. *Id.* at 920-21. Simply stated, if a prisoner says nothing or little about exhaustion in his *pro se* civil rights complaint, he is likely protected from a Fed.R.Civ.P. 12(b)(6) motion to dismiss premised on failure to exhaust. However, if he says too much about exhaustion in that complaint so that his non-exhaustion is readily apparent, he may "plead himself out of court," as the saying goes.

This is what has happened here. Addressing the exhaustion requirement in his Amended Complaint, Plaintiff alleges as follows:

> The plaintiff Mr. McNamee (# 21562) believes the exhaustion rule is not inflexible and *need not be followed* when the facility has previously been challenged by other inmates. Challenges have been made with grievances and determinations have been made that to resort [t]o administrative remedies would be obviously futile and pursuit would cause irreparable injuries. The County Defendants take advantage of not answering grievances and delaying them for the sole purpose of causing harm to plaintiffs.

(Dkt. No. 5, at 7 [Plf.'s Am. Compl.] [emphasis added].) Through this allegation, Plaintiff has effectively acknowledged that the Schoharie Jail had a grievance procedure during the time in question, and that he knowingly did not pursue that grievance procedure.

Granted, Plaintiff appears to attempt to invoke the "unavailability," "estoppel," and "special circumstances" exceptions to the exhaustion rule. More specifically, Plaintiff appears to rely on the three-part inquiry that the Second Circuit has held is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA.[25] *First,* "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner."[26] *Second,* if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."[27] *Third,* if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements."[28]

[25]   See *Hemphill v. State of New York,* 380 F.3d 680, 686, 691 (2d Cir.2004).

[26]   *Hemphill,* 380 F.3d at 686 (citation omitted).

[27]   *Id.* [citations omitted].

[28]   *Id.* [citations and internal quotations omitted].

**\*9** However, Plaintiff provides absolutely no factual allegations supporting his conclusory allegation that he "need not ... follow[ ]" the exhaustion procedure since (1) unidentified courts or administrative bodies have accepted the argument of "other inmates" that their pursuit of their administrative remedies would have been futile, and (2) "[t]he County Defendants take advantage of not answering grievances and delaying them for the sole purpose of causing harm to plaintiffs." (*See generally*

Dkt. No. 5 [Plf .'s Am. Compl.].) For example, Plaintiff does not allege that any court or administrative body has ruled that *Plaintiff's* administrative remedies have ever been unavailable at *the Schoharie County Jail.* Nor does Plaintiff allege that either Defendant Weitz or Defendant Belanger in any way frustrated Plaintiff's ability to administratively grieve his claim against them. The closes he comes is when he alleges that his "litigation" has been "injure[d]" by the refusal of the County "Medical Department" to release to him his medical records supporting his claim against Defendant "Jane Doe # 1." (*Id.* at 11.) Such an allegation in no way supports Plaintiff's conclusory allegation that he did not have to exhaust his administrative remedies before filing his claim against *Defendants Weitz and Belanger.*

For the above reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's claims against Defendants Weitz and Belanger due to Plaintiff's having alleged facts demonstrating that, before filing this action in federal court, he failed to exhaust his administrative remedies with regard to his inadequate-medical-care claim against Defendants Weitz and Belanger.

### C. Failure to Name or Serve, and/or Failure to State Claim Against, Defendant "Jane Doe # 1"

Plaintiff had a duty to diligently litigate his deliberate-indifference claim against Defendant "Jane Doe # 1," including a specific duty to identify, name and serve her. *See* Fed.R.Civ.P. 41(b); N.D.N.Y. L.R. 41.2(a); Fed.R.Civ.P. 4(m); Fed.R.Civ.P. 16(e),(f). (*See also* Dkt. No. 6, at 2-4 [Order of Judge Kahn, filed 1/22/07, advising Plf. that "the U.S. Marshals cannot effect service on a 'Jane Doe' defendant," and that "if this individual is not timely served, this action will be dismissed as against her," and directing Plf. to "take reasonable steps to ascertain her identity" and "file a Motion to amend his Complaint and add such individual[ ], by name, as [a] defendant[ ] to this lawsuit"].) Plaintiff has failed to fulfill that duty, and has not shown good cause excusing that failure.

Furthermore, using the well-known five-part balancing test appropriate for a failure-to-prosecute analysis,[29] I find that this failure to name and serve has persisted for more than a year; Plaintiff has had specific notice of the failure and the consequences of the failure; the individual designated as "Jane Doe # 1" (whomever she may be) has been prejudiced by the failure; and no

sanction less drastic than dismissal would be appropriate. Under the circumstances, I find that Plaintiff's deliberate-indifference claim against "Jane Doe" should be dismissed under a variety of authorities. [30]

[29]    In the Second Circuit, courts consider five factors (none of which is dispositive) when deciding whether or not to dismiss an action for failure to prosecute: "[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard and [5] whether the judge has adequately assessed the efficacy of lesser sanctions." *Shannon v. GE Co.,* 186 F.3d 186, 193 (2d Cir.1999) (affirming Fed.R.Civ.P. 41[b] dismissal of plaintiff's claims by U.S. District Court for Northern District of New York based on plaintiff's failure to prosecute the action) [citations omitted].

[30]    I note that the Court need not issue such an order only upon motion of defense counsel but may do so *sua sponte. See* Fed. R. Civ. 4(m) ("[T]he Court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time."); Fed. R. Civ. 16(f) ("[T]he judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just...."). Furthermore, with regard to Fed.R.Civ.P. 41(b), which speaks only of a *motion* to dismiss on the referenced grounds, courts retain the "inherent power" to *sua sponte* "clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *see also Saylor v. Bastedo,* 623 F.2d 230, 238 (2d Cir.1980); *Theilmann v. Rutland Hospital, Inc.,* 455 F.2d 853, 855 (2d Cir.1972). Indeed, Local Rule 41.2(a) recognizes this authority. *See* N.D.N.Y. L.R. 41.2(a) ("Whenever it appears that the plaintiff has failed to prosecute an action or proceeding diligently, the assigned judge *shall* order it dismissed.") [emphasis added].

**\*10** However, even if the Court were to overlook Plaintiff's failure to name and serve Defendant "Jane Doe # 1," and to review the pleading sufficiency of Plaintiff's deliberate-indifference claim against her, the Court would find that Plaintiff's factual allegations against her do

not state a claim upon which relief maybe granted. [31] Liberally construed, Plaintiff's Amended Complaint alleges that, during the days following November 7, 2005, Defendant "Jane Doe # 1," who was a physician at the Schoharie County Jail, violated Plaintiff's Eighth Amendment rights by "misdiagnos[ing] [Plaintiff's injury] and prescrib[ing] the wrong medication to [Plaintiff] for headaches that were occurring" as a result of "a head injury" that he suffered during the November 7, 2005, assault. (Dkt. No. 5, at 11 [Plf.'s Am. Compl.].) For the sake of argument, I will assume that the vague "head injury" that Plaintiff suffered during the referenced assault constituted a *sufficiently serious medical need* for purposes of the Eighth Amendment. In any event, the alleged errors that Defendant Jane Doe # 1 committed during the days following that injury constitute, at most, *negligence,* not the sort of *criminal recklessness* that is required to state a claim under the Eighth Amendment. (*See, supra,* Part III.B. 1.b. of this Report-Recommendation.)

[31]    I note that the Court is authorized to conduct such an analysis of the pleading sufficiency of Plaintiff's claims pursuant 28 U.S.C. § 1915(e)(2)(B)(ii) and/or 28 U.S.C. § 1915A(b).

For all of these reasons, I recommend that the Court *sua sponte* dismiss Plaintiff's deliberate indifference claim against Defendant "Jane Doe # 1" due to Plaintiff's failure to name or serve her, and/or his failure to state a claim against her upon which relief may be granted.

### D. Failure to Serve Defendant Schoharie County Medical Department

As indicated above in Part III.C. of this Report-Recommendation, Plaintiff had a duty to diligently litigate his claims against Defendant Schoharie County Medical Department (if there exists such an entity), including a specific duty to serve that entity. *See* Fed.R.Civ.P. 41(b); N.D.N.Y. L.R. 41.2(a); Fed.R.Civ.P. 4(m); Fed.R.Civ.P. 16(e),(f). (*See also* Dkt. No. 8, at [Order of Magistrate Judge Lowe, filed 3/5/07, directing that Plf. "must comply with the requests by the Clerk's Office for any documents [including accurate USM 285 Forms] that are necessary to maintain this action."].) [32] Plaintiff has failed to fulfill that duty. (*See* Dkt. No. 27 [Summons Returned Unexecuted as to Schoharie County Medical Dept., filed 5/23/07].) Furthermore, he has not shown good cause excusing that failure.

32    To the extent Plaintiff misnamed this entity, he had a duty to discover and correct that error. (*See* Dkt. No. 6, at 4 [Order of Judge Kahn, filed 1/22/07, advising Plf. that he shall "take reasonable steps to ascertain the identities of any other individual(s) that purportedly violated plaintiff's civil and/or constitutional rights and, if appropriate, file a Motion to amend his Complaint and add such individual [ ], by name, as [a] defendant[ ] to this lawsuit"].)

Finally, using the balancing test appropriate for a failure-to-prosecute analysis, I find that this failure to name and serve has persisted for approximately nine months; Plaintiff has had specific notice of the failure and the consequences of the failure; the entity designated as "The Schoharie County Medical Department" (whichever entity that may be) has been prejudiced by the failure; and no sanction less drastic than dismissal would be appropriate. Under the circumstances, I find that Plaintiff's claims against Defendant Schoharie County Medical Department should be dismissed under a variety of authorities. (*See, supra,* note 30 of this Report-Recommendation.)

 **\*11**  For these reasons, I recommend that the Court *sua sponte* dismiss Plaintiff's claims against Defendant Schoharie County Medical Department due to Plaintiff's failure to serve, and/or his failure to diligently litigate his claims against, that entity.

### E. Failure to Prosecute Claims Against Remaining Defendants

As indicated above in Part III.C. of this Report-Recommendation, Plaintiff had a duty to diligently litigate his claims against the remaining Defendants (i.e., Defendants Hazzard, Cronk, Marsh, Hirst, Alexander, Grippin, and Schoharie County Jail). *See* Fed.R.Civ.P. 41(b); N.D.N.Y. L.R. 41.2(a); Fed.R.Civ.P. 4(m); Fed.R.Civ.P. 16(e),(f).

Using the balancing test appropriate for a failure-to-prosecute analysis, I find that Plaintiff has failed to diligently prosecute this action for approximately eight months, i.e., since about *June 4, 2007.* I reach this conclusion for two reasons. First, June 4, 2007, was the original deadline for Plaintiff's papers in response to Defendants Weitz and Belanger's motion to dismiss. Since that date, the Court has delayed deciding the motion to dismiss, in large part, out of special solicitude to Plaintiff, to permit him an adequate opportunity to respond. I note

that Local Rule 7.1(b)(3) gives a non-movant a duty to promptly notify the Court when he intends to not respond to a motion, and makes the failure to fulfill such a duty punishable by the imposition of sanctions. N.D.N.Y. L.R. 7.1(b)(3). Plaintiff has failed to provide such notice to the Court. Second, Local Rule 41.2(a) of the Local Rules of Practice for this Court provides that "[i]n the absence of an order by the assigned judge or magistrate judge setting any date for any pretrial proceeding or for trial, the plaintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution ." N.D.N.Y. L.R. 41.2(a). As of June 4, 2007, the last time that Plaintiff had taken any action in this matter was about four months before, i.e., on February 2, 2007. (Dkt. No. 7 [Plf.'s IFP App., filed 2/2/07].)

Furthermore, I find that Plaintiff has had adequate notice of his failure to prosecute and the consequences of the failure, due to (1) Local Rules 7.1(b)(3) and 41.2(a) of the Local Rules of Practice for this Court, which were available at Plaintiff's correctional facility when he signed his Complaint in this action in August of 2006, and (2) the several Orders that have been filed in this action reminding Plaintiff, in part, of his various litigation duties. (*See* Dkt. Nos. 4, 6, 8, 30, 31.)

Moreover, I find that the remaining Defendants have been prejudiced by Plaintiff's failure to prosecute, and will continue to be prejudiced by a further failure to prosecute. Further delay by Plaintiff may very well result in the fading of memories, the discarding of relevant documents, and the retirement or transfer of witnesses. [33]

33    *See, e.g., Geordiadis v. First Boston Corp.,* 167 F.R.D. 24, 25 (S.D.N.Y.1996) ("The passage of time always threatens difficulty as memories fade. Given the age of this case, that problem probably is severe already. The additional delay that plaintiff has caused here can only make matters worse.").

Additionally, I find that the need to alleviate congestion on the Court's docket outweighs Plaintiff's right to receive a further chance to be heard in this action. It is cases like this one that delay the resolution of other cases, and that contribute to the Second Circuit's dubious distinction as having (among the twelve circuits, including the D.C. Circuit) the longest median time to disposition for prisoner civil rights cases, between 2000 and 2005 (9.8 months, as compared to a national average of 5.7 months). Simply stated, I am unable to afford Plaintiff with further

Case 9:16-cv-00528-TJM-TWD   Document 59   Filed 08/02/18   Page 82 of 86
McNamee v. Schoharie County Jail, Not Reported in F.Supp.2d (2008)
2008 WL 686796

special solicitude without impermissibly burdening the Court and unfairly tipping the scales of justice against the remaining Defendants.

 **\*12**  Finally, I have considered all less-drastic sanctions and rejected them, in part because they would be futile under the circumstances (e.g., an Order warning or chastising Plaintiff would likely fall upon deaf ears, as did the Court's extension Order of August 14, 2007, due to Plaintiff's apparent intent to abandon pursuit of his claims in this action). (*See* Dkt. No. 30 [Order filed 8/14/07].)

For these reasons, I recommend that the Court dismiss Plaintiff's claims against the remaining Defendants (i.e., Defendants Hazzard, Cronk, Marsh, Hirst, Alexander, Grippin, and Schoharie County Jail) due to Plaintiff's failure to diligently litigate his claims against them, unless Plaintiff shows cause for this failure within ten (10) days of the date of this Report-Recommendation.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants Weitz and Belanger's motion to dismiss for failure to state a claim (Dkt. No. 16) be *GRANTED,* and that Plaintiff's claim of inadequate medical care by Defendants Weitz and Belanger, set forth in Count Three of Plaintiff's Amended Complaint (Dkt. No. 5), be *DISMISSED* **with prejudice** for failure to state a claim; and it is further

**RECOMMENDED** that Plaintiff's claim of inadequate medical care by Defendant "Jane Doe # 1," set forth in Count Three of Plaintiff's Amended Complaint (Dkt.

No. 5), be *sua sponte* *DISMISSED* **with prejudice** due to Plaintiff's failure to name or serve her, or, in the alternative, due to his failure to state a claim upon which relief might be granted; and it is further

**RECOMMENDED** that Plaintiff's claims against Defendant Schoharie County Medical Department be *sua sponte* *DISMISSED* **with prejudice** due to Plaintiff's failure to serve that entity and/or his failure to diligently litigate his claims against that entity; and it is further

**RECOMMENDED** that Plaintiff's claims against the remaining Defendants (i.e., Defendants Hazzard, Cronk, Marsh, Hirst, Alexander, Grippin, and Schoharie County Jail) be *sua sponte* *DISMISSED* **with prejudice** due to Plaintiff's failure to diligently litigate his claims against them, unless Plaintiff shows cause for this failure within **TEN (10) DAYS** of the date of this Report-Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Svcs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b); Fed.R.Civ.P. 6(a), 6(e), 72.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 686796

---

**End of Document**          © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 1275621
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Oscar Garcia and Gloria Arocho, Plaintiffs,

v.

The City of New York, The New York City
Police Department, Police Officers Michael
Demonda, Louis Stephenson, Nicole Perl,
and Sgt. Nathan Mole of the 75 Th Precinct,
and Other Officers Whose Identities are
Unkown at this Time all Member of the
NYPD, and Ruben Mijares, Defendants.

14-CV-4160 (NGG) (LB)
|
Signed 03/31/2016

**Attorneys and Law Firms**

Andres Manuel Aranda, Andres M. Aranda, Esq., Bronx,
NY, for Plaintiffs.

Peter John Fogarty, New York City Law Department,
New York, NY, for Defendants.

## MEMORANDUM & ORDER

NICHOLAS G. GARAUFIS, United States District
Judge

**\*1** Before the court is the City of New York's (the
"City") motion to dismiss the Complaint for failure to
prosecute. [1] For the reasons stated below, Defendant's
motion is GRANTED with prejudice. Further, the court
sua sponte DISMISSES the Complaint against all other
Defendants with prejudice.

---

[1]     Due to Plaintiffs' failure to properly serve process, the
        City is the only Defendant to appear thus far.

## I. BACKGROUND
On July 7, 2014, Plaintiffs filed their Complaint, but they
did not file any proposed summonses. (See Compl. (Dkt.
1).) Two weeks later, on July 21, 2014, Plaintiffs served a
document entitled "Summons & Complaint" on the City

at the New York City Law Department; however, no
summons was attached to the document. (Decl. of Peter
J. Fogarty in Supp. of Def.'s Mot. to Dismiss ("Fogarty
Decl.") (Dkt. 22) ¶ 4.) The next day, Plaintiffs' counsel
filed affidavits of service as to Police Officers Louis
Stephenson and Nicole Perl; however, neither summons
bore the court's seal or was signed by the Clerk of Court.
(Aff. of Service (Dkts. 3, 4); see also Fogarty Decl. ¶ 11.)
Plaintiffs aver that they mailed a copy of the Complaint
to Sergeant Mole, Officer Demonda, and Ruben Mijeres
on July 28, 2014 (Aff. of Eliana Sanchez in Opp'n to Mot.
to Dismiss ("Sanchez Aff.") (Dkt. 20-4) at 1); however,
the public docket does not reflect that Mole, Demonda, or
Mijeres were ever served.

On October 21, 2014, the City's counsel emailed Plaintiffs'
counsel to inform him that no Defendant had been
properly served with a summons. (Fogarty Decl. ¶ 8.)
Plaintiffs' counsel responded that he would presently file
proof of service. (Id.) However, no proof of service was
filed. Three days later, on October 24, 2014, the City's
counsel again emailed Plaintiffs' counsel regarding service.
(Id. ¶ 9.) This time, Plaintiffs' counsel responded that
his "person in charge of service" would call the City's
counsel to determine what the problems with service were.
(Id.) Despite Plaintiffs' counsel's assurances, no such call
occurred.

On November 6, 2014, the City filed a letter seeking a pre-
motion conference. (Nov. 6, 2014, Ltr-Mot. (Dkt. 8).) The
City noted the deficiencies in Plaintiffs' attempted service.
Specifically, the City indicated that (1) "[a] further review
of the summons and complaint that was purportedly
served on the City ... on July 21, 2014, revealed that, in
fact, no summons was served on the City ... "; (2) "[a]n
additional review of the summonses purportedly served on
defendants Nicole Perl and Louis Stephenson shows they
were neither signed by the Clerk of the Court nor bear the
Court's seal as is required by Fed. R. Civ. P. 4(a)(1)(F) and
(a)(1)(G)"; and (3) "there is no adequate proof of service
on Police Officer Michael Demonda or Sergeant Nathan
Mole on the docket sheet, an issue which was raised in
both of defendant City's requests for an enlargement of
time to respond to plaintiffs' complaint." (Id. at 2.) On
March 16, 2015, Defendants filed a fully briefed motion
to dismiss, arguing that Plaintiffs had failed to properly
effect service within the time limits set out in the Federal
Rules of Civil Procedure. (Not. of Mot. to Dismiss (Dkt.
19).)

**\*2** On May 18, 2015, Plaintiffs' counsel, Andres Manuel Aranda, was reciprocally suspended from practice before this court following his suspension from practice before the Court of Appeals for the Second Circuit. See In re Andres Manuel Aranda, No. 06-MC-303 (BMC) (E.D.N.Y. May 18, 2015).

Consequently, on January 11, 2016, the court ordered Mr. Aranda to inform Plaintiffs that he can no longer represent them and ordered Plaintiffs, within 30 days, to inform the court whether they wished to secure new counsel, proceed pro se, or discontinue the case. (See Jan. 11, 2016, Order (Dkt. 26).) The January 11, 2016, Order was sent to Mr. Aranda both electronically and by mail and was mailed to Plaintiffs' last known addresses. (Id.) Neither Mr. Aranda nor Plaintiffs have responded in any way to the court's order and their time to do so has now passed.

On March 1, 2016, the City moved to dismiss the case for failure to prosecute. (Ltr.-Mot. to Dismiss (Dkt. 28).) Plaintiffs have not responded in any way.

**II. LEGAL STANDARD**

"If the plaintiff fails to prosecute ... a defendant may move to dismiss the action. Fed. R. Civ. P. 41. However, "dismissal is 'a harsh remedy to be utilized only in extreme situations.'" Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993) (quoting Gibbs v. Hawaiian Eugenia Corp., 996 F.2d 101, 109 (2d Cir. 1992)).

In deciding whether to dismiss a case for failure to prosecute, the Second Circuit has instructed district courts to consider whether: "(1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions." U.S. ex rel. Drake v. Norden Sys., Inc., 375 F.3d 248, 254 (2d Cir. 2004).

"In analyzing the factors, the court reviews the record as a whole." Caussade v. United States, 293 F.R.D. 625, 629 (S.D.N.Y. 2013) (alteration omitted) (quoting Toliver v. Comm'r of N.Y.C. D.O.C., No. 10-CV-5805

(DLC), 2011 WL 5242643, at *3 (S.D.N.Y. Nov. 3, 2011)). Accordingly, "no one factor is dispositive." Lewis v. Rawson, 564 F.3d 569, 576 (2d Cir. 2009) (quoting Drake, 375 F.3d at 254).

**III. DISCUSSION**

**A. Plaintiffs' Failure Caused a Significant Delay**
The first factor asks whether Plaintiffs are at fault for causing a significant delay. "The first factor ... breaks down into two parts: (1) whether the failures to prosecute were those of the plaintiff, and (2) whether these failures were of significant duration." Drake, 375 F.3d at 255.

With regard to the first element. Plaintiffs have failed to respond in any way to the court's January 11, 2016, Order. This failure is plainly attributable to Plaintiffs. Moreover, even if Plaintiffs were to argue that their counsel, Mr. Aranda, was responsible for the failure to respond, "apportionment of blame between counsel and client, ... is best considered when [the court gets] to the fifth factor." Id. Instead, at this stage, the court need only ask "whether or not the delay was caused by plaintiff's side as a whole." Id. The court has no trouble concluding that the delay was caused by Plaintiffs' side as a whole.

**\*3** With regard to the second element, "[t]here is no fixed period of time that must elapse before a plaintiff's failure to prosecute becomes substantial enough to warrant dismissal." Caussade, 293 F.R.D. at 629. Nonetheless, "[d]elays of several months have been found to warrant dismissal." Id. Here, Plaintiffs have completely failed to respond to the court's January 11, 2016, Order, which has already delayed adjudication of Plaintiffs' claims by several months. This delay weighs heavily in favor of dismissal.

Moreover, the court is reluctant to view Plaintiffs' failure to prosecute as simply failing to respond to the January 11, 2016, Order. Throughout the case, Plaintiffs have failed to carry out even the most basic tasks associated with prosecuting the case. (See Fogarty Decl. (outlining Plaintiffs repeated failures to serve process); Pls.' Resp. to Mot. to Dismiss (Dkt. 20) at 3-4 (acknowledging that Plaintiffs failed to properly serve process).) Accordingly, the court finds that Plaintiffs have substantially delayed the adjudication of this case.

Garcia v. City of New York, Not Reported in F.Supp.3d (2016)
Case 9:16-cv-00528-TJM-TWD    Document 59    Filed 08/02/18    Page 85 of 86

2016 WL 1275621

In any event, even if the court only considered Plaintiffs' failure to respond to the January 11, 2016, Order standing alone, and even if that delay was itself not sufficiently substantial to warrant dismissal, the court would still find the delay here sufficient to counsel in favor of dismissal because Plaintiffs are unreachable. "Courts have found dismissal appropriate for [delays shorter than several months] when a party has become completely inaccessible, as inaccessibility 'strongly suggests that [Plaintiffs are] not diligently pursuing [their] claim.'" Caussade, 293 F.R.D. at 630 (S.D.N.Y. 2013) (quoting Dong v. United States, No. 02-CV-7751 (SAS), 2004 WL 385117, at *3 (S.D.N.Y. Mar. 2, 2004)).

Accordingly, the court finds that the first factor favors dismissal.

### B. Plaintiffs Were Given Notice That Further Delay Would Result in Dismissal

The second factor asks whether Plaintiffs are on notice that their failure to prosecute could cause their case to be dismissed. Generally, a party should be given notice prior to dismissal of their complaint for failure to prosecute. See Drake, 375 F. 3d at 254. However, "this is not an absolute requirement." Caussade, 293 F.R.D. at 630 (S.D.N.Y. 2013) (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 633 (1962) ("[A] District Court may dismiss a complaint for failure to prosecute even without affording notice of its intention to do so or providing an adversary hearing before acting.")). Here, Plaintiffs were notified that the case might be dismissed for failure to prosecute when the City served its motion. See Dong, 2004 WL 385117, at *3 ("By serving this motion, the Government has notified Dong that his failure to prosecute might result in dismissal.").

"In any event, given that the Court and counsel have no way to contact [Plaintiffs], any further attempt to warn them would be futile." Id. Indeed, courts in this circuit regularly dismiss cases for failure to prosecute without notice where the plaintiffs are unreachable. See, e.g., Blake v. Pavane, No. 08-CV-0930 (PAC) (PED), 2011 WL 7163172, at * 2 (S.D.N.Y. Mar. 11, 2011) (report and recommendation); Fitzgerald v. Anderson, No. 91-CV-3881 (MJL), 1994 WL 97144, at *2 (S.D.N.Y. Mar. 21, 1994).

Thus, the court finds that the second factor favors dismissal.

### C. Defendants Are Likely to Be Prejudiced by Further Delay

The third factor asks whether Defendants are likely to be prejudiced by further delay. "Where a plaintiff has become inaccessible for months at a time, courts presume prejudice." Caussade, 293 F.R.D at 630 (collecting cases). Here, Plaintiffs have been inaccessible since at least the January 11, 2016, Order. Accordingly, the court presumes prejudice.

*4 In any event, the court finds that Defendants have been prejudiced by Plaintiffs' delay. The events giving rise to this action occurred on August 20, 2011. (See Compl. (Dkt. 1) ¶¶ 10-15.) It is only natural that in the intervening five years, Defendants' and their potential witnesses' memory of those events have faded. Courts in this circuit routinely find prejudice where a plaintiff's delay makes it less likely that a defendant will recall the facts critical to defending the case. See, e.g., McNamee v. Schoharie Cnty. Jail, No. 06-CV-1364 (LEK) (GHL), 2008 WL 686796, at *11 (N.D.N.Y. Mar. 10, 2008) (report and recommendation) ("Further delay by Plaintiff may very well result in the fading of memories."); Dodson v. Runyon, 957 F. Supp. 465, 470 (S.D.N.Y. 1997) ("As the Second Circuit has found, a delay of this length makes likely the chance that memories have faded and that witnesses who might once have been available may well not be found"), aff'd, 152 F.3d 917 (2d Cir. 1998).

Consequently, the court finds that the third factor favors dismissal.

### D. Need to Alleviate Court Calendar Congestion

The fourth factor considers whether dismissal of the case would alleviate the court's docket. The court is cognizant that it "must not let its zeal for a tidy calendar overcome its duty to do justice." Outley v. City of New York, 837 F.2d 587, 589 (2d Cir. 1988) (internal citation omitted). However, where a plaintiff is unreachable, courts do not hesitate to find the need to alleviate the court's calendar militates in favor of dismissal. This is because "[i]t is not an efficient use of the Court's or Defendants['] resources to permit this case to languish on the docket in the hope that plaintiff will reappear in the future." Caussade, 293 F.R.D at 631 (quoting Davison v. Grillo, No. 05-CV-4960 (NG) (LB), 2006 WL 2228999, at *2 (E.D.N.Y. Aug. 3, 2006)).

2016 WL 1275621

Here, the court has no way of reaching Plaintiffs. Accordingly, the court finds that the fourth factor weighs in favor of dismissal.

### E. Adequacy of Lesser Sanctions

The fifth factor asks whether a sanction less than dismissal could sufficiently remedy the plaintiff's delay. "Courts consistently find that dismissal is the only adequate remedy for failure to prosecute where a plaintiff cannot be contacted because the plaintiff would be unaware of any lesser sanction that could be imposed." Caussade, 293 F.R.D. at 631 (collecting cases).

Because Plaintiffs are unreachable here, the court finds that the fifth factor weighs in favor of dismissal.

### IV. CONCLUSION

Because all five factors weigh in favor of dismissal, the court concludes that Plaintiffs' failure to prosecute warrants dismissal. The City's motion to dismiss is therefore GRANTED. In addition, the court sua sponte DISMISSES the Complaint against all other Defendants for failure to prosecute. The Complaint is DISMISSED WITH PREJUDICE. The Clerk of Court is respectfully requested to close the case.

SO ORDERED.

### All Citations

Not Reported in F.Supp.3d, 2016 WL 1275621

---

**End of Document** 

© 2018 Thomson Reuters. No claim to original U.S. Government Works.